1  Geraldine A. Valdez (Bar No. 174305)               D. Anthony Gaston (Bar No. 57074)
   Kendra J. Hall (Bar No. 166836)                    Attorney At Law
2  Farzeen Essa (Bar No. 246971)                      Corporate Center
   PROCOPIO, CORY, HARGREAVES &                        550 West C Street, Suite 700
3    SAVITCH LLP                                      San Diego, California 92101
   530 B Street, Suite 2100                           Telephone: 619.234.3103
4  San Diego, California 92101
   Telephone: 619.238.1900
5                                                     Attorneys for Appellant
                                                      Martha Margarita Barba de la Torre
6  Attorneys for Appellants Alejandro Diaz-Barba
   and Martha Margarita Barba de la Torre

7  Stephen B. Morris (SBN 126192)
   Mark C. Hinkley (SBN 138759)
8  MORRIS & ASSOCIATES
   444 West C Street, Suite 300
9  San Diego, California 92101
   Telephone: 619.239-1900
10
   Attorneys for Appellant Alejandro Diaz-Barba
11
                                                      '08 CV 1446 BTM BLM
12                 UNITED STATES BANKRUPTCY APPELLATE PANEL

13                               OF THE NINTH CIRCUIT

14  In re:                                      BAP No. SC-08-1198

15  JERRY LEE ICENHOWER dba Seaview            Bankruptcy Court (S.D. Cal.)
    Properties, and DONNA LEE ICENHOWER,
16                                             Case No. 03-11155-LA7
              Debtors
17                                             Adv. Proc. No.: 06-90369
                                               Adv. Proc. No.: 04-90392
18  ALEJANDRO DIAZ-BARBA AND
    MARTHA MARGARITA BARBA DE LA               **EMERGENCY MOTION** OF
19  TORRE,                                     DEFENDANTS MARTHA MARGARITA
                                               BARBA DE LA TORRE AND
20            Appellants.                      ALEJANDRO DIAZ-BARBA FOR STAY
                                               OF JUDGMENT PENDING APPEAL
21       v.

22  KISMET ACQUISITION, LLC,

23            Plaintiff,

24

25

26

27

28

115634/000000/950548.01

TO: THE BANKRUPTCY APPELLATE PANEL AND ALL PARTIES IN INTEREST:

1. Appellants Alejandro Diaz-Barba and Martha Margarita Barba de la Torre (the "Diaz Family"), hereby move the Court, **on an emergency basis**, pursuant to Federal Rules of Bankruptcy Procedure 7062 and 8005, for an order:

    A.    Granting a stay of judgment pending appeal in the above Adversary Proceedings.

    B.    Granting such further relief as the Court deems just and proper.

2. On July 30, 2008, the Bankruptcy Court entered its Order on Motion to Alter or Amend Consolidated Judgment, (the "Order"). A true and correct copy of the Order is attached as Exhibit 2 to the Appendix, filed concurrently herewith, and the Diaz Family requests that the Court take judicial notice thereof. The Amended Judgment which is attached as Exhibit A to the Order, orders the Diaz Family to convey their family vacation home in Mexico to Appellee Kismet Acquisition LLC, ("Kismet"), for the benefit of the bankruptcy estate within ten days. Kismet is an entity created by two German property developers solely for the purpose of acquiring an avoidance action from the Bankruptcy Trustee in the above case.

3. On July 31, 2008, the Diaz Family first presented a version of this Motion to the Bankruptcy Court in accordance with Federal Rule of Bankruptcy Procedure 8005, on an emergency basis. Kismet's counsel immediately informed the Diaz Family's counsel that it intended to file an opposition. In accordance with Local Bankruptcy Rule 9014-5(b) governing the procedure for emergency motions, the Diaz Family's counsel filed a declaration notifying the Bankruptcy Court that Kismet intended to oppose the Motion. Now, a week later, it has filed no opposition and the Bankruptcy Court has not ruled on the motion. If the Bankruptcy Court denies the Motion, the Diaz family will need to then refile it with this Court.

4. The ten-day stay of the judgment will expire within one court day—i.e. one business day, at which time the Diaz Family will risk facing contempt sanctions if it does not comply with its terms. Accordingly, the Diaz Family is seeking emergency relief from this Court because it cannot obtain a ruling from both the Bankruptcy Court and, potentially, from this Court before the stay expires.

2

Bankruptcy Case No. 03-11155-LA7
Adv. Proc. No. 06-90369; 04-90392

115634/000000/950548.01

1   5.  On August 6, 2008, the Diaz Family filed its Notice of Appeal in the Bankruptcy

2 Court in Adversary Proceedings Nos. 04-90392-A7 and 06-90369-A7.  A copy of the Notice of

3 Appeal that was filed in both cases is attached as Exhibit B to the Valdez Declaration.

4   6.  This motion ("Motion") will be based upon the attached supporting Memorandum

5 of Points and Authorities, the Declaration of Geraldine A. Valdez, the Appendix filed

6 concurrently herewith, and upon such other oral and documentary evidence as the Court may

7 properly consider prior to or at any hearing of this Motion.

8 DATED: August 6, 2008     PROCOPIO, CORY, HARGREAVES

9           & SAVITCH, LLP

10

11        By:

           Geraldine A. Valdez

12          Attorneys Defendants

           Alejandro Diaz-Barba and

13          Martha Margarita Barba de la Torre

14

15

16

17

18

19

20

21

22

23

24

25

26

27           3

28

Stephen B. Morris (SBN 126192)
Mark C. Hinkley (SBN 138759)
MORRIS & ASSOCIATES
444 West C Street, Suite 300
San Diego, California 92101
Telephone: 619-239-1900

Geraldine A. Valdez (Bar No. 174305)
Kendra J. Hall (Bar No. 166836)
Farzeen Essa (Bar No. 246971)
PROCOPIO, CORY, HARGREAVES &
    SAVITCH LLP
530 B Street, Suite 2100
San Diego, California 92101
Telephone: 619.238.1900

Attorneys for Appellants Alejandro Diaz-Barba and
Martha Margarita Barba de la Torre

D. Anthony Gaston (Bar No. 57074)
Attorney At Law
Corporate Center
550 West C Street, Suite 700
San Diego, California 92101
Telephone: 619.234.3103

Attorneys for Defendant
Martha Margarita Barba de la Torre

**FILED** 11:20 a.m.

AUG 7 2008

HAROLD S. MARENUS, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

UNITED STATES BANKRUPTCY APPELLATE PANEL

OF THE NINTH CIRCUIT

In re:

JERRY LEE ICENHOWER dba Seaview
Properties, and DONNA LEE ICENHOWER,

Debtors

ALEJANDRO DIAZ-BARBA;
MARTHA MARGARITA BARBA DE LA TORRE

Appellants,

v.

KISMET ACQUISITION, LLC

Appellee.

BAP No. _____ SC-08- 1198

Bankruptcy Court (S.D. Cal.)

Case No. 03-11155-LA7

Adv. Proc. No.: 06-90369
Adv. Proc. No.: 04-90392

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF
**EMERGENCY MOTION** OF
DEFENDANTS MARTHA MARGARITA
BARBA DE LA TORRE AND
ALEJANDRO DIAZ-BARBA FOR STAY
OF JUDGMENT PENDING APPEAL

Bkr. No. 03-1155-LA7
Adv. Proc. No. 06-90369; 04-90392

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ............................................................................................................1

II. FACTUAL BACKGROUND.........................................................................................2

    A.    The Villa Property.................................................................................................2
    B.    Icenhower Induces Diaz To Purchase The Villa Property....................................2
    C.    The Diaz Family Completes Its Due Diligence And Purchases The Villa
        Property...............................................................................................................4
    D.    The Avoidance Actions........................................................................................5
    E.    The Kismet Plaintiffs Enter The Picture...............................................................6
    F.    Pre-Trial Rulings And The Judgment....................................................................7

III. THE DIAZ FAMILY IS ENTITLED TO A DISCRETIONARY STAY WITHOUT A
     BOND.........................................................................................................................8

    A.    The Diaz Family Will Likely Succeed On The Merits...........................................9

            1.    Standards of Review................................................................................10
            2.    This Court Lacks Subject Matter Jurisdiction to Determine Real
                 Property Rights in Mexico. .....................................................................10
                 (a)    Title to Real Property Can only Be Decided by a Court in the
                       Jurisdiction Where the Property is Located. .............................11
                 (b)    U.S. Courts Particularly Lack Jurisdiction to Determine Real
                       Property Rights in Foreign Countries.......................................11
             3.    The Bankruptcy Code Avoidance Sections Do Not Apply
                 Extraterritorially. ...................................................................................14
             4.    The Judgment Should Be Reversed In That It Disregards Mexico's
                 Calvo Doctrine. ......................................................................................17
                 (a)    Mexico Has a Strong Policy Against Allowing Foreign Powers
                       to Decide Issues Related to Mexican Real Property. ................19
                 (b)    Mexican Fraudulent Conveyance Laws Differ From those in the
                       United States..............................................................................20
    B.    The Diaz Family Will Suffer Irreparable Harm...................................................21

    C.    The Kismet Plaintiffs Will Not Suffer Substantial Harm if the Stay is Granted ..........22

    D.    Public Interest Considerations Mandate the Issuance of a Stay ....................................23

IV. THE COURT HAS DISCRETION TO REQUIRE A BOND..............................................23

V. THE DIAZ FAMILY IS ENTITLED TO A STAY AS A MATTER OF RIGHT IF IT
     POSTS A BOND.................................................................................................................24

VI. CONCLUSION ...................................................................................................................25

i

Bk. No. Error! Reference source not found.
Adv. Proc. No. 06-90369; 04-90392

115634/000000/947280.04

1

2

## TABLE OF AUTHORITIES

3

**Page(s)**

4

### FEDERAL CASES

5

*Allstate Life Ins. Co. v. Linter Group Ltd.*
994 F.2d 996 (2nd Cir. 1993) ................................................................................................ 10

6

*Argentine Republic v. Amerada Hess Shipping Corp.*
7   488 U.S. 428, 102 L. Ed. 2d 818, 109 S. Ct. 683 (1989) ....................................................... 15

8   *Asociacion De Reclamantes v. United Mexican States*
735 F.2d 1517 (DC Cir. 1984) .................................................................... 13, 19, 20, 21
9

*Barclay v. Swiss Finance Corporation Limited (In re Midland Euro Exchange et al)*
10   347 B.R. 708 (Bankr. C.D. Cal. 2006) .............................................................................. 15, 16

11   *Bermudez v. Reid*
720 F.2d 748 (2d Cir. 1983) ................................................................................................ 22
12

13   *Brady v. Brown*
51 F.3d 810 (9th Cir. 1995) ................................................................................................ 10
14

*Casey v. Adams*
15   102 U.S. 66 (1880) ............................................................................................................... 11

16   *Clarke v. Clarke*
178 U.S. 186 (1900) ............................................................................................................ 11
17

18   *Ellenwood v. Marietta Chair Co.*
158 U.S. 105 (1895) ............................................................................................................ 11
19

*Equal Employment Opportunity Comm. v. Arabian American Oil Co.*
20   499 U.S. 244 (1991) ............................................................................................................ 14

21   *Exxon Co. v. Sofec, Inc.*
54 F.3d 570 (9th Cir. 1995), aff'd 517 US 830, 116 S.Ct. 1813 (1996) ................................ 9
22

23   *Feller v. Brock*
802 F.2d 722 (4th Cir.1986) .............................................................................................. 23
24

*Foley Bros., Inc. v. Filardo*
25   336 U.S. 281 (1949) ............................................................................................................ 14

26   *Hartford Fire Ins. Co. v. California*
509 U.S. 764 (1993) ............................................................................................................ 18
27

28   *Hebert v. Exxon Corp.*
953 F.2d 936 (5th Cir. 1992) .............................................................................................. 24

ii

115634/000000/947280.04

*Hilton v. Braunskill*
   481 U.S. 770 (1987) ............................................................................... 8

*Hilton v. Guyot*
   159 U.S. 113 (1895) ............................................................................. 17

*In re Adelphia Communications Corp.*
   361 B.R. 337 (S.D.N.Y. 2007) ............................................... 21, 22, 24

*In re Advanced Mining Sys. Inc.*
   173 B.R. 467 (S.D.N.Y. 1994) .............................................................. 22

*In re Bridgeport*
   132 B.R. 81 (Bankr. D.Conn. 1991) ................................................... 21

*In re Capital West Investors*
   180 B.R. 240 (N.D. Cal. 1995) ............................................................. 24

*In re Forty Eight Insulations, Inc.*
   115 F.3d 1294 (7th Cir. 1997) ................................................................ 9

*In re French*
   440 F.3d 145 (4th Cir. 2006) ............................................................... 16

*In re Max Sugarman Funeral Home, Inc.*
   94 B.R. 16 (Bankr.D.R.I.1988) ..................................................... 23, 24

*In re Maxwell*
   93 F.3d 1036 (2nd Cir. 1996) ............................................................... 18

*In re Maxwell Commc'n Corp.*
   170 B.R. 800 (S.D.N.Y. 1994) ....................................................... 14, 15

*In re Maxwell Communication Corporation*
   186 B.R. 807 (D. S.D.N.Y 1995) ......................................................... 14

*In re Skinner*
   202 B.R. 867 (W.D.Va.,1996) .............................................................. 23

*In re Slater*
   200 B.R. 491 (E.D.N.Y. 1996) ............................................................. 21

*In re Sphere Holding Corp.*
   162 B.R. 639 (Bankr.E.D.N.Y.1994) .................................................. 23

*In re Suprema Specialties, Inc.*
   *330 B.R. 93* (S.D.N.Y.2005) ......................................................... 8, 23

*In re Trans World Airlines, Inc.*
   18 F.3d 208 (3rd Cir. 1994) ................................................................... 8

iii

*In re Wymer*
  5 B.R. 802 (9th Cir. 1980)...................................................................................9

*Keller v. Malice*
  838 F.Supp. 1163 (D. S.D. Tex. 1993)................................................................10

*Labor Union of Pico Korea v. Pico Products*
  968 F.2d 191 (2d Cir.) (1992) ...........................................................................14

*LaRouche v. Kezer*
  20 F.3d 68 (2d Cir. 1994)....................................................................................9

*Livingston v. Jefferson*
  15 F. Cas. 660 (C.C.D. Va.1811) ..................................................................10, 13

*Louisville & N.R.R. v. Western Union Telegraph Co.*
  234 U.S. 369 (1914) ..........................................................................................11

*Mann v. Hanil Bank*
  900 F.Supp. 1077 (D. E.D. WI 1995).................................................................13

*Mohammed v. Reno*
  309 F.3d 95 (2d Cir. 2002) .............................................................................9, 22

*Oakey v. Bennett*
  52 U.S. 33 (1850) ..................................................................................11, 12, 13

*Randolph v. Budget Rent–A–Car*
  97 F.3d 319 (9th Cir. 1996)................................................................................10

*Rothenberg v. Ralph D. Kaiser Co.*
  2007 B.R. 461 (D.D.C. 1996)..............................................................................21

*Sarei v. Rio Tinto, PLC*
  456 F.3d 1069,1086 (9th Cir. 2006) ...................................................................17

*Schwartz v. Covington*
  341 F.2d 537 (9th Cir. 1965)................................................................................9

*State Indus., Inc. v. Mor-Flo Indus., Inc.*
  124 F.R.D. 613 (E.D. Tenn. 1988) ......................................................................23

*Thomas v. City of Evanston*
  636 F.Supp. 587 (1986) .......................................................................................9

*Tucker Anthony Realty Corp. v. Schlesinger*
  888 F.2d 969 (2d Cir. 1989).................................................................................21

*United States v. Mansion House Center Redevelopment Co.*
  682 F.Supp. 446 (E.D. Mo. 1988) .......................................................................24

iv

Bk. No. Error! Reference source not found.
Adv. Proc. No. 06-90369; 04-90392

115634/000000/947280.04

*United States v. Middleton*
   231 F.3d 1207 (9th Cir. 2000) .......................................................................................... 9

## CALIFORNIA CASES

*Goldie's Bookstore, Inc. v. Superior Court of State of*
   *Cal.* 739 ............................................................................................................................. 24

## OTHER STATE CASES

*Griner v. Trevino*
   207 S.W. 947 (Tex. Civ. App. 1918) ....................................................................... 12, 13

*Holt v. Guerguin*
   163 S.W. 10 (1914) .......................................................................................................... 12

*In re Country Squire Associates of Carle Place, L.P.*
   203 ............................................................................................................................. 21, 23

## FEDERAL STATUTES

11 U.S.C.
   § 544(A) ............................................................................................................................. 7
   § 544(b) .................................................................................................................. 7, 16, 17
   § 549 .................................................................................................................................. 7
   §§ 550(a)(1) and (a)(2) and § 551 ...................................................................................... 7
   § 550(a)(1) and § 551 ....................................................................................................... 7
   § 550(A)(2) ........................................................................................................................ 7

Bankruptcy Code
   § 502 ................................................................................................................................ 17
   § 502(e) ............................................................................................................................ 17
   § 547 ........................................................................................................................... 14, 15
   § 548 ........................................................................................................................... 15, 16
   § 548(a)(1)(B) .................................................................................................................. 17
   § 548(a)(2) ........................................................................................................................ 17
   §§ 548(a)(1)(A) and 550(a) ............................................................................................. 15
   § 548(d)(3) ....................................................................................................................... 17
   Chapter 7 .............................................................................................................. 3, 4, 5, 15

Federal Civil Code
   Article 773 ........................................................................................................................ 19
   Article 2164 ...................................................................................................................... 20
   Article 2165 ...................................................................................................................... 20
   Article 2167 ...................................................................................................................... 21

Federal Rule of Bankruptcy Procedure 7062(d) ...................................................................... 25

v

115634/000000/947280.04

Federal Rule of Civil Procedure
  § 12(b)(6) ........................................................................................ 14, 15, 16
  Rule 62 ............................................................................................................ 8
  § 62(d) ...................................................................................................... 23, 24

## CALIFORNIA STATUES

California Code of Civil Procedure
  § 917.4 ....................................................................................................... 24, 25
  §§ 3439.04(a)(1) and (a)(2) ............................................................................ 7
  § 3439.07 ........................................................................................................... 7

## OTHER AUTHORITIES

Mexican Law: a Treatise for Legal Practitioners and International Investors,
  § 41.29 ............................................................................................................ 19

vi

115634/000000/947280.04

1    Appellants Martha Margarita Barba De La Torre and Alejandro Diaz-Barba ("the Diaz

2    Family") Respectfully Submit Their Memorandum Of Points And Authorities In Support Of

3    Emergency Motion For Stay Of Judgment Pending Appeal, as follows:

4                                                       I.

5                                          **INTRODUCTION**

6            The purpose of this motion is to request a stay of the judgment herein pending an appeal

7    to be filed by the Diaz Family.  This Court has discretion to grant a stay pending appeal and it

8    need not require the posting of a supersedeas bond.  As addressed below, a stay is appropriate in

9    this case as the Diaz Family's appeal will raise important issues regarding the subject matter

10   jurisdiction of the bankruptcy court and whether the judgment can stand given its direct impact

11   on real property owned by Mexican citizens in Mexico and Mexico's strong policy against

12   allowing foreign powers to decide issues affecting ownership of real property in Mexico.

13           Absent a stay Alejandro and Martha Diaz, who are Mexican citizens, will suffer

14   irreparable harm as a result of the Court's judgment.  They will be forced to convey their

15   Mexican vacation home to Plaintiff, an LLC formed by two German property developers solely

16   for the purpose of acquiring the property by purchasing an avoidance action from the bankruptcy

17   trustee.  Additionally, if a stay is not granted, it is likely the Diaz Family's appeal will become

18   moot.  Plaintiff will suffer no harm if a stay is granted.  The property is protected by an

19   injunction issued by the Bankruptcy Court and the Bankruptcy Court ordered that it be preserved

20   "for the benefit of the estate."  Finally, public policy is strongly against the potentially

21   unnecessary forfeiture of homes and disturbance of the status quo.

22           Accordingly, given the significant legal issues in this case, as well as the unique

23   considerations involved when a judgment directly impacts real property located in a foreign

24   country, a stay of the judgment herein is just and proper.

25   ///

26   ///

27   ///

28

                                                       1

115634/000000/947280.04

## II.

## FACTUAL BACKGROUND

### A.    The Villa Property

In or about 1995, D. Donald Lonie and the D. Donald Lonie, Jr., Family Trust (the "Lonie Creditors") entered into an agreement with Jerry Icenhower ("Icenhower") and Donna Icenhower (collectively, the "Debtors") for the sale of their interest in a piece of coastal real property in Mexico called the Villa Vista Hermosa (the "Villa Property"). The Villa Property is located in the village of Chamela in the Municipality of La Huerta, State of Jalisco, Mexico. *See,* Appendix Exh. 1, Consolidated Findings of Fact and Conclusions of Law ("FF&CL") entered on June 2, 2008 at ¶3.[1] Under Mexican law, a foreign national may not directly hold title to coastal real property in Mexico, but may lease or acquire rights of use on such property by forming a *fideicomiso* bank trust to hold title to the real property. Therefore, the Lonie Creditors sold only a leasehold interest or right of use to the Villa Property to the Debtors (the "Villa Property Interest"). *Id.* at ¶3, fn. 4.

In return, the Debtors executed two promissory notes in favor the Lonie Creditors, who recorded a lien to secure the note. Subsequently, the Lonie Creditors agreed to release the lien to enable the Debtors to sell the Villa Property Interest to a third party. The sale fell through and a dispute arose between the Debtors and the Lonie Creditors. *Id.* at ¶4.

On March 24, 2000, the Lonie Creditors commenced an action against the Debtors in the United States District Court for the Southern District of California (the "District Court Litigation"). *Id.* at ¶4. On March 4, 2002, the Debtors purchased a Nevada corporation, H&G, and transferred their Villa Property Interest to that entity. *Id.* at ¶8.

### B.    Icenhower Induces Diaz To Purchase The Villa Property

Defendant Alejandro Diaz ("Diaz"), a citizen of Mexico, first met Debtor Jerry Icenhower through a childhood friend, Eugene Kocherga. Kocherga's family formerly owned the Vista Property and Diaz and Kocherga had spent many summers there together. *Id.* at ¶27.

---

[1] The references to the Appendix/docket refer to Adversary Proceeding #04-90392. The Diaz Family's appeal will also include Adversary Proceeding #06-90369-LA.

Bkr. No. 03-11155-LA7
Adv. Proc. No. 06-90369; 04-90392

1    In 2003, Kocherga was planning his wedding and was determined to get married in his
2    childhood home. He made some inquiries to determine the new owner of the Villa Property to
3    see if they would agree to allow him to hold his wedding there. He was introduced to Debtor
4    Jerry Icenhower ("Icenhower") who told him that he was managing the Villa Property. *Id.*

5    As Kocherga was making preparations to rent the Villa Property, he had several meetings
6    with Icenhower. During one of these meetings in San Diego, Kocherga introduced Diaz to
7    Icenhower. Later Kocherga and Diaz visited the Villa Property together and Diaz met Icenhower
8    again. Diaz remembered the Villa Property fondly and found it even nicer than he remembered.
9    Icenhower mentioned that the house was possibly for sale at a selling price of $3 million dollars.
10   Diaz indicated that he was interested in the house, but not at that price. *Id.* at ¶¶27-28.

11   After the wedding, Icenhower contacted Diaz several times to ask him if he was still
12   interested in purchasing the Villa Property. He told Diaz that he was only managing the house
13   for H&G which, he said, comprised of a group of investors from Nevada. Icenhower dropped the
14   asking price a little each time he spoke with Diaz. Finally, he advised Diaz that the lowest price
15   H&G would accept for the Villa Property Interest was $1.5 million. Diaz informed his mother,
16   Defendant Martha Diaz ("Mrs. Diaz") of this opportunity to purchase the Villa Property. Mrs.
17   Diaz agreed to become a co-owner with Diaz. Diaz told Icenhower that he was interested in
18   purchasing the Villa Property for $1.5 million and made a check out to H&G for $25,000.00 as a
19   sign of good faith. *Id.* at ¶¶29 & 39. Diaz then requested his friend and attorney/notary, Mr.
20   Eduardo Sanchez Acosta ("Sanchez") to start the legal process and necessary due diligence to
21   purchase the Villa Property.

22   On November 24, 2003, the district court entered judgment in favor of the Lonie
23   Creditors in the District Court Litigation. On December 15, 2003, the Debtors filed for
24   protection under chapter 7 of the Bankruptcy Code. *Id.* at ¶5. Gerald H. Davis was appointed
25   as trustee (the "Trustee"). Shortly thereafter, Diaz received a notice from the Bankruptcy Court
26   informing him that Icenhower had filed for bankruptcy and that he was listed as a creditor on
27   account of his $100,000 loan. The Lonie Creditors were also listed as creditors. *Id.* at ¶31.

28

3

115634/000000/947280.04

1   Alarmed, Diaz called Icenhower to inquire about the bankruptcy. Icenhower explained

2   that he and the Lonie Creditors were in a dispute over a big land development project in

3   Ensenada, Mexico. The Lonie Creditors wanted to collect on a note that Icenhower assured Diaz

4   was already liquidated. Diaz asked if the Villa Property was involved in this dispute. Icenhower

5   assured him that he had sold it long before the dispute had arisen and that it was not involved in

6   the bankruptcy. *Id.* at ¶32.

7   **C.     The Diaz Family Completes Its Due Diligence And Purchases The Villa**

8   **Property**

9   By August of 2004, Sanchez had completed eight months of due diligence and presented

10  Diaz with a report certifying his findings that there were no outstanding liens on the Villa

11  Property. The report indicated that Icenhower had formerly owned the Villa Property but that he

12  had transferred it to H&G two years earlier. The report also showed that H&G was a corporation

13  in good standing and that a Craig Kelley was its chief officer. *Id.* at ¶334.

14  Diaz received the additional assurances that are provided for under Mexican law that the

15  Villa Property was free and clear of any liens and encumbrances. Under Mexican law, a seller or

16  buyer of real property is required to obtain a certificate from the Public Registry of Property,

17  stating who the owner of the property is and if the property is free of any lien or deed affecting

18  the free disposition of the land. Only after the Public Registry of Property certifies that the seller

19  is the actual owner and that the property is free of liens and claims, will a Public Notary attest

20  and certify, through a deed, the sale/purchase of the property. Once the process is finished, the

21  Notary Public sends the final deed to the Public Registry for registration. Once the sale is duly

22  recorded, a certified formal deed is delivered to the buyer. All liens or claims must be registered

23  with the Mexican government to have any effect, and a notary's certification of no liens is

24  considered a final and conclusive finding.

25  With respect to Diaz's purchase of the Villa Property, the Public Registry of Property and

26  the Notary Public, Attorney Felipe Vazquez Aldaña, confirmed that the owner of the Villa

27  Property Interest was H&G and had been so for two years. They also confirmed that H&G was

28  current with its obligations.

4

115634/000000/947280.04

1        Accordingly, on or about June 7, 2004, Diaz and H&G closed the sale of the Villa

2    Property. Upon Icenhower's instruction, Diaz transferred the purchase price for the property to

3    the following third-party entities: (1) $675,000 to Buckeye International Funding, Inc.; (2)

4    $398,663 to Western Financial Assets, Inc. and (3) $191,567 to Icenhower Investments, via a

5    bank account controlled by Icenhower's brother, Hobart Icenhower. *Id.* at ¶¶37-39.

6        Diaz obtained legal title to the Villa Property by an Escritura dated August 5, 2004 (the

7    "Diaz Escritura"). Accordingly, Diaz did not merely obtain an assignment of the beneficial

8    interest in the fideicomiso trust from H&G. Therefore, because Diaz and Mrs. Diaz are Mexican

9    citizens, they may hold legal title to the Villa Property. The Banco Nacional de Mexico, S.A.

10    subsequently conveyed legal title to the Villa Property directly to Diaz and Mrs. Diaz and the

11    *fideicomiso* trust was dissolved and terminated.

12        The Diaz Family paid approximately $1.4 million for the Villa Property. Diaz believes

13    that the property was worth not more than $1.4 million when he and his mother purchased the

14    property in August of 2004. *Id.* at ¶39. His opinion is based on an appraisal obtained by him and

15    an appraisal commissioned by the Trustee with his cooperation. The Trustee's appraiser

16    concluded that the Villa Property was worth $1,284,209 as of September 13, 2004.

17    **D.**    **The Avoidance Actions**

18        On August 23, 2004, The Trustee commenced a fraudulent conveyance action against

19    H&G to avoid and recover the Debtors' transfer of their Villa Property Interest to H&G. At the

20    time, the Trustee was unaware of the subsequent transfer of the Villa Property to the Diaz

21    Family. *Id.* at ¶44. In February 2005, upon learning of the transfer, the Trustee amended the

22    complaint to add the Diaz Family and also obtained injunctive relief restraining the Diaz Family

23    from transferring or encumbering the Villa Property. *Id.* at ¶45.

24        On August 3, 2006, the Trustee filed a second action against H&G and the Icenhowers

25    seeking a determination that (1) H&G was the alter ego of the Debtors; and (2) to substantively

26    consolidate the Debtors and H&G *nunc pro tunc* to the date of filing of the bankruptcy petition

27    (the August 23, 2004 action and the August 3, 2006 actions are collectively referred to as the

28    "Avoidance Actions"). *Id.* at ¶48.

5

115634/000000/947280.04

### E.    The Kismet Plaintiffs Enter The Picture

While the Icenhower bankruptcy was proceeding in the United States, two businessmen, Wolfgang Hahn and Dieter Hahn (the "Hahn Brothers"), purchased a majority shareholder interest in a Mexican Real Estate Company "Impulsora de Chamela" ("IC"). IC owned more than 350 hectares of land that completely surrounds the Villa Property. Through IC, the Hahn Brothers were developing a golf resort project in Mexico called "Tambora". When completed, Tambora will surround the Villa Property, with Holes 2 through 5 of the golf course wrapping around the property on the hill. Accordingly, the Villa Property was of tremendous strategic value to the Hahn Brothers and they desperately wanted to obtain it. However, the Villa Property was the Diaz Family's vacation home. As such, it had great sentimental value. Therefore, Diaz and his mother were unwilling to sell.

The Hahn Brothers were not going to give up that easily. They were looking for a way to out-maneuver Diaz and find an alternate mechanism to seize the Villa Property from the Diaz Family. Then by a stroke of luck, Diaz informed the Hahn Brothers of the Lonie Creditors' claims against the Icenhowers, the bankruptcy and, most significantly, the existence of the Avoidance Actions. By virtue of Diaz's good faith disclosures, these two German citizens came up with a scheme to use the United States Bankruptcy Court to accomplish their goal to wrest a home located in Mexico from its reluctant Mexican citizen owner.

In July 2006, because the Hahn Brothers were not U.S. citizens, they set up two shell Delaware corporations, Kismet Acquisitions, LLC and Kismet Acquisitions II, LLC (the "Kismet Plaintiffs"), solely for the purpose of acquiring and prosecuting the Trustee's avoidance actions against the Diaz Family. First, they convinced the Lonies to sell Kismet Acquisition LLC their $1,385,950.65 claim arising from the district court litigation. Next, they entered into an agreement with the Trustee on behalf of the Kismet Plaintiffs, to purchase the Avoidance Actions (the "Purchase & Assignment Agreement"). In return for the Avoidance Actions, Kismet agreed to pay an amount sufficient to pay all creditors in full, except for the Kismet Plaintiffs' claim, which it agreed to subordinate that claim to those of the other creditors. On December 7, 2006, the Court entered an order approving the Purchase & Assignment Agreement.

6

115634/000000/947280.04

### F.    Pre-Trial Rulings And The Judgment

On November 29, 2006, the Diaz Family filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim or, in the Alternative, to Abstain. See Docket # 183-187. The basis for the motion was the Bankruptcy Court's lack of subject matter jurisdiction to determine real property rights in Mexico and the strong policy considerations involved in deciding issues related to Mexican real property which require abstention on the grounds of international comity. On February 13, 2007, the Bankruptcy Court issued its order denying the Diaz Defendant's challenge of subject matter jurisdiction. See Appendix, Exh. 5, Order dated February 13, 2007.

On April 21, 2008, the Bankruptcy Court conducted a four-day bench trial of the Avoidance Actions. On June 2, 2008, the Bankruptcy Court entered judgment in favor of the Diaz Family and its Findings of Fact and Conclusions of Law in support of the Judgment. See Appendix, Exh. 4. Preliminarily, the Bankruptcy Court found that the Kismet Plaintiffs are entitled to Judgment on its claims and the alter ego-avoidance action. Further, according to the Bankruptcy Court's judgment, the Villa Property is property of the estate thereby permitting the Bankruptcy Court to rule that the transfer to the Diaz Family is avoidable under 11 U.S.C. § 549 as an unauthorized post petition transfer. See, FF&CL, Appendix, Exhibit 4, at ¶¶ 80-83. The Bankruptcy Court went on to rule that alternatively, the Kismet Plaintiffs are entitled to judgment on their fraudulent conveyance action in that the Debtors' transfer of the Villa Property to H&G is avoidable under 11 U.S.C. § 544(A), pursuant to California law and that recovery of the Villa Property from the Diaz Family is permitted pursuant to 11 U.S.C. § 550(A)(2). Id. at pp. 26-33.

As indicated in the Bankruptcy Court's Amended Consolidated Judgment, the Bankruptcy Court provided the Kismet Plaintiffs, at their sole option, the following remedies:

* * *

(e)    Plaintiff is entitled to recover and preserve pursuant to 11 U.S.C. § 550(a)(1) and § 551 the Villa Property from the Diaz Defendants as the initial transferees of the avoided postpetition transfer. Within ten days of entry of this judgment, Defendants are hereby ordered and directed to take all actions necessary to execute and deliver any and all documents needed to undo the avoided transfer, and to take all actions necessary to cause the property to be reconveyed to a *fideicomiso* trust naming Plaintiff as the sole beneficiary for the benefit of the bankruptcy estate; or

7

Bkr. No. 03-11155-LA7
Adv. Proc. No. 06-90369; 04-90392

115634/000000/947280.04

(f)     Alternatively, at Plaintiff's sole option made upon proper noticed motion, the Court reserves jurisdiction to enter a monetary judgment in favor of Kismet, and against Defendants, in an amount necessary to make the estate whole at the time of judgment.

2.       Alternatively, even if the Villa Property is not property of the bankruptcy estate *nunc pro tunc* to the petition date, judgment is entered in favor of Plaintiff and against the Defendants on the remaining claims in the amended complaint in adversary proceeding 04-90392. It is hereby adjudged and decreed that –

* * *

Plaintiff is entitled to recover and preserve pursuant to 11 U.S.C. §§ 550(a)(1) and (a)(2) and § 551 the avoided fraudulent transfer from H&G as the initial transferee of the avoided fraudulent transfer, and from the Diaz Defendants as the "immediate or mediate" transferees of the initial transferee. Within ten days of entry of this judgment, Defendants are hereby ordered and directed and execute and deliver any and all documents needed to undo the avoided transfer, and to take all actions necessary to cause the property to be reconveyed to a *fideicomiso* trust naming Plaintiff as the sole beneficiary for the benefit of the bankruptcy estate;

(b) alternatively, at Plaintiff's sole option made upon proper noticed motion, the Court retains jurisdiction to enter a monetary judgment in favor of Kismet, and against Defendants, in an amount necessary to make the estate whole at the time of judgment.

3.     The Court reserves for future determination made upon proper motion the issues of an award of fees and expenses, and it reserves jurisdiction to issue any and all orders necessary to carry out and enforce this judgment.

See Appendix, Exhibit 6, Amended Consolidated Judgment dated July 30, 2007, Exhibit A.

## III.

## THE DIAZ FAMILY IS ENTITLED TO A

## DISCRETIONARY STAY WITHOUT A BOND

Federal Rules of Procedure 7062 and 8005 establish the procedure to be followed by an appellant seeking to stay a judgment of the bankruptcy court. Bankruptcy Rule 7062 provides that Federal Rule of Civil Procedure Rule 62 is applicable in adversary proceedings, and Bankruptcy Rule 8005 enables the bankruptcy court and the district court to tailor relief to the unique circumstances of the case, "[n]otwithstanding Rule 7062," by making any "appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in interest." *In re Trans World Airlines, Inc.,* 18 F.3d 208, 212 (3rd Cir. 1994). The court has

8

Bkr. No. 03-11155-LA7
Adv. Proc. No. 06-90369; 04-90392

115634/000000/947280.04

1    discretion to grant a stay pending appeal under Bankruptcy Rules 8005 and 7062 and it need not

2    require the posting of a supersedeas bond. *In re Suprema Specialties, Inc., 330 B.R. 93, 96*

3    (S.D.N.Y.2005) ("the posting of a bond ... is discretionary and is not a prerequisite to obtain a

4    stay pending appeal.").

5        In order to determine whether a stay pending appeal is appropriate, the court examines (1)

6    whether the applicant has established that it is likely to succeed on the merits; (2) whether the

7    applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will

8    substantially injure the other parties in interest; and (4) where the public interest lies. *Hilton v.*

9    *Braunskill*, 481 U.S. 770, 776 (1987); *In re Wymer*, 5 B.R. 802, 806 (9th Cir. 1980); *Schwartz v.*

10    *Covington*, 341 F.2d 537 (9th Cir. 1965). Even if a party fails to show a likelihood of success on

11    appeal, the applicant is still entitled to a stay if the applicant makes a strong showing on the other

12    factors. See *Thomas v. City of Evanston*, 636 F.Supp. 587, 590-91 (1986).

13        In this case, the Diaz Family can satisfy these elements. The Diaz Family will likely

14    succeed on the merits of the appeal. However, even if the Court disagrees that it cannot satisfy

15    the "likelihood of success" prong, the Diaz Family can make such a strong showing on the other

16    factors that the Court should grant this motion. The Diaz Family will suffer irreparable injury if

17    it is forced to relinquish their home, which could potentially deprive them of its appellate rights

18    altogether by mooting the appeal. The issuance of the stay would not substantially injure the

19    Kismet Plaintiffs and the stay would be in the public interest. Accordingly, the Court should

20    issue a stay pending appeal of the Judgment.

21    **A.    The Diaz Family Will Likely Succeed On The Merits**

22        Likelihood of success is not certainty of success. *In re Forty Eight Insulations, Inc.*, 115

23    F.3d 1294, 1301 (7th Cir. 1997) (citing *Michigan Coalition of Radioactive Material Users, Inc. v.*

24    *Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991).) The necessary "level" or "degree" of

25    possibility of success will vary according to the court's assessment of the other stay factors.

26    *Mohammed v. Reno*, 309 F.3d 95, 101 (2d Cir. 2002). The requisite showing of substantial

27    possibility of success is inversely proportional to the amount of irreparable injury defendants will

28    suffer absent the stay. *Id. (quoting, Michigan Coalition of Radioactive Material Users*, 945 F.3d

9

Bkr. No. 03-11155-LA7
Adv. Proc. No. 06-90369; 04-90392

115634/000000/947280.04

1    at 153.) The movant need not always show a 'probability of success' on the merits; instead, the

2    movant need only present a substantial case on the merits when a serious legal question is

3    involved and show that the balance of the equities weighs heavily in favor of granting the stay."

4    *LaRouche v. Kezer*, 20 F.3d 68, 72-73 (2d Cir. 1994).

5        Applying these standards, the Diaz Family is likely to succeed on the merits.

6            **1.**     **Standards of Review**

7        Generally, all decisions by the court regarding the interpretation or application of law to a

8    given dispute are reviewed de novo. *United States v. Middleton*, 231 F.3d 1207, 1209 (9th Cir.

9    2000); *Exxon Co. v. Sofec, Inc.*, 54 F.3d 570, 573 (9th Cir. 1995), aff'd 517 US 830, 116 S.Ct.

10    1813 (1996). This includes a court's interpretation of foreign law. *Brady v. Brown*, 51 F.3d 810,

11    816 (9th Cir. 1995). Furthermore, a court's findings of fact relevant to subject matter jurisdiction

12    must be accepted on appeal unless clearly erroneous. However, the existence of subject matter

13    jurisdiction is reviewed de novo. *Randolph v. Budget Rent–A–Car*, 97 F.3d 319, 323–324 (9th

14    Cir. 1996). A court's decision to extend or deny comity to a foreign proceeding is reviewed for

15    abuse of discretion. See *Allstate Life Ins. Co. v. Linter Group Ltd.*, 994 F.2d 996, 999 (2nd Cir.

16    1993). As discussed below, the Diaz Family disagrees with this Court's legal conclusion that that

17    Mexican Calvo Clause is inapplicable to this case and that this Court has the requisite subject

18    matter jurisdiction to render a judgment that affects real property in Mexico. Among other

19    things, including whether substantial evidence supports the findings of the Bankruptcy Court, the

20    appeal in this case will address as a matter of law whether the judgment in this case is contrary to

21    the exclusive sovereignty of Mexico over its realty and therefore void.

22            **2.**     **This Court Lacks Subject Matter Jurisdiction to Determine Real**

23                    **Property Rights in Mexico.**

24        The judgment in this case strips Mexican citizens (the Diaz Family) of their title to their

25    real property in Mexico and orders them to execute the necessary conveyance documents

26    transferring real property in Mexico to someone else. The United States courts have long

27    respected the sovereignty of foreign nations and have long held that courts in the United States

28

1   lack the subject matter jurisdiction to effect change of ownership of real property located in

2   foreign countries.

3              (a)     **Title to Real Property Can only Be Decided by a Court in the**

4                   **Jurisdiction Where the Property is Located.**

5        For nearly two hundred years, the Supreme Court has firmly held that issues affecting title

6   to real property are "local actions" and can be decided only by a court in the jurisdiction where

7   the real property is located. This fundamental principle of law was first established in the United

8   States in *Livingston v. Jefferson*, 15 F. Cas. 660 (C.C.D. Va.1811) (No. 8411).[2]  Following

9   Livingston, the Supreme Court has consistently recognized that a local action must be brought

10   within the state where the land is located. See, e.g., *Louisville & N.R.R. v. Western Union*

11   *Telegraph Co.*, 234 U.S. 369 (1914); *Ellenwood v. Marietta Chair Co.*, 158 U.S. 105, 107

12   (1895); *Casey v. Adams*, 102 U.S. (12 Otto) 66, 67-68 (1880).

13        As the Supreme Court stated in *Casey v. Adams*," [t]he distinction between local and

14   transitory actions is as old as actions themselves . . . Local actions are in the nature of suits in

15   rem, and are to be prosecuted where the thing on which they are founded is situated." *Casey v.*

16   *Adams*, 102 U.S. at 67-68. Indeed, the local action rule is so fundamental that state courts are not

17   obligated to give full faith and credit to judgments from either federal or state courts sitting

18   outside the local state's territorial boundaries. See *Clarke v. Clarke*, 178 U.S. 186, 190 (1900)

19   (Connecticut courts are not required to give full faith and credit to a judgment of the South

20   Carolina Supreme Court concerning the construction of a will which affected the passing of title

21   to land situated in Connecticut).

22              (b)     **U.S. Courts Particularly Lack Jurisdiction to Determine Real**

23                   **Property Rights in Foreign Countries.**

24        The Supreme Court has expressly held that U.S. Courts in general, and bankruptcy courts

25   in particular, do not have jurisdiction to determine property rights in foreign countries. In the

26   case of *Oakey v. Bennett*, 52 U.S. 33 (1850), the Supreme Court held that the bankruptcy court in

27

28   [2]   The local action doctrine is much older and dates back at least seven hundred years to the Court of Common Pleas in England in the thirteenth century. *Keller v. Malice*, 838 F.Supp. 1163, 1169 n. 1 (D. S.D. Tex. 1993).

11

Bkr. No. 03-11155-LA7
Adv. Proc. No. 06-90369; 04-90392

115634/000000/947280.04

1  the United States had no jurisdiction to convey real property located in another country. *Id.* at

2  44-45. The Supreme Court stated:

3         A statutable conveyance of property cannot strictly operate beyond the local
4         jurisdiction. Any effect which may be given to it beyond this does not depend
       upon international law, but the principle of comity; and national comity does not
       require any government to give effect to such assignment, when it shall impair the
5         remedies or lessen the securities of its own citizens.

6  *Id.* at 44. The Supreme Court further noted that foreign assignments of real property located in

7  the United States are not recognized in this country and that a proceeding in rem against the

8  property of a foreign bankrupt, under U.S. law may be maintained by creditors notwithstanding

9  the foreign assignment. *Id.* at 44. The Supreme Court emphasized that no country may

10  determine property rights of real property located in other countries. In this regard, the Court

11  stated:

12         It is believed that no sovereignty has, at any time, assumed the power, by
       legislation or otherwise, to regulate the distribution or conveyance of real estate in
13         a foreign government. There is no pretence that this government, through the
       agency of a bankruptcy law, could subject the real property in Texas, or in any
14         other foreign government, to the payment of debts. This can only be done by the
       laws of the sovereignty where such property may be situated.
15         *Id.* at 45.

16         Other courts have likewise held that U.S. courts have no jurisdiction to determine

17  property rights with regard to real property located in foreign countries. In the case of *Holt v.*

18  *Guerguin*, 163 S.W. 10 (1914), the Supreme Court of Texas addressed the issue of whether a

19  court in Texas had the power to annul deeds to property located in Mexico. In that case, the

20  grantors, both deceased, had executed a deed to real property located in Mexico to their daughter.

21  The lower court annulled the deed on the grounds of fraud and undue influence. The Texas

22  Supreme Court reversed on the grounds that the court lacked jurisdiction to affect title to land

23  located in Mexico. The court stated:

24         We are of opinion that so far as the decree in this case sets aside and annuls the
       deed to the land in the Republic of Mexico it is void, because the District Court
25         had not jurisdiction of the subject matter; the court of Texas could not acquire
       jurisdiction of land beyond its borders. (Citations omitted.)
26
       The District Court at San Antonio also appointed commissioners and directed
27         them to partition the land between the plaintiffs and defendants. That portion of
       the decree is likewise void because the courts of this State have no power or
28         authority over land in Mexico.

12

Bkr. No. 03-11155-LA7
Adv. Proc. No. 06-90369; 04-90392

1    *Id.* at 12. The issue was similarly addressed in the case of *Griner v. Trevino*, 207 S.W. 947, 949-

2    50 (Tex. Civ. App. 1918). In that case, the parties entered into a 20-year contract for cutting

3    certain plants from the plaintiff s land located in Mexico. The plaintiff sought a judgment

4    cancelling the contract on the basis of fraud. The lower court entered a judgment cancelling the

5    contract. *Id.* at 948. The Court of Appeal reversed. The Court of Appeal held that the lower

6    court did not have jurisdiction to cancel the contract because it was a determination of property

7    rights in a foreign country. The court noted:

8
9       [I]t may be premised that real property is subject to the exclusive jurisdiction of
        the courts of the state or country in which it is located. No other courts may
        properly exercise any jurisdiction over it, and this is as true of courts of equity as
10      of courts of law.

11   *Id.* at 950 (quoting Wharton, Conflict of Laws).

12       This issue was addressed more recently in the case of *Mann v. Hanil Bank*, 900 F.Supp.

13   1077 (D. E.D. WI 1995). In that case, the plaintiffs sought an order compelling Korean banks to

14   liquidate certain real property collateral located in Korea. The Korean banks defended on the

15   grounds that the court lacked jurisdiction to order the sale of land in a foreign country. The Court

16   agreed. Citing the case of *Livingston v. Jefferson*, the court held that it was without jurisdiction

17   to order the sale of land in a foreign country. *Id.* at at 1094-95.

18       The prohibition on the determination of property rights in foreign countries has as much

19   vitality today as it did when the *Oakey* case was decided. In 1984, Justice Scalia, sitting on the

20   Court of Appeals for the District of Columbia, addressed the issue in the case of *Asociacion De*

21   *Reclamantes, v. United Mexican States*, 735 F.2d 1517 (DC Cir. 1984). In that case, Justice

22   Scalia addressed the exceptions to sovereign immunity for actions regarding title to real property.

23   Justice Scalia wrote:

24
25      The origin of the traditional exception limited to questions involving property
        interests or possession is self-evident. A territorial sovereign has a primeval
        interest in resolving all disputes over use or right to use of real property within its
26      own domain. As romantically expressed in an early treatise:

27      A sovereignty cannot safely permit the title to its land to be determined by a
        foreign power. Each state has its fundamental policy as to the tenure of land; a
        policy wrought up in its history, familiar to its population, incorporated with its
28      institutions, suitable to its soil.

13

Bkr. No. 03-11155-LA7
Adv. Proc. No. 06-90369; 04-90392

115634/000000/947280.04

(Citation omitted.) A subsidiary concern, less instinctive and mystical, is that courts are simply not well equipped to decide property interests or rights to possession with regard to land outside their jurisdiction, particularly land located in a foreign nation . . . . These considerations produced not only the exception to sovereign immunity we are here discussing, but also the "local action rule," which makes the locality's power exclusive and deprives other courts of jurisdiction to settle questions involving real estate. *Griner v. Trevino*, 207 S.W. 947, 949-50 (Tex. Civ. App. 1918).(735 F.2d at 1521.)

The *Griner v. Trevino* decision cited by Justice Scalia (discussed above) was a case in which a court in Texas held that U.S. courts lacked subject matter jurisdiction to determine real property rights in Mexico.

### 3.    The Bankruptcy Code Avoidance Sections Do Not Apply Extraterritorially.

It is a long-settled principle of American law "that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States." *Equal Employment Opportunity Comm. v. Arabian American Oil Co.*, 499 U.S. 244, 248 (1991) ("*Aramco*"); *Foley Bros., Inc. v. Filardo*, 336 U.S. 281, 285 (1949); *In re Maxwell Commc'n Corp.*, 170 B.R. 800, 809 (S.D.N.Y. 1994). The presumption "serves to protect against unintended clashes between our laws and those of other nations which could result in international discord." *Aramco*, 499 U.S. at 248 (*citing McCulloch v. Sociedad Nacional de Marineros de Honduras*, 372 U.S. 10, 20-22 (1963). Moreover, the presumption recognizes that Congress is primarily concerned with domestic conditions when it legislates. *Aramco*, 499 U.S. at 43 (citing *Foley Bros., Inc.*, 336 U.S. at 285).

An act of Congress will not be found to apply to conduct occurring outside the U.S. unless "'the affirmative intention of the Congress'" to apply the law extraterritorially is "'clearly expressed'" in the statute. *Aramco*, 499 U.S. at 248 (quoting *Benz v. Compania Naviera Hidalgo, S.A.*, 353 U.S. 138, 147 (1957)). If the legislative purpose is not "unmistakably clear," see *Labor Union of Pico Korea v. Pico Products*, 968 F.2d 191, 195 (2d Cir.) (1992), any ambiguity in the statute must be resolved in favor of refusing to apply the law to events occurring outside U.S. territory. See *Aramco*, 499 U.S. at 253 ("If we were to permit possible, or even plausible, interpretations of language such as that involved here to override the presumption against extraterritorial application, there would be little left of the presumption.").

14

Bkr. No. 03-11155-LA7
Adv. Proc. No. 06-90369; 04-90392

115634/000000/947280.04

1    At least two courts have expressly held that Congress did not intend for the Bankruptcy

2    Code avoidance sections to apply extraterritorially.  In the case of *In re Maxwell Communication*

3    *Corporation*, 186 B.R. 807 (D. S.D.N.Y 1995), the District Court for the Southern District of

4    New York held that Congress did not intend for Bankruptcy Code section 547 to apply

5    extraterritorially.  In *Maxwell*, an examiner had brought preference actions against foreign banks

6    to avoid certain transfers of funds.  The defendant banks brought a motion under Federal Rule

7    12(b)(6) for dismissal for failure to state a claim on which relief can be granted.  The District

8    Court granted the motion and dismissed the claims on the grounds that Bankruptcy Code section

9    547 was inapplicable because Congress did not intend the statute to apply to transfers occurring

10   outside the United States.

11    The *Maxwell* Court conducted an extensive analysis of the issue of Congressional intent

12   with regard to the Bankruptcy Code in general and Section 547 in particular.  The *Maxwell* Court

13   found that nothing in the language or legislative history of section 547 expresses Congress' intent

14   to apply the statute to foreign transfers.  The Court stated:

15   
16    The Supreme Court has stated that "when it desires to do so, Congress knows how
     to place the high seas within the jurisdictional reach of a statute." *Argentine*
     *Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 440, 102 L. Ed. 2d 818,
17    109 S. Ct. 683 (1989).  Because Congress has not "clearly expressed" its desire
     that § 547 govern extraterritorial conduct, see *Aramco*, 499 U.S. at 248, that
18    section cannot apply to the foreign transfers at issue in this case.

19   *Id.* at 821.

20    The issue of the extraterritorial effect of the Bankruptcy Code avoidance sections was

21   also addressed in *Barclay v. Swiss Finance Corporation Limited (In re Midland Euro Exchange*

22   *et al)*, 347 B.R. 708 (Bankr. C.D. Cal. 2006), a case from the United States Bankruptcy Court for

23   the Central District of California, wherein Judge Mund held that Congress did not intend

24   Bankruptcy Code Section 548 to apply extraterritorially.  In that case, a chapter 7 Trustee brought

25   an action under Bankruptcy Code section 548 to set aside and recover allegedly fraudulent

26   transfers paid by the debtor in fees and commissions to a foreign exchange brokerage.  The

27   Trustee filed a complaint pleading two claims for relief under Bankruptcy Code sections

28   548(a)(1)(A) and 550(a) and seeking to recover the fees as fraudulent transfers.  The defendant

15

115634/000000/947280.04

1  filed a motion under Rule 12(b)(6) to dismiss the complaint for failure to state a claim for relief.

2  The motion also argued that Congress did not intend Bankruptcy Code section 548 to apply

3  extraterritorially and that the Court should abstain from exercising jurisdiction on the grounds of

4  international comity.

5      After extensive analysis, the *Midland Euro Exchange* Court found that nothing in the text

6  of Section 548 or other sections of the Bankruptcy Code indicate congressional intent to apply

7  Section 548 extraterritorially. *Id.* at 717.  Judge Mund acknowledged that policy considerations

8  favor extraterritorial application of Section 548 because failure to extend application of Section

9  548 to transfers outside the territorial borders of the United States creates a loophole for

10  unscrupulous debtors to freely transfer their assets to shell entities abroad and avoid the reach of

11  the Bankruptcy Code. *Id.* at 718.  However, the Court recognized that, in the Ninth Circuit,

12  policy considerations are insufficient to overcome the presumption against extraterritorial

13  application of U.S. statutes.

14  
> These policy considerations, however, must be balanced against the presumption against extraterritoriality, which serves to protect against unintended clashes
15  between our laws and those of other nations which could result in international discord.  See *E.E.O.C. v. Arabian American Oil Co.*, 499 U.S. 244, 248, 111 S.
16  Ct. 1227, 113 L. Ed. 2d 274 (1991).  The Ninth Circuit has held that policy considerations alone are insufficient to overcome the presumption against
17  extraterritoriality.  See *Subafilms, Ltd. v. MGM-Pathe Communications Co.*, 24 F.3d 1088, 1096 (9th Cir. 1994) (en banc) (" . . . the ultimate touchstone of
18  extraterritoriality consist[s] of an ascertainment of congressional intent; courts [do] not rest solely on the consequences of a failure to give a statutory scheme
19  extraterritorial application.").

20  *Id.* at 718.  The *Midland Euro Exchange* Court, having found no evidence of congressional intent

21  to extend the application of Section 548 extraterritorially, held that the trustee could not pursue

22  his claims under that statute.  Judge Mund dismissed the claims under Rule 12(b)(6) on the

23  grounds that the trustee had failed to state a claim on which relief could be granted.

24      In the case of *In re French*, 440 F.3d 145 (4th Cir. 2006) the Fourth Circuit Court of

25  Appeal applied Section 548 extraterritorially to avoid a transfer of real property located in a

26  foreign country.  However, this case has been criticized as a rogue decision which is poorly

27  reasoned.  In declining to follow *In re French*, Judge Mund stated:

28

16

115634/000000/947280.04

1          *In re French* totally ignores § 541(a)(3) and uses an unclear and convoluted
method to reach its conclusion. I have a great deal of trouble following the Fourth

2    Circuit's reasoning and am not persuaded that it leads to the proper conclusion.

3    *Id.* at 719.

4          Similarly, here, the analysis is the same as the extraterritoriality of sections 547 and 548.

5    Just as with sections 547 and 548, there is no evidence of congressional intent to extend the

6    application of Section 544(b) extraterritorially.  There is no such intent expressed in section

7    544(b) itself.[3]  Nor is counsel for the moving party aware of anything in the Bankruptcy Code or

8    the legislative history of section 544(b) which expresses an intent by Congress to give

9    extraterritorial effect to section 544(b).  Accordingly, it is legally improper to apply section

10   544(b) (and through section 544(b), California's fraudulent conveyance statutes) to a transfers of

11   real property which occurred in Mexico and pursuant to Mexican law.  Bankruptcy Code section

12   544(b) does not apply to those transfers because the transfers occurred outside the territorial

13   limits of the United States.

14           **4.**    **The Judgment Should Be Reversed In That It Disregards Mexico's**

15                   **Calvo Doctrine.**

16         The decision in this case essentially strips Mexican citizens of their title to land in Mexico

17   which they legally acquired, in Mexico, pursuant to Mexican law.  Mexico has a strong policy

18   against allowing foreign powers to decide issues affecting ownership of real property in Mexico,

19   and particularly involving Mexican residents.  Moreover, Mexico's fraudulent conveyance law is

20   different from U.S. law and would not have permitted the avoidance as ordered in this case.  The

21   Diaz Family believe that they have a strong case on appeal that this Court erred in refusing to

22   abstain from entertaining the causes of action against them under the doctrine of international

23   

---

[3] Bankruptcy Code section 544(b) provides in its entirety:

24   

25         (b) (1) Except as provided in paragraph (2), the trustee may avoid any transfer of
an interest of the debtor in property or any obligation incurred by the debtor that is voidable

26   under applicable law by a creditor holding an unsecured claim that is allowable under section 502
of this title or that is not allowable only under section 502(e) of this title.

27         (2) Paragraph (1) shall not apply to a transfer of a charitable contribution (as that
term is defined in section 548(d)(3) that is not covered under section 548(a)(1)(B), by reason of

28   section 548(a)(2).  Any claim by any person to recover a transferred contribution described in the
preceding sentence under Federal or State law in a Federal or State court shall be preempted by
the commencement of the case.

Bkr. No. 03-11155-LA7
Adv. Proc. No. 06-90369; 04-90392

115634/000000/947280.04

1    comity. Most particularly, the specific remedies requiring that the Villa Property be conveyed

2    goes to far and impinges upon the exclusive jurisdiction of a foreign country.

3          Under the international comity doctrine, courts sometimes defer to the laws or interests of

4    a foreign country and decline to exercise jurisdiction that is otherwise properly asserted. *Sarei v.*

5    *Rio Tinto, PLC*, 456 F.3d 1069,1086 (9th Cir. 2006). Declining to decide a question of law on

6    the basis of international comity is a form of abstention. *Id.* at 1087.

7          Analysis of comity often begins with the definition proffered by Justice Gray in *Hilton v.*

8    *Guyot*, 159 U.S. 113, 163-64 (1895): "'Comity,' in the legal sense, is neither a matter of absolute

9    obligation, on the one hand, nor of mere courtesy and good will, upon the other. But it is the

10   recognition which one nation allows within its territory to the legislative, executive or judicial

11   acts of another nation, having due regard both to international duty and convenience, and to the

12   rights of its own citizens or of other persons who are under the protection of its laws." *In re*

13   *Maxwell*, 93 F.3d 1036, 1046 (2nd Cir. 1996). International comity guides the interpretation of

14   statutes that might otherwise be read to apply to certain conduct. When construing a statute, the

15   doctrine of international comity is best understood as a guide where the issues to be resolved are

16   entangled in international relations. *Id.* at 1047. Moreover, international comity is a separate

17   notion from the "presumption against extraterritoriality," which requires a clear expression from

18   Congress for a statute to reach non-domestic conduct. *Id.*

19         International comity describes two distinct doctrines. It is a canon of construction based

20   on the principal that "An act of congress ought never to be construed to violate the law of nations

21   if any other possible construction remains." *Hartford Fire Ins. Co. v. California*, 509 U.S. 764,

22   814-15 (1993)(Scalia, J., dissenting). It is also a discretionary act of deference by a national

23   court to decline to exercise jurisdiction in a case properly adjudicated in a foreign state. *In re*

24   *Maxwell*, 93 F.3d at 1047.

25         Mexico has a strong policy against allowing foreign powers to decide issues affecting

26   ownership of real property in Mexico. Moreover, Mexico's fraudulent conveyance law is

27   different from U.S. law and would not permit the avoidance ordered in this case. According, this

28

18

Bkr. No. 03-11155-LA7
Adv. Proc. No. 06-90369; 04-90392

1  Court should have abstained from entertaining the causes of action against the Diaz Family under

2  the doctrine of international comity.

3                    (a)      **Mexico Has a Strong Policy Against Allowing Foreign Powers**

4                             **to Decide Issues Related to Mexican Real Property.**

5          Mexico may remain as the only country in the world that still has the Calvo doctrine

6  embodied in its Constitution.  Pursuant to Article 27 of the Mexican Constitution, the Mexican

7  State may grant to foreigners the same right conferred to Mexican nationals of acquiring real

8  property:

9          provided they agree before the Ministry of Foreign Relations to consider
           themselves as nationals in respect to such property, and bind themselves not to
10         invoke the protection of their governments in matters relating thereto; under
           penalty, in case of noncompliance with this agreement, of forfeiture of the
11         property acquired to the Nation.

12  *Mexican Constitution, Article 27.*[4]  Article 773 of the Mexican Federal Civil Code provides:

13         All foreign individuals and corporations are required to observe the provisions of
           Article 27 of the Constitution of the United Mexican States and its organic laws
14         and rules upon acquiring real property within the Mexican republic.

15  *Mexican Federal Civil Code, Article 773.  Id.* at Appendix "B" (*Mexican Civil Code Annotated,*

16  *Jorge A. Vargas, West Group Publishing 2005 ed.*).

17         Each of the escrituras (deeds under Mexican law) in the chain of title to the Diaz's real

18  property that created the rights of the Debtors, Howell & Gardner Investors, Inc., and the Diaz

19  Family reflect the policy under Mexican law that title to Mexican real estate be controlled only

20  by Mexican law and Mexican courts.  For example, the escritura for the transfer from the Debtor

21  to Howell & Gardner Investors states:

22         — JURISDICTION AND COMPETENCE —
           For everything relative to the Interpretation and compliance of this agreement, **the**
23         **parties expressly submit to the Laws and Tribunals of the City of**
           **Guadalajara, Jalisco or Mexico**, Federal District at the option of the Trustee,
24         **waiving any other jurisdiction** that due to their addresses they would currently
           have or in the future; they also accept to be considered as Mexicans, in regards to
25         the rights derived from this agreement, and that **they will not invoke therefore**

26  _____

27  [4]  An English translation of Article 27 is attached as Appendix "A" to Appendix Exh. 7,
    Memorandum of Points and Authorities in Support of Motion to Dismiss for Lack of Subject
28  Matter Jurisdiction filed November 29, 2006.   See also, *Mexican Law: a Treatise for Legal
    Practitioners and International Investors, § 41.29, Jorge A. Vargas, West Group Publishing 2001
    ed.*  This policy is carried over into the Mexican Federal Civil Code.

                                        19

**the protection of their Government**, in case of breaching this agreement, they
would forfeit in favor of Mexico, the rights acquired.

See Appendix, Exhibit 8, Declaration of Fletcher W. Paddison, dated November 29, 2006, at

Exhibit "3" (emphasis added). As this Court is aware, virtually all of the relevant escrituras

contain provisions in which the parties expressly submit to the laws and courts of Mexico and

expressly waive all other jurisdictions that the parties may have access to due to their addresses.

*Id.* at Exhibits "1" through "6."

The strong overriding policy under Mexican law, as embodied in Mexico's Constitution,

that issues regarding Mexican real property be decided only under Mexican law and only by

Mexican courts, should have guided the Judgment in this case. Instead, the Judgment awards

coastal property located in Mexico and owned by Mexican citizens to Kismet, a shell corporation

set up by German Citizens to gain access to the U.S. Court System, which was unsuccessful in

otherwise purchasing the Diaz Family's property. When Kismet's principals, the Hahn Brothers,

learned of the lawsuit filed by the Trustee in this case, they purchased the claim of the Lonie

Creditors and then the avoidance claims of the Trustee. The use of the laws and the courts of the

United States by foreign nationals to involuntarily strip their Mexican neighbors of their land in

Mexico, something that they could never do under Mexican law, is improper. This use of the

laws and courts of a foreign country, in direct contravention of the Mexican Constitution, should

not have been condoned by this Court.

        **(b)**     **Mexican Fraudulent Conveyance Laws Differ From those in
the United States.**

Creditors who have claims against people who have transferred their Mexican real

property to the prejudice of their creditors are not without a remedy. Mexican law provides for

the recovery of fraudulent conveyances. Creditors can resort to Mexican courts when the

fraudulent conveyance involves Mexican real property.

Significant differences exist between Mexican fraudulent conveyance law and fraudulent

conveyance law under California law or the Bankruptcy Code. Mexico's fraudulent conveyance

law is set forth in Articles 2163 through 2179 of the Mexican Federal Civil Code. Appendix,

Exhibit 7, English translation of those Articles attached as Appendix C to Memorandum of Points

20

Bkr. No. 03-11155-LA7
Adv. Proc. No. 06-90369; 04-90392

115634/000000/947280.04

1   and Authorities in Support of Motion to Dismiss for Lack of Subject Matter Jurisdiction filed

2   November 29, 2006 (reprinted from *Mexican Civil Code Annotated, Jorge A. Vargas, West*

3   *Group Publishing 2005 ed.*).

4       Transfers made without consideration may be voided under Mexican law even if the

5   parties acted in good faith. (*Mexican Federal Civil Code, Article 2165.*) However, if a transferee

6   has paid consideration for a transfer, the transfer can only be avoided if there is bad faith on the

7   part of <u>both</u> the debtor and the third party contracting with him. (*Mexican Federal Civil Code,*

8   *Article 2164.*) Mexican law does not provide for the avoidance of a transfer made to a good faith

9   transferee who paid value for the transfer even if the consideration was less than reasonably

10   equivalent value. Moreover, a creditor's right of action against a first purchaser is not available

11   against a subsequent holder, unless the subsequent holder acquired the property in bad faith.

12   (*Mexican Federal Civil Code, Article 2167.*)

13       Mexico has its own fraudulent conveyance laws which protect creditors. Those laws

14   differ from the fraudulent conveyance laws in the United States. It is therefore inappropriate for

15   fraudulent conveyance issues regarding the transfer of real estate located in Mexico to be decided

16   using the laws and courts of a foreign country (i.e., the U.S.), when Mexico's own laws and

17   courts provide sufficient protection to creditors. These issues should have been deferred to the

18   jurisdiction of the Mexican courts for determination pursuant to Mexican law.

19   **B.   The Diaz Family Will Suffer Irreparable Harm**

20       "A showing of irreparable harm is the principal prerequisite for the issuance of a [Rule

21   8005] Stay." *Rothenberg v. Ralph D. Kaiser Co.*, 2007 B.R. 461, 463 (D.D.C. 1996). Under this

22   test, the moving party must demonstrate that such injury is likely before the other requirements

23   will be considered. *In re Bridgeport*, 132 B.R. 81, 83 (Bankr. D.Conn. 1991). Irreparable harm

24   must be "neither remote nor speculative, but actual and imminent." *Tucker Anthony Realty Corp.*

25   *v. Schlesinger* 888 F.2d 969, 975 (2d Cir. 1989). *In re Issa Corp.*, 142 Bankr. 75, 78 (Bankr.

26   S.D.N.Y. 1992) (recognizing that where debtor-restauranteur stands to be evicted from the

27   premises, and thereby lose its restaurant, the debtor will "indisputably" suffer irreparable harm);

28   *In re Slater*, 200 B.R. 491, 495 (E.D.N.Y. 1996) (Chapter 13 debtor would suffer irreparable

Bkr. No. 03-11155-LA7
Adv. Proc. No. 06-90369; 04-90392

1   harm if evicted from home). Most particularly when real property is involved, irreparable harm

2   is established because "monetary relief fails to provide adequate compensation for any interest in

3   real property, which by its very nature unique, which money damages may not adequately

4   compensate." See e.g. O'Hagan v. U.S., 86 F.3d 776,783 (8th Cir. 1996).

5        The risk that an appeal might become moot in the absence of a stay pending appeal may

6   satisfy the irreparable injury requirements. Several courts have held that mooting any appeal "is

7   a quintessential form of prejudice." *In re Adelphia Communications Corp.* 361 B.R. 337, 347-48

8   (S.D.N.Y. 2007); *In re Country Squire Associates of Carle Place, L.P.* 203 B.R. 182, 183 (2nd

9   Cir. 1996) (staying a foreclosure sale where it was "apparent that absent a stay pending appeal .

10  . the appeal will be rendered moot," resulting in a "quintessential form of prejudice" to

11  appellant); *In re Advanced Mining Sys. Inc.*, 173 B.R. 467, 468-69 (S.D.N.Y. 1994) (finding

12  irreparable injury where prong met where, absent a stay of the bankruptcy court's order, the

13  distribution of assets to creditors would moot any appeal and thus quintessentially prejudice

14  appellants). The fact is that loss of appellate rights is a "quintessential form of prejudice." Thus,

15  where the denial of a stay pending appeal risks mooting any appeal of significant claims of error,

16  the irreparable harm requirement is satisfied. Consequently, in evaluating the irreparable harm

17  element, it is necessary to analyze the risk that an appeal would be mooted in the absence of a

18  stay. *In re Adelphia Communications Corp.*, 361 B.R. 337, 348 (S.D.N.Y. 2007).

19       Here, the Villa Property is indisputably unique and requiring the Diaz Family to turn over

20  their vacation home would be tantamount to evicting them from it. Moreover, if they are forced

21  to turn over the property prior to a determination by the Court of Appeals, the appeal will

22  potentially become moot and the Diaz Family will be left without a remedy to address the

23  findings by the Bankruptcy Court. Accordingly, under the case law cited above, the Diaz Family

24  has satisfied the requirement that they will be irreparably harmed absent a stay.

25       **C.    The Kismet Plaintiffs Will Not Suffer Substantial Harm if the Stay is Granted**

26       In addition to showing irreparable harm, the party seeking a stay must also establish that

27  the non-moving party or other parties will not suffer substantial harm if the stay is granted. *In re*

28  *Adelphia Communications Corp.*, 361 B.R. 337, 349 (S.D.N.Y. 2007); *Mohammed*, 309 F.3d at

22

Bkr. No. 03-11155-LA7
Adv. Proc. No. 06-90369; 04-90392

115634/000000/947280.04

100.  In other words, the moving party must show that the balance of harms tips in favor of granting the stay. *Bermudez v. Reid*, 720 F.2d 748, 750 (2d Cir. 1983).  In this case, there will be no substantial harm or prejudice to the Kismet Plaintiffs if the judgment is stayed.  There is no risk of the Villa Property being sold or transferred since it is still subject to the Court's injunction.  Furthermore, Wolfgang Hahn testified at trial that the Villa Property was not necessary for his development and that it was "nothing special" but "just another property on a hill".  So a stay will not hold up the Kismet Plaintiffs' development project.  Accordingly, the balance of harms tips in favor of the Diaz Family and a stay is in order.

        **D.**    **Public Interest Considerations Mandate the Issuance of a Stay**

        Lastly, the party seeking stay must also establish that the public interest will be served by granting the stay. Case law signals a preference in favor of maintaining the status quo. *Feller v. Brock*, 802 F.2d 722, 727 (4th Cir.1986);  Although satisfaction of debts is no doubt supported by public interest, even stronger is the policy against potentially unnecessary forfeiture of homes and disturbance of the status quo. *In re Skinner* 202 B.R. 867, 869 (W.D.Va.,1996); *In re County Squire Assocs. Of Carle Place, L.P.* 203 B.R. 182 (B.A.P. 2d Cir. 1996).

        In this case, the public interest will not be served by denying the stay.  The status quo will be disturbed and the Diaz Family will be forced to forfeit their home.  Therefore, granting the stay will be in accordance with public policy against such a drastic result.

**IV.**

**THE COURT HAS DISCRETION TO REQUIRE A BOND**

        Bankruptcy Rule 8005 provides in relevant part that the "[t]he district court ... may condition the relief it grants under this rule on the filing of a bond or other appropriate security with the bankruptcy court." *In re Sphere Holding Corp.*, 162 B.R. 639, 644 (Bankr.E.D.N.Y.1994); *In re Max Sugarman Funeral Home, Inc.*, 94 B.R. 16, 17 (Bankr.D.R.I.1988) ("[T]he form, the amount, and the sufficiency[ ] of the bond generally[ ] are matters within the discretion of and for determination by the bankruptcy court.") (citing *In re Swift Aire Lines, Inc.*, 21 B.R. 12, 14 (9th Cir. BAP 1982)).

23

Bkr. No. 03-11155-LA7
Adv. Proc. No. 06-90369; 04-90392

115634/000000/947280.04

1    In determining whether a bond should be ordered, the court looks to whether the bond

2 would be necessary to protect "against diminution in the value of property pending appeal" and

3 to "secure the prevailing party against any loss that might be sustained as a result of an

4 ineffectual appeal." *In re Sphere Holding Corp.* 164 B.R. at 644. Moreover, the posting of a

5 bond "guarantees the costs of delay incident to the appeal." *In re Suprema Specialties*, 330 B.R.

6 at 96 (declining to impose a bond, but stating that if the say would have delayed payment to

7 creditors, 'a bond should be required to guarantee the costs of delay incident to the appeal). In

8 analyzing whether to order movants to post a bond in support of a stay pending an appeal of a

9 bankruptcy court order, district courts have obtained guidance from Federal Rule of Civil

10 Procedure 62(d). *State Indus., Inc. v. Mor-Flo Indus., Inc.,* 124 F.R.D. 613, 614 (E.D. Tenn.

11 1988) (bond required unless appellant can show "undue financial burden or other exceptional

12 circumstances). *In re Adelphia Communications Corp.* 361 B.R. 337, 350 (S.D.N.Y., 2007).

13    Here, by virtue of the injunction on the Villa Property already issued by the Bankruptcy

14 Court, there is no risk that the property will be transferred pending resolution of an appeal.

15 Further, there is no evidence that the Villa Property is at risk with regard to diminution in value.

16 Therefore, to the extent this court deems a bond to be necessary, the Diaz Family believes that

17 any such bond should be minimal.

18                                              **V.**

19    **THE DIAZ FAMILY IS ENTITLED TO A STAY AS A MATTER OF RIGHT IF IT**

20                                     **POSTS A BOND**

21    Generally, Rule 7062, which incorporates Rule 62(d) of the Federal Rules of Civil

22 Procedure, provides an automatic stay upon filing a supersedeas bond in cases of money

23 judgments. *In re Capital West Investors,* 180 B.R. 240, 242 (N.D. Cal. 1995).

24    When an appeal is taken from a judgment that is not a money judgment, but is

25 comparable to one or the other of these judgments, most of the few courts that have addressed the

26 issue appear (for purposes of Rule 62) to treat that judgment like the judgment to which it is

27 comparable. *In re Capital West Investors,* 180 B.R. 240, 243 (N.D. Cal. 1995). For example, in

28 *Hebert v. Exxon Corp.* 953 F.2d 936, 938 (5th Cir. 1992), the Fifth Circuit found no meaningful

24

Bkr. No. 03-11155-LA7
Adv. Proc. No. 06-90369; 04-90392

115634/000000/947280.04

1   distinction between a judgment for declaratory relief and a money judgment, and held that a

2   money judgment in the form of declaratory judgment constitutes a money judgment for purposes

3   of Rule 62(d).  *See also United States v. Mansion House Center Redevelopment Co.,* 682 F.Supp.

4   446, 450 (E.D. Mo. 1988) (treating a mortgage foreclosure judgment like a money judgment for

5   purposes of Rule 62(d)).   Under Bankruptcy Rule 7062 and FED.R.CIV.P. 62(d), a stay is a

6   matter of right where an interest in property is determined by the judgment. *In re Max Sugarman*

7   *Funeral Home, Inc.*  94 B.R. 16, 16 -17 (Bkrtcy.D.R.I.,1988).

8          In California, appellants in all actions pertaining to possession of real property, other than

9   unlawful detainer actions, are entitled to a stay pending appeal as a matter of right, upon posting

10  a bond under California Code of Civil Procedure section 917.4. *Goldie's Bookstore, Inc. v.*

11  *Superior Court of State of Cal.,* 739 F.2d 466, 468 (9th Cir. 1984) ("Section 917.4 of the

12  California Code of Civil Procedure grants to all non-tenant occupants of real property an

13  *automatic* stay of an adverse judgment pending appeal.")

14         Under the relevant case law cited above, if the Diaz Family is willing and able to post a

15  bond, it is entitled to a stay of the judgment as a matter of right.  Therefore, if the Court is

16  unwilling to grant a discretionary stay without a bond, it must set the amount of the bond in

17  accordance with Federal Rule of Bankruptcy Procedure 7062(d).

18                                          **VI.**

19                                     **CONCLUSION**

20         In light of the foregoing, Defendants Martha Margarita Barba de la Torre and Alejandro

21  Diaz-Barba respectfully request the Court (A) to grant a discretionary stay of the judgment in

22  these cases without requiring a bond or, in the alternative, set the amount of the bond that will be

23  required to be posted.

24  DATED: July 31, 2008                     PROCOPIO, CORY, HARGREAVES
                                              & SAVITCH, LLP
25

26

27                                          By:  /s/ Geraldine A. Valdez
                                                 Geraldine A. Valdez
28                                               Attorneys Defendants
                                                 Alejandro Diaz-Barba and
                                                 Martha Margarita Barba de la Torre

                                           25

                                                           Bkr. No. 03-11155-LA7
                                                           Adv. Proc. No. 06-90369; 04-90392

1   distinction between a judgment for declaratory relief and a money judgment, and held that a

2   money judgment in the form of declaratory judgment constitutes a money judgment for purposes

3   of Rule 62(d).  *See also United States v. Mansion House Center Redevelopment Co.*, 682 F.Supp.

4   446, 450 (E.D. Mo. 1988) (treating a mortgage foreclosure judgment like a money judgment for

5   purposes of Rule 62(d)).    Under Bankruptcy Rule 7062 and FED.R.CIV.P. 62(d), a stay is a

6   matter of right where an interest in property is determined by the judgment. *In re Max Sugarman*

7   *Funeral Home, Inc.* 94 B.R. 16, 16 -17 (Bkrtcy.D.R.I.,1988).

8          In California, appellants in all actions pertaining to possession of real property, other than

9   unlawful detainer actions, are entitled to a stay pending appeal as a matter of right, upon posting

10  a bond under California Code of Civil Procedure section 917.4. *Goldie's Bookstore, Inc. v.*

11  *Superior Court of State of Cal.*, 739 F.2d 466, 468 (9th Cir. 1984) ("Section 917.4 of the

12  California Code of Civil Procedure grants to all non-tenant occupants of real property an

13  *automatic* stay of an adverse judgment pending appeal.")

14         Under the relevant case law cited above, if the Diaz Family is willing and able to post a

15  bond, it is entitled to a stay of the judgment as a matter of right.  Therefore, if the Court is

16  unwilling to grant a discretionary stay without a bond, it must set the amount of the bond in

17  accordance with Federal Rule of Bankruptcy Procedure 7062(d).

18                                         **VI.**

19                                    **CONCLUSION**

20         In light of the foregoing, Defendants Martha Margarita Barba de la Torre and Alejandro

21  Diaz-Barba respectfully request the Court (A) to grant a discretionary stay of the judgment in

22  these cases without requiring a bond or, in the alternative, set the amount of the bond that will be

23  required to be posted.

24  DATED: August 6, 2008.                      PROCOPIO, CORY, HARGREAVES
                                                    & SAVITCH, LLP.
25

26

27                                          By: _____
                                                  Geraldine A. Valdez
28                                                Attorneys Defendants
                                                  Alejandro Diaz-Barba and
                                                  Martha Margarita Barba de la Torre

                                            25

115634/000000/947280.04

| | |
|---|---|
| 1 | Stephen B. Morris (SBN 126192) |
| | Mark C. Hinkley (SBN 138759) |
| 2 | MORRIS & ASSOCIATES |
| | 444 West C Street, Suite 300 |
| 3 | San Diego, California 92101 |
| | Telephone: 619.239.1900 |
| 4 | |

Stephen B. Morris (SBN 126192)
Mark C. Hinkley (SBN 138759)
MORRIS & ASSOCIATES
444 West C Street, Suite 300
San Diego, California 92101
Telephone: 619.239.1900

Geraldine A. Valdez (Bar No. 174305)
Kendra J. Hall (Bar No. 166836)
Farzeen Essa (Bar No.
PROCOPIO, CORY, HARGREAVES &
   SAVITCH LLP
530 B Street, Suite 2100
San Diego, California 92101
Telephone: 619.238.1900

Attorneys for Appellants Alejandro Diaz-Barba and
Martha Margarita Barba de la Torre

D. Anthony Gaston (Bar No. 57074)
Attorney at Law
Corporate Center
550 West C Street, Suite 700
San Diego, California 92101
Telephone: 619.234.3103

Attorney for Defendant Martha
Margarita Barba de la Torre

**FILED** 11:20 a.m.

AUG - 7 2008

HAROLD S. MARENUS, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

UNITED STATES BANKRUPTCY APPELLATE PANEL

OF THE NINTH CIRCUIT

In re:

JERRY LEE ICENHOWER dba Seaview
Properties, and DONNA LEE ICENHOWER,

          Debtors

ALEJANDRO DIAZ-BARBA;
MARTHA MARGARITA BARBA DE LA TORRE

          Appellant,

   v.

KISMET ACQUISITION, LLC

          Appellee.

BAP No. _SC-08-1198_

Bankruptcy Court (S.D. Cal.)

Case No. 03-11155-LA7

Adv. Proc. No.: 06-90369
Adv. Proc. No.: 04-90392

**PROOF OF SERVICE**

        I am a resident of the State of California, over the age of eighteen years, and not a party to
the within action. My business address is Procopio, Cory Hargreaves & Savitch LLP, 530 "B"
Street, Suite 2100, San Diego, California 92101. On August 6, 2008 in this action I served the
following document(s) described as:

        1.    **EMERGENCY** MOTION OF DEFENDANTS MARTHA MARGARITA
              BARBA DE LA TORRE AND ALEJANDRO DIAZ-BARBA FOR STAY OF
              JUDGMENT PENDING APPEAL;

Bk. No. 03-11155-LA7
Adv. Proc. No. 06-90369; 04-90392

115634/000000/950583.01

1       2.      **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
2             **EMERGENCY MOTION OF DEFENDANTS MARTHA MARGARITA BARBA DE LA TORRE AND ALEJANDRO DIAZ-BARBA FOR STAY OF**
3             **JUDGMENT PENDING APPEAL; and**

   3.      **APPENDIX IN SUPPORT OF EMERGENCY MOTION OF DEFENDANTS**
4             **MARTHA MARGARITA BARBA DE LA TORRE AND ALEJANDRO**
5             **DIAZ-BARBA FOR STAY OF JUDGMENT PENDING APPEAL**

6    _____by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.  A copy of the transmission confirmation report is
7    attached hereto.

8    _____by placing the document(s) listed above in a sealed envelope with postage thereon fully
9    prepaid, in the United States mail at San Diego, California addressed as set forth below.  I am readily familiar with the firm's practice of collection and processing correspondence
10   for mailing.  Under that practice, it would be deposited with the U.S. Postal Service on the same day with postage thereon fully prepaid in the ordinary course of business.  I am
11   aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for
12   mailing an affidavit.  (SEE ATTACHED MAILING LIST.)

13   __XX__by placing the document(s) listed above in a sealed overnight envelope and depositing it for overnight delivery at San Diego, California, addressed as set forth below.  I am readily
14   familiar with the practice of this firm for collection and processing of correspondence for processing by overnight mail.  Pursuant to this practice, correspondence would be
15   deposited in the overnight box located at 530 "B" Street, San Diego, California 92101 in the ordinary course of business on the date of this declaration.

16   _____by personally delivering the document(s) listed above to the person(s) at the address(es)
17   set forth below.

18   _____by electronic mail to the following:

19   _____(State)  I declare under penalty of perjury under the laws of the State of California that the forgoing is true and correct.

20   __XX__(Federal)  I declare that I am employed in the office of a member of the bar of this court at
21   whose direction the service was made and declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

22   Executed on August 6, 2008, at San Diego, California.

23

24   /s/  Susan P. Strong

25

26

27

28

2

Bk. No.  03-11155-LA7
Adv. Proc. No. 06-90369; 04-90392

115634/000000/950583.01

## SERVICE LIST

Ali M.M. Mojdehi, Esq.
Baker & McKenzie LLP
12544 High Bluff Drive, Third Floor
San Diego, CA 92130

David Ortiz
Jaeji Jong
Office of the U.S. Trustee
Southern District of California
402 West Broadway, Suite 600
San Diego, CA 92101

Gerald H. Davis
P.O. Box 2850
Palm Springs, CA 92263

Gary B. Rudolph, Esq.
Sparber Rudolph Annen APLC
701 B Street, Suite 1000
San Diego, CA 92101

Jerry L. Icenhower
684 Margarita Avenue
Coronado, CA 92118

Donna L. Icenhower
684 Margarita Avenue
Coronado, CA 92118

Ronald White
762 W. El Segundo Blvd.
Gardena, CA 90247

Stephen B. Morris, Esq.
Morris & Associates
444 West C Street, Suite 200
San Diego, CA 92101

D. Anthony Gaston, Esq.
Corporate Center
550 West C. Street, Suite 700
San Diego, CA 92101

3

115634/000000/950583.01