1  Ali M.M. Mojdehi, State Bar No. 123846
   Janet D. Gertz, State Bar No. 231172
2  **BAKER & McKENZIE LLP**
   12544 High Bluff Drive, Third Floor
3  San Diego, CA  92130-3051
   Telephone:  +1 858-523-6200
4
5  Attorneys for Plaintiff/Appellee
   KISMET ACQUISITION, LLC
6
7
8              UNITED STATES DISTRICT COURT
9            SOUTHERN DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| 11  In re | Case No.: 3:08-CV-01446-BTM-BLM |
| 12  JERRY LEE ICENHOWER dba Seaview Properties, and DONNA LEE ICENHOWER, | Bankruptcy Case No.  03-11155-LA-7 |
| 13 | Chapter Number 7 |
| 14  Debtors. | Adv. Proc. No:  04-90392 |
| 15  ALEJANDRO DIAZ-BARBA AND MARTHA MARGARITA BARBA DE LA TORRE, | Adv. Proc. No.:  06-90369 |
| 16  Defendants/Appellants, | **_SUPPLEMENTAL_ REQUEST FOR JUDICIAL NOTICE BY PLAINTIFF, KISMET ACQUISITION, LLC, IN SUPPORT OF ITS OPPOSITION TO DIAZ DEFENDANTS' MOTION FOR STAY PENDING APPEAL** |
| 17  v. | |
| 18  KISMET ACQUISITION, LLC, | |
| 19  Plaintiff/Appellee. | DATE:  August 28, 2008 |
| 20 | TIME:   4:00 p.m. |
| 21 | DEPT:  15 |
| 22 | JUDGE: Hon. Barry Ted Moskowitz |

23  / / /
24  / / /
25  / / /
26  / / /
27  / / /
28  / / /

1

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA  92130
+1 858 523 6200

SDODMS1/692923.1

CASE NO. 3:08-CV-01446-BTM-BLM
_SUPPLEMENTAL_ REQUEST FOR JUDICIAL NOTICE BY PLAINTIFF, KISMET ACQUISITION, LLC, IN SUPPORT OF ITS
OPPOSITION TO DIAZ DEFENDANTS' MOTION FOR STAY PENDING APPEAL

Pursuant to Rule 9017 of the Federal Rules of Bankruptcy Procedure and Rule 201 of the Federal Rules of Evidence, Plaintiff/Appellee Kismet Acquisition, LLC requests this Court to take judicial notice of the following document in support of their Opposition to the Diaz Defendants' Motion for Stay Pending Appeal:

| EXHIBIT NO. | DOCUMENT NAME | DATE |
|---|---|---|
| 1 | OPPOSITION BY PLAINTIFF KISMET ACQUISITION, LLC TO EMERGENCY MOTION OF DEFENDANTS MARTHA BARBA AND ALEJANDRO DIAZ-BARBA FOR STAY OF JUDGMENT PENDING APPEAL [FED. R. BANKR. PROC. 7062, 8005] AND EXHIBIT "A" THERETO | Filed August 7, 2008 in Bankr. S.D. Cal., Adv. Procs. 04-90392; 06-90369 |

Fed. R. Bankr. Proc. 8005 requires that should an appellant's motion request for a stay be presented to the District Court following a denial by the Bankruptcy Court, the "motion shall show why the relief . . . was not obtained from the bankruptcy judge." As is reflected in the Exhibit 1 attached to the Diaz Defendants' Motion for Stay of Judgment Pending Appeal ("Motion"), the Bankruptcy Court denied the Diaz Defendants' request to issue a discretionary stay pursuant to F.R.B.P. 7062: "[f]or the reasons set forth in Part III, Pg. 6-17 of Plaintiff Kismet's Opposition ([Bankruptcy] D.E. #245)."

As is reflected in the Exhibit 2 attached to the Diaz Defendants' Motion, the Bankruptcy Court otherwise denied the Diaz Defendants' request for a stay pursuant to F.R.B.P. 7062(d) for the following reasons: "[f]or the reasons set forth in Part II, Pg. 3-6, of Plaintiff Kismet's Opposition ([Bankruptcy] D.E. #245), Diaz Defendants are not entitled to a stay pursuant to F.R.B.P. 7062(d), nor does the Court have the present ability to calculate the appropriate amount of any such bond."

In order to complete the record on review, therefore, Kismet requests the Court to take judicial notice of its Opposition to the Diaz Defendants' Motion filed with the Bankruptcy Court, which Rule 8005 otherwise necessitated be submitted by the Diaz Defendants in the first instance in support of their Motion to this Court.

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92130
+1 858 523 6200

Respectfully submitted,

Dated:   August 25, 2008                          BAKER & McKENZIE LLP


By: /s/  Ali M.M. Mojdehi
    Ali M.M. Mojdehi
    Janet D. Gertz

    Attorneys for Plaintiff/Appellee
    Kismet Acquisition, LLC, a Delaware
    limited liability company

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA  92130
+1 858 523 6200

3

CASE NO. 3:08-CV-01446-BTM-BLM
*SUPPLEMENTAL* REQUEST FOR JUDICIAL NOTICE BY PLAINTIFF, KISMET ACQUISITION, LLC, IN SUPPORT OF ITS
OPPOSITION TO DIAZ DEFENDANTS' MOTION FOR STAY PENDING APPEAL

SDODMS1/692923.1

# EXHIBIT "1"

1   Ali M.M. Mojdehi, State Bar No. 123846
    Janet D. Gertz, State Bar No. 231172
2   **BAKER & McKENZIE LLP**
    12544 High Bluff Drive, Third Floor
3   San Diego, CA 92130-3051
    Telephone: +1 858-523-6200
4
    Attorneys for Plaintiff
5   KISMET ACQUISITION, LLC
6
7
8                  UNITED STATES BANKRUPTCY COURT
9                  SOUTHERN DISTRICT OF CALIFORNIA
10
11  | In re | Case No. 03-11155-LA-7 |
12  | JERRY LEE ICENHOWER dba Seaview Properties, and DONNA LEE ICENHOWER, | Chapter Number 7 |
13  | | Adv. Proc. No: 04-90392 |
    | Debtors. | Adv. Proc. No: 06-90369 |
14
15  KISMET ACQUISITION, LLC,

16              Plaintiff,       **OPPOSITION BY PLAINTIFF
                                 KISMET ACQUISITION, LLC TO
                                 EMERGENCY MOTION OF
17  v.                           DEFENDANTS MARTHA BARBA
                                 AND ALEJANDRO DIAZ-BARBA
18  JERRY L. ICENHOWER an individual; et al.   FOR STAY OF JUDGMENT
                                 PENDING APPEAL [FED. R. BANKR.
19              Defendants.      PROC. 7062, 8005]**

20                               DATE: None set
                                 TIME    None set
21                               DEPT: 2
                                 JUDGE: Hon. Louise DeCarl Adler
22
23
24  ///
25  ///
26  ///
27  ///
28  ///

                                    1

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92130
+1 858 523 6200

CASE NO. 03-11155-LA-7 ADV. NO. 04-90392
OPPOSITION BY PLAINTIFF KISMET ACQUISITION, LLC TO EMERGENCY MOTION OF DEFENDANTS MARTHA BARBA
AND ALEJANDRO DIAZ-BARBA FOR STAY OF JUDGMENT PENDING APPEAL [FED. R. BANKR. PROC. 7062, 8005]
SDODMS1/692323.1

## TABLE OF CONTENTS

**Page**

I.  THE DIAZ DEFENDANTS ASSERT A REVISIONIST FACTUAL
    BACKGROUND ................................................................................................ 2

II. THE DIAZ DEFENDANTS ARE NOT ENTITLED TO A STAY OF RIGHT
    UNDER FED. R. BANKR. PROC 7062(D)............................................................ 3

III. THE DIAZ DEFENDANTS ARE NOT ENTITLED TO A DISCRETIONARY
     STAY UNDER FED. R. BANKR. PROC. 7062(C) .................................................. 6

     A.  Under Rule 8005, the Governing Law Requires Each Hilton Element to be
         Satisfied........................................................................................................ 6

     B.  The Diaz Defendants Cannot Demonstrate Any Probability of Success on the
         Merits............................................................................................................ 9

         1.  The Court Has Subject Matter Jurisdiction Over the Adversary
             Proceedings................................................................................... 10

         2.  The Recovery Pursuant to Section 550 Has No Extraterritorial Effect;
             Avoidance f a Post-Petition Transfer of Property of the Estate Under
             Section 549 of the Bankruptcy Code Has Express Extraterritorial
             Application.................................................................................... 11

         3.  There Are No Facts Suggesting Comity Should Have Been Applied .......... 12

     C.  The Diaz Defendants' Claims of Irreparable Harm are of No Consequence ............ 15

     D.  The Public Interest Does Not Militate in the Diaz Defendants' Favor.................... 17

IV. CONCLUSION.................................................................................................. 18

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA  92130
+1 858 523 6200

i

CASE NO. 03-11155-LA-7 ADV. NO. 04-90392

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Acevedo-Garcia v. Vera Monroig,*
296 F.3d 13 (1st Cir. 2002)................................................................................9

*Acton v. Fullmer (In re Fullmer),*
323 B.R. 287 (Bankr. D. Nev. 2005) ...................................................................2

*In re Adelphia Communications Corp.,*
361 B.R. 337 (S.D.N.Y. 2007)............................................................................2

*Allstate Life Ins. Co. v. Linter Group Ltd.,*
994 F.2d 996 2d (cir. 1993) ...............................................................................12

*Ariz. Contrs. Ass'n, Inc. v. Candelaria,* No. CV07-02496, 2008 U.S. Dist. 2008 ......................2, 6

*Blankenship v. Boyle,*
447 F.2d 1280 (D.D.C. 1971) ..............................................................................1

*Brady v. Brown,*
51 F.3d 810 (9th Cir. 1995) ........................................................................11, 14

*In re Brun,*
360 B.R. 669 ........................................................................................................6

*In re Capital West Investors,*
180 B.R. 240 (N.D. Cal. 1995) .........................................................................3, 4

*County of Alameda v. Weinberger,*
520 F.2d 344, 1975 U.S. App. LEXIS 14117 (9th Cir.1975) ...............................7, 9

*Donovan v. Fall River Foundry Co.,*
696 F.2d 524 (7th Cir. 1982) ..............................................................................3

*E.E.O.C. v. Arabian American Oil Co.,*
499 U.S. 244 (1991)...........................................................................................11

*Fall v. Eastin,*
215 U.S. 1 (1909)] .......................................................................................10, 11

*Feltman v. Warmus (In re American Way Serv. Corp.),*
229 B.R. 496 (Bankr. S.D. Fla. 1999)..................................................................6

*In re Forty-Eight Insulations, Inc.,*
115 F.3d 1294 (7th Cir. 1997) ....................................................................8, 9, 10

*Gagan v. Sharer,*
2005 U.S. Dist. LEXIS 27409 (D. Ariz. Nov. 1, 2005)..........................................1

*Garcia-Mir v. Meese,*
781 F.2d 1450 (11th Cir. 1986) ...........................................................................9

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92130
+1 858 523 6200

CASE NO. 03-11155-LA-7 ADV. NO. 04-90392

# TABLE OF AUTHORITIES

**Page**

*Gleasman v. Jones, Day, Reavis & Pogue (In re Gleasman)*,
111 B.R. 595 (Bankr. W.D. Tex. 1990)..................................................................................5

*Golden Gate Restaurant Ass'n. v. City of San Francisco*,
512 F.3d 1112 (9th Cir. 2008) ...........................................................................................7

*Goldies Bookstore, Inc. v. Superior Court*,
739 F.2d 466 ......................................................................................................................2

*Government Guarantee Fund of the Republic of Finland v. Hyatt Corp.*,
167 F.R.D. 399 (D.V.I. 1996)..............................................................................................5

*Gushi Bros. Co. v. Bank of Guam*,
28 F.3d 1535 (9th Cir. 1994) ........................................................................................11, 12

*In re Hargis*,
887 F.2d 77 (5th Cir.1989) ..............................................................................................13

*Hartford Fire Ins.*,
509 U.S. at 799.................................................................................................................13

*Hebert v. Exxon Corp.*,
953 F.2d 936 (5th Cir. 1992) .........................................................................................4, 5

*Hilton v. Braunskill*,
481 U.S. 770 (1987)........................................................................................................6, 7

*Hilton v. Guyot*,
159 U.S. 113, 16 S. Ct. 139, 40 L. Ed. 95 (1895)............................................................12

*Hong Kong & Shanghai Banking Corp. v. Simon (In re Simon)*,
153 F.3d 991 (9th Cir. 1998) ............................................................................................14

*In re Issa Corp.*, 142 Bankr. 75, 78 ...................................................................................1

*In re Krause*,
2007 Bankr. LEXIS 3049 ...................................................................................................2

*LaRouche v. Kezer*,
20 F.3d 68 (2d Cir. 1994)..................................................................................................10

*Lopez v. Heckler*,
713 F. 2d 1432 (9th Cir. 1983, *rev'd on other grounds*, 469 US. 1082 (1984) .....................7, 8

*In re Max Sugarman Funeral Home, Inc.*,
94 B.R. 16 (Bankr. D.R.I. 1988).........................................................................................4

*Maxwell Commc'n Corp. PLC v. Societe Generale PLC (In re Maxwell Commc'n Corp.)*,
93 F.3d 1036 (2d Cir. 1996)..............................................................................................13

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92130
+1 858 523 6200

CASE NO. 03-11155-LA-7 ADV. NO. 04-90392

**TABLE OF AUTHORITIES**

Page

*Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog,*
 945 F.2d 150 (6th Cir. Mich. 1991) ..................................................................9

*Miller v. LeSEA Broadcasting, Inc.,*
 927 F. Supp. 1148 (E.D. Wisc. 1996) ..............................................................5

*Mohammed v. Reno,*
 309 F.3d 95 (2d Cir. 2002) ............................................................................10

*NLRB v. Westphal,*
 859 F.2d 818 (9th Cir. 1988) ...........................................................................3

*Natural Res. Def. Council, Inc. v. Winter,*
 502 F.3d 859 (9th Cir. 2007) ...........................................................................7

*O'Hagan v. U.S.,*
 86 F. 3d 776 (8th Cir. 1996) ............................................................................1

*Ohanian v. Irwin (In re Irwin),* 338 B.R. AT 839 .................................................9

*Rose Townsend Trust v. Johnston (In re Johnston),*
 No. 06-80040, 2007 WL 2684736 (Bankr. E.D. Wash. Sept. 7, 2007) ........8

*Silicon Valley Bank v. Pon (In re Pon),*
 1994 U.S. Dist. LEXIS 2559 (LEXIS Citation only) (N.D. Cal. Feb. 25, 1994) (citing *In re Dial Industries, Inc.*, 137 Bankr. 247, 250-251 (Bankr. N.D. Ohio 1992)) ..........................8

*Thomas v. City of Evanston,*
 636 F.Supp. 587 (An appellant's failure to meet their burden of persuasion regarding even one of these factors requires denial of the stay) ..................................8

*United States v. Fitzgerald,*
 884 F. Supp. 376 (D. Idaho 1995) ...................................................................9

*United States v. Krause (In re Krause),*
 No. 05-17429, 2007 Bankr. LEXIS 3049 (Bankr. D. Kansas August 29, 2007) .....................5

*United States v. Mansion House Center Redevelopment Co.,*
 682 F. Supp. 446 (E.D. Mo. 1988) ..................................................................4

*United States v. Texas,*
 523 F. Supp. 703 (E.D. Tex. 1981) ..................................................................2

*In re Wymer,*
 5 B.R. 806 (B.A.P. 9th Cir. 1980) ...................................................................7

*Yeganeh v. Sims (In re Yeganeh),*
 2006 U.S. Dist. LEXIS 32765 (N.D. Cal. May 12, 2006) ...........................2, 9

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92130
+1 858 523 6200

iv

CASE NO. 03-11155-LA-7 ADV. NO. 04-90392

# TABLE OF AUTHORITIES

**Page**

## STATE CASES

*Cf. Hurtado v. Superior Court,*
    11 Cal. 3d 574, 522 P.2d 666, 114 Cal. Rptr. 106 (Cal. 1974).................................................13

## DOCKETED CASES

*Dynamic Finance Corp. v. Kipperman (In re North Plaza, LLC),*
    Case No. 08-CV-1194................................................................................................................8

## FEDERAL STATUTES AND RULES

11 U.S.C. § 541(a) ...........................................................................................................................12

28 U.S.C. §§ 157(a) ..........................................................................................................................12

Under 28 U.S.C. § 1334(e) .........................................................................................................12, 14

9th Cir. Rule 36-3 ...............................................................................................................................8

Fed. R. App. Proc. 32.1 ......................................................................................................................8

Fed. R. Bankr. Proc. 7062 ......................................................................................................2, 3, 6, 8

Fed. R. Civ. Proc. 62...........................................................................................................................2

Fed. Rule Bankr. Proc. 8005 ..............................................................................................................6

Federal Rule Civ. Proc. 62(c) ............................................................................................................6

Federal Rule Civ. Proc.  62(a)  .....................................................................................................2, 3, 4

Federal Rule Civ. Proc.  62(c)  ..........................................................................................................7

Federal Rule Civ. Proc.  62(d)  .......................................................................................................3, 4

Fed. Rule Bankr. Proc. 1001  ............................................................................................................3

Fed. Rule Bankr. Proc.  8005  .........................................................................................3, 6, 7, 8, 10,

## OTHER

2 Matthew Bender Practice Guide, *Federal* Pretrial *Civil Procedure in California*
§ 19.08[3][f] ......................................................................................................................................7

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA  92130
+1 858 523 6200

CASE NO. 03-11155-LA-7 ADV. NO. 04-90392

1    Plaintiff Kismet Acquisition, LLC, ("Kismet") hereby submits its Opposition to the

2  Emergency Motion of Defendants Martha Barba and Alejandro Diaz-Barba ("Diaz Defendants") for

3  Stay of Judgment Pending Appeal ("Emergency Stay Motion").  For the reasons set forth below,

4  Kismet respectfully requests the Court to deny the Motion.

5    A stay pending appeal is an "extraordinary remedy."  It should be used sparingly.  *Ariz.*

6  *Contrs. Ass'n, Inc. v. Candelaria*, No. CV07-02496, 2008 U.S. Dist. 2008 WL 486002 (D. Ariz. Feb.

7  19, 2008) (citing *United States v. Texas*, 523 F. Supp. 703, 729 (E.D. Tex. 1981).  Here, there is no

8  reason for granting a stay.

9    The Emergency Stay Motion is determined pursuant to Fed. R. Bankr. Proc. 7062, which

10  incorporates by reference Fed. R. Civ. Proc. 62, and Fed. R. Bankr. Proc. 8005, as they have been

11  interpreted by the courts of the Ninth Circuit.  As discussed below, there is no stay relief available to

12  the Diaz Defendants under these Rules and their interpretive precedent.

13    First, the Diaz Defendants are not entitled to a stay of right upon the posting of a supersedeas

14  bond pursuant to Fed. R. Bankr. Proc. 7062(d) because the judgment being appealed from is neither

15  a monetary judgment nor it is closely analogous to a monetary judgment.  Rather, the relief granted

16  is most closely identified with a mandatory injunction.  Second, the Diaz Defendants' cannot obtain

17  a discretionary stay upon appeal under Fed. R. Bankr. Proc 7062(a) where they are unable to

18  demonstrate *any* likelihood of success on the merits—much less the requisite high probability of

19  success needed to justify a discretionary stay.  As discussed below, the Diaz Defendants cannot

20  demonstrate the existence of any *legitimate* legal questions in respect to the Court's Findings of Fact

21  and Conclusions of Law and Amended Judgment (collectively, the "Judgment").  Furthermore,

22  where, as here, the Diaz Defendants cannot present a colorable case on the merits on appeal, they are

23  not otherwise entitled to a "free ticket" for a stay on appeal based solely upon their assertions that

24  they will face irreparable harm from the execution of the Judgment.  As such, the Diaz Defendants'

25  request for a stay pending appeal should be denied.

26  **I.    THE DIAZ DEFENDANTS ASSERT A REVISIONIST FACTUAL BACKGROUND**

27    The Diaz Defendants have included in their Emergency Stay Motion approximately seven

28  pages of "Factual Background."  The "Factual Background" plainly seeks to recharacterize the

2

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92130
+1 858 523 6200

CASE NO. 03-11155-LA-7 ADV. NO. 04-90392
OPPOSITION BY PLAINTIFF KISMET ACQUISITION, LLC TO EMERGENCY MOTION OF DEFENDANTS MARTHA BARBA
AND ALEJANDRO DIAZ-BARBA FOR STAY OF JUDGMENT PENDING APPEAL [FED. R. BANKR. PROC. 7062, 8005]
SDODMS1/692323.1

1    record through artful wordsmithing.  For example, notably absent from the Diaz Defendants'

2    recitation are the substantial portion of the numerous "red flags" concerning the transaction, which

3    are otherwise presented in great detail in the Judgment.  There is no mention in the Diaz Defendants

4    monologue of the Diaz Defendants' and their attorney's knowledge of the Debtors' bankruptcy prior

5    to the close of the 2004 transaction for the Villa Property.  The narrative includes irrelevant *ad*

6    *hominem* attacks on the plaintiff, which are not supported by the record and, frankly, have no proper

7    place in the Emergency Motion.  As such, Kismet opposes the entirety of Section II of the Diaz

8    Defendants' Emergency Stay Motion and submits in its place Section II of the Court's Consolidated

9    Findings of Fact and Conclusions of Law, which are incorporated herein by reference.

10   **II.    THE DIAZ DEFENDANTS ARE NOT ENTITLED TO A STAY OF RIGHT UNDER**

11                       **FED. R. BANKR. PROC 7062(d)**

12          The Diaz Defendants contend that they are entitled to receive a stay as a matter of right under

13   Fed. R. Bankr. Proc. 7062(d), provided that they post a supersedeas bond.  Suggesting that the

14   Amended Judgment is "comparable to" a money judgment, the Diaz Defendants boldly claim that "if

15   the Court is unwilling to grant a discretionary stay without a bond, it must set the amount of the bond

16   in accordance with Federal Rule of Bankruptcy Procedure 7062(d).  [Motion at 25.]  This is not an

17   accurate depiction of the applicable law concerning the requirement for obtaining a stay in

18   connection with the posting of a supersedeas bond.

19          Fed. R. Civ. Proc. 62(d) provides that "[w]hen an appeal is taken the appellant by giving a

20   supersedeas bond may obtain a stay subject to the exceptions contained in subdivision (a) of this

21   rule."  Rule 62(a) provides that "[u]nless otherwise ordered by the court, an interlocutory or final

22   judgment in an action for an injunction or in a receivership action, or a judgment or order directing

23   an accounting in an action for infringement of letters patent," shall not be stayed pending appeal.

24   The Ninth Circuit strictly limits the application of Rule 62(d) to monetary judgments.  *See NLRB v.*

25   *Westphal*, 859 F.2d 818 (9th Cir. 1988) (citing *Donovan v. Fall River Foundry Co.*, 696 F.2d 524 (7th

26   Cir. 1982)); *see also In re Capital West Investors*, 180 B.R. 240, 242 (N.D. Cal. 1995) (stating that

27   "the Seventh and Ninth Circuits have given clear effect to the limitation (of the stay of right to

28   appeals from money judgments)").

3

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA  92130
+1 858 523 6200

SDODMS1/692323.1

CASE NO. 03-11155-LA-7 ADV. NO. 04-90392
OPPOSITION BY PLAINTIFF KISMET ACQUISITION, LLC TO EMERGENCY MOTION OF DEFENDANTS MARTHA BARBA
AND ALEJANDRO DIAZ-BARBA FOR STAY OF JUDGMENT PENDING APPEAL [FED. R. BANKR. PROC. 7062, 8005]

1    Courts necessarily utilize a comparability test for judgments that do not neatly fit into the

2    specific named categories articulated under Rule 62(a) and (d), determining which type they are

3    more closely analogous to. This application does not assist the Diaz Defendants here. No amount of

4    shoehorning and legal maneuvering will fit the "square peg" of the Amended Judgment into the

5    "round hole" of a monetary judgment.

6    The cases cited by the Diaz Defendants as examples are instructive and demonstrate the

7    requirement for a very close equivalency to a monetary judgment to be deemed "comparable." In

8    *Capital West*, the appellants were unsuccessful in attempting to argue that a supersedeas stay would

9    apply to an order confirming a chapter 11 plan. The court held that the order was not the

10   "equivalent" of a money judgment, but instead accomplished a distribution of rights among the

11   parties to the bankruptcy. *Id.* In *Hebert v. Exxon Corp.*, 953 F.2d 936 (5th Cir. 1992), the Fifth

12   Circuit extended a stay of right to a declaratory judgment that required the defendant to pay a

13   specific sum of money. The court aptly reasoned that the applicability of Rule 62(d) turned not on

14   the distinction between a declaratory or money judgment but rather "whether the judgment involved

15   is monetary or nonmonetary." *Id.* at 938. *United States v. Mansion House Center Redevelopment*

16   *Co.*, 682 F. Supp. 446, 450 (E.D. Mo. 1988) simply stands for the unremarkable proposition that a

17   foreclosure action on a deed of trust or mortgage—which represents the liquidation of the collateral

18   for a sum certain owed in default of a loan obligation—has equivalency to a money judgment.[1]

19   The policy underlying the limitation of Rule 62(d) to money judgments provides further

20   guidance as to why a supersedeas bond is inapplicable to these proceedings. Courts have restricted

21   the application of Rule 62(d) to judgments for money "because a bond may not adequately

22   compensate a non-appealing party for loss incurred as a result of the stay of a non-money judgment."

23   *Hebert*, 953 F.2d at 938 (citing *Westphal*, 859 F.2d at 819). In this respect, a stay of right is

24   unavailable where the transfer of an asset is involved, as a bond cannot compensate for the loss of

25   use of the asset by the appellee during the duration of the appeal. In this respect, the supersedeas

26

27   _____

[1] *In re Max Sugarman Funeral Home, Inc.*, 94 B.R. 16 (Bankr. D.R.I. 1988), also cited by the Diaz
28   Defendants, provided no analysis whatsoever, otherwise appears to disagree with the narrow
     approach followed in the Ninth and Seventh Circuits, and thus is not persuasive.

4

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92130
+1 858 523 6200

CASE NO. 03-11155-LA-7 ADV. NO. 04-90392
OPPOSITION BY PLAINTIFF KISMET ACQUISITION, LLC TO EMERGENCY MOTION OF DEFENDANTS MARTHA BARBA
AND ALEJANDRO DIAZ-BARBA FOR STAY OF JUDGMENT PENDING APPEAL [FED. R. BANKR. PROC. 7062, 8005]
SDODMS1/692323.1

1  bond must be a "kind for kind security to guaranty the [money] judgment" *Id.* (quoting *United*
2  *States v. United States Fishing Vessel MAYLIN*, 130 F.R.D. 684, 686 (S.D. Fla. 1990)). The Diaz
3  Defendants' unsupported proposition that actions "pertaining to possession of real property" should
4  always benefit from a stay of right upon posting of a supersedeas bond is belied by the substantial
5  weight of authority. In fact, a judgment affecting the *possession* of real property (as opposed to a
6  mortgage foreclosure action) will generally never be able to be treated "kind for kind" with money
7  because of the issues concerning compensation for the appellee's loss of the *use* of the property
8  during the pendency of the appeal. This is particularly true where, as here, income-producing
9  commercial property is involved. *See, e.g. Government Guarantee Fund of the Republic of Finland*
10 *v. Hyatt Corp.*, 167 F.R.D. 399 (D.V.I. 1996) (denying motion for stay of order to vacate hotel
11 property, holding that "the posting of mere money by Hyatt in this case cannot adequately ensure
12 that [appellee] would be adequately compensated for the lost possession and use of its property and
13 lost income from the operation of the Hotel during the pendency of an appeal"); *Miller v. LeSEA*
14 *Broadcasting, Inc.*, 927 F. Supp. 1148 (E.D. Wisc. 1996) (denying motion for stay of order requiring
15 defendant to sell television station property, holding that "where a party has been ordered to do or
16 perform an act, the monetary value of a delay in performance is not so readily ascertained").

17      As applied to core proceedings in bankruptcy cases, in all practicality, the supersedeas stay
18 rarely applies. *See Gleasman v. Jones, Day, Reavis & Pogue (In re Gleasman)*, 111 B.R. 595, 599
19 (Bankr. W.D. Tex. 1990) (observing that the nature of bankruptcy proceedings is such that
20 supersedeas stays are seldom applicable, because most bankruptcy court rulings adjust the relative
21 rights of parties to property) (footnotes omitted). Furthermore, where the property involved is
22 "property of the estate" subject to recovery and/or turnover, the suitability of a supersedeas bond is
23 even more remote. Such a judgment concerning property of the estate is "in the nature of equitable
24 or injunctive relief, notwithstanding the fact that it is not technically an injunction as referenced in
25 Rule 62(c)" *United States v. Krause (In re Krause)*, No. 05-17429, 2007 Bankr. LEXIS 3049 at *6
26 (Bankr. D. Kansas August 29, 2007) [cited in LEXIS only].

27      Although judgments on avoidance actions can take the form of monetary judgments, the
28 Amended Judgment here specifically calls for recovery of the *property*. Throughout these

5

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92130
+1 858 523 6200

CASE NO. 03-11155-LA-7 ADV. NO. 04-90392
OPPOSITION BY PLAINTIFF KISMET ACQUISITION, LLC TO EMERGENCY MOTION OF DEFENDANTS MARTHA BARBA
AND ALEJANDRO DIAZ-BARBA FOR STAY OF JUDGMENT PENDING APPEAL [FED. R. BANKR. PROC. 7062, 8005]
SDODMS1/692323.1

1  proceedings, Kismet has demanded recovery of the property and has eschewed a monetary

2  judgment. The provisions of Section 550 of the Bankruptcy Code provide the prevailing plaintiff in

3  an avoidance action the choice of whether to receive recovery of a money judgment or recovery of

4  the property itself. The statute, in prescribing alternatives, is purposefully flexible to accomplish its

5  remedial goal. *In re Brun, 360 B.R. 669, 674; Feltman v. Warmus (In re American Way Serv.*

6  *Corp.),* 229 B.R. 496 (Bankr. S.D. Fla. 1999). The policy behind providing the prevailing plaintiff

7  this choice recognizes the troublesome valuation difficulties that necessarily exist with fraudulently

8  transferred real or personal property assets and to otherwise ensure that the plaintiff captures any

9  increase in the value of the property that may have occurred subsequent to the date of the fraudulent

10  transfer. These same considerations also serve to negate the applicability of a stay of right to the

11  Diaz Defendants now upon the posting of a bond where the Judgment requires transfer to Kismet of

12  the fideicomiso trust interest. The proper amount of such a bond would be incalculable and Kismet

13  would be left with unjust exposure to significant risk of loss.

14       As such, the proper analysis of the Diaz Defendants' right to a stay is under the test for a

15  discretionary stay under Fed. R. Bankr. Proc. 7062(c). As explained below, the Diaz Defendants

16  also fail that test.

17  **III.   THE DIAZ DEFENDANTS ARE NOT ENTITLED TO A DISCRETIONARY STAY
18            UNDER FED. R. BANKR. PROC. 7062(c)**

19  **A.     Under Rule 8005, the Governing Law Requires Each *Hilton* Element to be Satisfied**

20       A stay of a final order on the merits of a dispute is "an extraordinary device which should be

21  sparingly granted." *Ariz. Contrs. Ass'n, Inc. v. Candelaria,* 2008 WL 486002 at *5-6. In determining

22  whether a discretionary stay should be granted from an appeal to a district court or bankruptcy

23  appellate panel from the final order of the bankruptcy court under Fed. Rule Bankr. Proc. 8005,

24  virtually all courts utilize the four factors used in determining whether to grant a stay pending appeal

25  of a *preliminary* injunction under Federal Rule Civ. Proc. 62(c). That familiar four-part test

26  articulated by the Supreme Court in *Hilton v. Braunskill,* 481 U.S. 770, 776 (1987), has been

27  adopted by virtually all the circuit courts of appeal, including the Ninth Circuit. That test is:

28

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92130
+1 858 523 6200

CASE NO. 03-11155-LA-7 ADV. NO. 04-90392
OPPOSITION BY PLAINTIFF KISMET ACQUISITION, LLC TO EMERGENCY MOTION OF DEFENDANTS MARTHA BARBA
AND ALEJANDRO DIAZ-BARBA FOR STAY OF JUDGMENT PENDING APPEAL [FED. R. BANKR. PROC. 7062, 8005]
SDODMS1/692323.1

1    (1) whether the stay applicant has made a strong showing that he is likely to succeed on the

2    merits;

3    (2) whether the applicant will be irreparably injured absent a stay;

4    (3) whether issuance of the stay will substantially injure the other parties interested in the

5    proceeding; and

6    (4) where the public interest lies.

7    *Id.*

8    Because the burden of meeting this standard lies with the moving party and is a heavy one, in

9    respect to a stay of a final order on the merits, "more commonly stay requests will not meet this

10    standard and will be denied." Wright, Miller & Kane, *Federal Practice and Procedure Civil 2d* §

11    2904 (West Pub. 1995 & Supp. 2008); *see also* 2 Matthew Bender Practice Guide, *Federal Pretrial*

12    *Civil Procedure in California* § 19.08[3][f] (noting that the moving party bears the burden of proof

13    as to each element of the test).

14    Although under Rule 8005 the four enumerated factors utilized in determining the

15    applicability of a stay are identical to those used for determination of a stay of a preliminary

16    injunction pending appeal, *see In re Wymer*, 5 B.R. 806 (B.A.P. 9th Cir. 1980) (adopting the standard

17    for discretionary stays of a preliminary injunction under the predecessor to Rule 8005), the practical

18    *application* of these four factors in a case arising under the Bankruptcy Code is very different.  In the

19    context of a stay pending *injunction* under Rule 62(c), courts often apply several alternative

20    formulations of this traditional test in a "sliding scale" fashion, with the strength of any one factor

21    varying inversely with the strength of the remaining factors. *See, e.g., Lopez v. Heckler*, 713 F. 2d

22    1432 (9th Cir. 1983, *rev'd on other grounds*, 469 US. 1082 (1984).[2]

23

24    ---

[2] The Ninth Circuit, for example uses at least three "alternative" tests of this type. For example, to
prevail the moving party must show either (1) "a strong likelihood of success on the merits" and "the

25    possibility of irreparable injury to plaintiff if preliminary relief is not granted" or (2) "that serious
legal questions are raised and that the balance of hardships tips sharply in its favor." *Golden Gate*

26    *Restaurant Ass'n. v. City of San Francisco*, 512 F.3d 1112, 1116 (9th Cir. 2008) (quoting *Natural
Res. Def. Council, Inc. v. Winter*, 502 F.3d 859, 862 (9th Cir. 2007); *Lopez v. Heckler*, 713 F.2d at

27    1435. Under the second alternative, the legal questions must be so "serious, substantial, difficult and
doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation."

28    *County of Alameda v. Weinberger*, 520 F.2d 344, 1975 U.S. App. LEXIS 14117, 349 n.12 (9th
Cir.1975)..

7

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92130
+1 858 523 6200

SDODMS1/692323.1

CASE NO. 03-11155-LA-7 ADV. NO. 04-90392
OPPOSITION BY PLAINTIFF KISMET ACQUISITION, LLC TO EMERGENCY MOTION OF DEFENDANTS MARTHA BARBA
AND ALEJANDRO DIAZ-BARBA FOR STAY OF JUDGMENT PENDING APPEAL [FED. R. BANKR. PROC. 7062, 8005]

1    Courts of this circuit, as well as those of other circuits, generally agree that under Rule 8005

2    a sliding scale formulation is not appropriate for use in making the determination of whether a stay

3    should be granted pending the appeal of a bankruptcy court order. *See Rose Townsend Trust v.*

4    *Johnston (In re Johnston),* No. 06-80040, 2007 WL 2684736 (Bankr. E.D. Wash. Sept. 7, 2007)

5    (rejecting the movants' citations to cases, such as *Lopez v. Heckler,* 713 F. 2d 1432, that did not rely

6    upon F.R.B.P. 8005); *compare In re Forty-Eight Insulations, Inc.,* 115 F.3d 1294, 1301 (7th Cir.

7    1997) (stating that if the movant failed to make the requisite threshold showings of both a strong

8    likelihood of success on the merits and irreparable harm, the stay should be denied without further

9    analysis). The reason for the rejection of the standard sliding scale analysis under Fed. R. Bankr.

10    Proc. 8005 relates to the procedural posture of an appeal, *i.e.,* whether it is from a final order of a

11    bankruptcy court on the merits; or from a preliminary determination, not on the merits. *See, e.g.,*

12    *Dynamic Finance Corp. v. Kipperman (In re North Plaza, LLC),* Case No. 08-CV-1194, Order

13    Denying Appellants' Motion for Stay Pending Appeal (S.D. Cal. July 25, 2008) (Whelan, J.)[3]:

14    > A "sliding scale" approach, which often results in disproportionately
15    > weighting the "irreparable harm" prong, is appropriate for preliminary
16    > injunctions because a court deals with the dispute on first impressions,
17    > relies on a less-than-developed factual and legal record, and will
18    > ultimately revisit the issue down the road. In contrast, where-as here-a
19    > court has taken extensive evidence and briefing and issued a
20    > determination on the merits, an interest in finality arises.

18    Under Rule 8005, therefore, the substantial weight of authority in the Ninth Circuit requires

19    that, <u>*each element*</u> of the test must be proved by the moving party by a <u>*preponderance*</u> of the

20    evidence. *See, e.g., Silicon Valley Bank v. Pon (In re Pon),* 1994 U.S. Dist. LEXIS 2559 at * 6

21    (LEXIS Citation only) (N.D. Cal. Feb. 25, 1994) (citing *In re Dial Industries, Inc.,* 137 Bankr. 247,

22    250-251 (Bankr. N.D. Ohio 1992)) [cited in LEXIS only]. The Diaz Defendants' statement that "if

23    the court disagrees that they cannot satisfy the 'likelihood of success' prong [they] can make such a

24    strong showing on the other factors that the Court should grant this motion," [Motion at 9], is error.

25    *See Thomas v. City of Evanston,* 636 F.Supp. 587, 590-91 (An appellant's failure to meet their

26

27    _____

[3] The Opinion is attached as Exhibit "A" hereto. *See* Fed. R. App. Proc. 32.1; 9th Cir. Rule 36-3

28    (providing for citation to unpublished dispositions and orders issued on or after January 1, 2007).

8

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA  92130
+1 858 523 6200

CASE NO. 03-11155-LA-7 ADV. NO. 04-90392
OPPOSITION BY PLAINTIFF KISMET ACQUISITION, LLC TO EMERGENCY MOTION OF DEFENDANTS MARTHA BARBA
AND ALEJANDRO DIAZ-BARBA FOR STAY OF JUDGMENT PENDING APPEAL [FED. R. BANKR. PROC. 7062, 8005]
SDODMS1/692323.1

1    burden of persuasion regarding even _one_ of these factors requires denial of the stay);[4] *see also, e.g.,*

2    *Ohanian v. Irwin (In re Irwin)*, 338 B.R. AT 839; *Yeganeh v. Sims*, 2006 WL 1310447 (N.D. Cal.

3    May 12, 2006) at *19 (failure to prove likelihood of success on the merits alone is grounds for denial

4    of the stay); *In re Forty-Eight Insulations, Inc.*, 115 F.3d at 1301 (same, cited by the Diaz

5    Defendants).

6    **B.    The Diaz Defendants Cannot Demonstrate Any Probability of Success on the Merits**

7          The likelihood of success on the merits is a threshold issue, normally "the most important"

8    factor in the determination of whether a stay may be granted. *United States v. Fitzgerald*, 884 F.

9    Supp. 376, 377 (D. Idaho 1995) (citing *Garcia-Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir. 1986)).

10   Indeed, "[t]he sine qua non of the stay pending appeal standard is whether the movants are likely to

11   succeed on the merits." Wright, Miller & Kane, Federal Practice and Procedure: 16A Jurisdiction 3d

12   § 3954 & n.10.1 (West Supp. April 2008) (quoting *Acevedo-Garcia v. Vera Monroig*, 296 F.3d 13,

13   16 (1st Cir. 2002)).

14         A movant seeking a stay pending review on the merits of a final judgment will necessarily

15   have greater difficulty in demonstrating a likelihood of success on the merits. "In essence, a party

16   seeking a stay must ordinarily demonstrate to a reviewing court that there is a likelihood of

17   reversal." *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150 (6th

18   Cir. Mich. 1991); *see also, e.g., In re Forty-Eight Insulations, Inc.*, 115 F.3d 1294, 1301 (7th Cir.

19   1997) (describing the required showing as a "strong" and "substantial" likelihood of success, and

20   stating, "in the context of a stay pending appeal, where the applicant's arguments have already been

21   evaluated on the success scale, the applicant must make a stronger threshold showing of likelihood

22   of success to meet his burden.").

23         The requisite showing for "likelihood of success" requires, at an absolute minimum, that the

24   movant raise "'questions going to the merits so *serious, substantial, difficult and doubtful* as to make

25   them a fair ground for litigation and thus for more deliberate inquiry.'" *County of Alameda v.*

26

27   ──────────────
     [4] Although these required elements may be "balanced," the threshold preponderance burden

28   obviously does not leave as much "play" in the machinery as does the more liberal "sliding scale"
     approach used in the determination of a stay of a preliminary injunction.

                                                    9

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92130
+1 858 523 6200

CASE NO. 03-11155-LA-7 ADV. NO. 04-90392
OPPOSITION BY PLAINTIFF KISMET ACQUISITION, LLC TO EMERGENCY MOTION OF DEFENDANTS MARTHA BARBA
AND ALEJANDRO DIAZ-BARBA FOR STAY OF JUDGMENT PENDING APPEAL [FED. R. BANKR. PROC. 7062, 8005]
SDODMS1/692323.1

1    *Weinberger*, 520 F.2d 344, 349 n.12 (9th Cir.1975) (citations omitted) (emphasis added).  Stated a

2    different way, at this procedural juncture—after numerous dispositive motions and where the Court

3    has conducted a five-day trial on the merits—in order to satisfy this prong of the test, the Court

4    would have to find that there is a substantial possibility that it had based its decision on an erroneous

5    view of the law or clearly erroneous factual findings, or that it made a clear error of judgment in the

6    Amended Judgment.  Cases cited by the Diaz Defendants for a contrary position, such as

7    *Mohammed v. Reno*, 309 F.3d 95, 101 (2d Cir. 2002) (stay of deportation) and *LaRouche v. Kezer*,

8    20 F.3d 68, 72-23 (2d Cir. 1994) (stay of preliminary injunction) concern the standard for

9    preliminary injunctive relief on appeal and do concern final judgments on the merits, nor do they

10   apply Rule 8005.  The other case cited by the Diaz Defendants, *In re Forty Eight Insulations, Inc.*,

11   115 F.3d at 1301, as discussed above, absolutely requires a threshold showing of "strong" and

12   "substantial" showing of likelihood of success, not merely a "possibility," as suggested by the Diaz

13   Defendants.  Here, the minimal showing on the merits has not been made—and cannot be made

14   under any circumstances.

15          Here, the Diaz Defendants base the merit of their appeal on three discrete issues: (i) that the

16   Court lacked subject matter jurisdiction over the proceeding; (ii) that the "avoidance" provisions of

17   the Bankruptcy Code do not apply extraterritorially; and (iii) that comity considerations dictate the

18   use of Mexican law.  Each of these contentions merely resurrects arguments that have been

19   thoroughly discredited in the prior proceedings in this Court and may thus be disposed of in

20   summary fashion.

21          **1.    The Court Has Subject Matter Jurisdiction Over the Adversary Proceedings**

22          There is no validity to the Diaz Defendants' contention that the Court has no subject matter

23   jurisdiction over these proceedings.  As stated in the Amended Judgment, the Court "has subject

24   matter jurisdiction over claims to avoid and recover the wrongful transfer of the Debtor's interest in

25   the fideicomiso trust, and it has *in personam* jurisdiction over each of the Defendants in these actions

26   to order them to execute the necessary conveyance documents to return the Villa Property to the

27   estate, subject to enforcement through this Court's contempt powers, even though it indirectly

28   affects title to real property in Mexico."  [Amended Judgment at 33. (citing, *inter alia, Fall v. Eastin*,

                                                    10

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92130
+1 858 523 6200

SDODMS1/692323.1

CASE NO. 03-11155-LA-7 ADV. NO. 04-90392
OPPOSITION BY PLAINTIFF KISMET ACQUISITION, LLC TO EMERGENCY MOTION OF DEFENDANTS MARTHA BARBA
AND ALEJANDRO DIAZ-BARBA FOR STAY OF JUDGMENT PENDING APPEAL [FED. R. BANKR. PROC. 7062, 8005]

1  215 U.S. 1, 9-12 (1909)].

2  *Fall v. Eastin* holds that

> 3  [t]he territorial limitation of courts of a state over property in another
> state has a limited exception in the jurisdiction of a court of equity . . .
> 4  A court of equity, having authority to act upon the person, may
> indirectly act upon real estate in another state, through the
> 5  instrumentality of this authority over the person. Whatever it may do
> through the party, it may do to give effect to its decree respecting
> 6  property, whether it goes to the entire disposition of [the property] or
> only to affect [the property] with liens or burdens.

7  *Id.*

8

9        Thus, although a court may not *directly* act on property which lies beyond its borders, it may

10  *indirectly* act on such property by its assertion of *in personam* jurisdiction over the defendant. In

11  accord with the established rule of *Fall v. Easton*, the Ninth Circuit has endorsed the use the

12  contempt power to command a party over whom the court has personal jurisdiction to take all acts

13  necessary to transfer Mexican real property into a fideicomiso trust where such is required to do

14  equity. *See Brady v. Brown*, 51 F.3d 810 (9th Cir. 1995). *Brady* was a civil proceeding concerning

15  substantially similar facts and with a strikingly similar equitable posture to these proceedings. *Id.*

16  As such, the contention by the Diaz Defendants that this Court lacks subject matter jurisdiction over

17  these proceedings where the Diaz Defendants have otherwise submitted to the personal jurisdiction

18  of the Court lacks any colorable merit.

19        **2.    The Recovery Pursuant to Section 550 Has No Extraterritorial Effect;
              Avoidance f a Post-Petition Transfer of Property of the Estate Under Section 549
20            of the Bankruptcy Code Has Express Extraterritorial Application**

21        Congress has the authority to apply its laws extraterritorially, provided, however, that there is

22  a presumption against such application. In *E.E.O.C. v. Arabian American Oil Co.*, 499 U.S. 244

23  (1991), the Supreme Court held that "legislation of Congress . . . is meant to apply only within the

24  territorial jurisdiction of the United States . . . unless a contrary intent appears."

25        A two-fold inquiry is required when attempting to determine if this presumption against

26  extraterritoriality should be given effect. First, a court must determine if the presumption applies at

27  all, *i.e.*, the court must make findings on whether the conduct occurred outside the borders of the

28  United States. *Gushi Bros. Co. v. Bank of Guam*, 28 F.3d 1535, 1538-39 (9th Cir. 1994). In

11

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92130
+1 858 523 6200

CASE NO. 03-11155-LA-7 ADV. NO. 04-90392
OPPOSITION BY PLAINTIFF KISMET ACQUISITION, LLC TO EMERGENCY MOTION OF DEFENDANTS MARTHA BARBA
AND ALEJANDRO DIAZ-BARBA FOR STAY OF JUDGMENT PENDING APPEAL [FED. R. BANKR. PROC. 7062, 8005]
SDODMS1/692323.1

1    conducting this inquiry, the court will look to the specific conduct proscribed by the particular

2    legislation as well as to the impact of the conduct within the United States. *Id.* Second, if the

3    presumption is implicated, that is, if the conduct substantially occurred outside the borders of the

4    United States, only then is it necessary to inquire whether Congress intended the statute to extend to

5    extraterritorial conduct. In conducting this inquiry into legislative intent, a court should look to "all

6    available evidence," including the text of the statute, the overall statutory scheme, legislative reports,

7    and any other indicia of congressional intent. *Id.*

8         The presumption against extraterritoriality is not implicated by the avoidance of the

9    fraudulent conveyance from Jerry Icenhower to Howell and Gardner, Investors, Inc. that was ordered

10   pursuant to the Amended Judgment in the Adversary Proceeding No. 04-90392. Here, the center of

11   gravity of the correct transfer (between debtor & H&G), is indisputably within the U.S.

12        Furthermore, with respect to the avoidance of the post-petition transfer to the Diaz

13   Defendants under Adversary Proceeding 06-90369, pursuant to 28 U.S.C. §§ 157(a) and 1334(d),

14   this Court has exclusive jurisdiction over "all of the property, wherever located, of the debtor as of

15   the commencement of such case, *and of property of the estate.*" 28 U.S.C. § 1334(d) (emphasis

16   added). Furthermore, under 11 U.S.C. § 541(a), property of the estate is defined to include property

17   "wherever located and by whomever held." As a result of the Court's Amended Judgment granting

18   substantive consolidation of Howell & Gardner *nunc pro tunc*, the Villa Property is "property of the

19   estate," over which Congress has clearly granted clear broad jurisdiction to this Court, along with

20   express extraterritorial reach, pursuant to the unequivocal words of the statute.

21        **3.    There Are No Facts Suggesting Comity Should Have Been Applied**

22        As stated by the Diaz Defendants, a court's decision to extend or deny comity is reviewed for

23   abuse of discretion. *See Allstate Life Ins. Co. v. Linter Group Ltd.*, 994 F.2d 996, 999 2d (cir. 1993).

24   No abuse of discretion can be shown here.

25        International comity is "the recognition which one nation allows within its territory to the

26   legislative, executive or judicial acts of another nation, having due regard both to international duty

27   and convenience, and to the rights of its own citizens or of other persons who are under the

28   protection of its laws." *Hilton v. Guyot*, 159 U.S. 113, 164, 16 S. Ct. 139, 40 L. Ed. 95 (1895).

12

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92130
+1 858 523 6200

CASE NO. 03-11155-LA-7 ADV. NO. 04-90392
OPPOSITION BY PLAINTIFF KISMET ACQUISITION, LLC TO EMERGENCY MOTION OF DEFENDANTS MARTHA BARBA
AND ALEJANDRO DIAZ-BARBA FOR STAY OF JUDGMENT PENDING APPEAL [FED. R. BANKR. PROC. 7062, 8005]
SDODMS1/692323.1

1    ///

2        Comity is a discretionary refusal to exercise jurisdiction on the part of a court where the case

3    is more properly adjudicated in a foreign state. *Maxwell Commc'n Corp. PLC v. Societe Generale*

4    *PLC (In re Maxwell Commc'n Corp.)*, 93 F.3d 1036, 1047 (2d Cir. 1996).. In deciding whether to

5    forego application of our own law under the doctrine of international comity, the Supreme Court has

6    referred to the factors in Restatement (Third) of Foreign Relations Law § 403 (1987). *See Hartford*

7    *Fire Ins.*, 509 U.S. at 799 & n. 25; id. at 818 (Scalia, J., dissenting); *see also In re Maxwell Commc'n*

8    *Corp.*, 93 F.3d at 1047-48. The Restatement looks to, *inter alia*, (i) "the extent to which the activity

9    takes place within the territory" of the regulating state; (ii) "the connections, such as nationality,

10   residence, or economic activity, between the regulating state and the person principally responsible

11   for the activity to be regulated;" (iii) "the extent to which other states regulate such activities" or

12   "may have an interest in regulating [them];" (iv) the "likelihood of conflict with regulation by

13   another state," and (v) "the importance of regulation to the regulating state." Restatement (Third) of

14   Foreign Relations Law, § 403(2).

15       Here, the United States unquestionably has a stronger interest than Mexico in regulating the

16   transaction between Howell & Gardner Investors, Inc./Icenhower and the Diaz Defendants. A key

17   purpose of the Bankruptcy Code is to protect the rights of both debtors and creditors during

18   insolvency. In exchange, the Bankruptcy Code's avoidance provisions protect creditors by

19   preserving the bankruptcy estate against illegitimate depletions. In re Hargis, 887 F.2d 77, 79 (5th

20   Cir.1989). The United States has a strong interest in extending these personal protections to its

21   residents. Mexico, by contrast, has comparatively little interest in protecting the Diaz Defendants,

22   who are residents of the United States. *Cf. Hurtado v. Superior Court*, 11 Cal. 3d 574, 522 P.2d 666,

23   670, 114 Cal. Rptr. 106 (Cal. 1974) (holding that Mexico has no interest in applying its statutory

24   limitation on damages when defendants in a tort action were not Mexican residents).

25       Under these facts, the question is not even close. Here, substantially all of the activity

26   surrounding the transfer took place in the United States. Diaz and Icenhower first met in the United

27   States. Communications between them concerning the transaction took place in the United States.

28   All of the transfer documents were signed in the United States at the San Diego offices of Peter

13

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92130
+1 858 523 6200

SDODMS1/692323.1

CASE NO. 03-11155-LA-7 ADV. NO. 04-90392
OPPOSITION BY PLAINTIFF KISMET ACQUISITION, LLC TO EMERGENCY MOTION OF DEFENDANTS MARTHA BARBA
AND ALEJANDRO DIAZ-BARBA FOR STAY OF JUDGMENT PENDING APPEAL [FED. R. BANKR. PROC. 7062, 8005]

1    Thompson, an attorney licensed by the California Bar. The documents were notarized by a

2    California notary public. Moreover, almost all of the parties with an interest in this litigation,

3    Kismet, the Debtors, the Diaz Defendants, Howell & Gardner Investors, Inc., and Craig Kelley—

4    have a domicile or residence in the United States. The "fideicomiso" interest held by Howell &

5    Gardner Investors, Inc./Icenhower was itself "in reality a *U.S.* real estate irrevocable trust contract."

6    Jorge A. Vargas, *Acquisition of Real Estate In Mexico by U.S. Citizens and American Companies*

7    (March 2007) at 14, *available at* http://ssrn.com/abstract=968794 (emphasis added). The center of

8    gravity of the transaction was the United States. There is thus no danger that the avoidance law of

9    the regulating state—the United States—will conflict with Mexican law.

10        Furthermore, even in a case where the substantial activity takes place in a foreign

11    jurisdiction, comity considerations are typically rejected where there is no persuasive argument "that

12    there would be problems enforcing a judgment . . . , or that there are any substantial conflicts with

13    Mexican law." *Brady*, 51 F.3d at 819. In this respect, the enforcement here will be accomplished

14    through the contempt power of the Court over the Diaz Defendants, over which the Court has

15    personal jurisdiction. In addition, the remedy devised by the Court is essentially a "fideicomiso,"

16    authorized by Article 18 of the 1973 Mexican foreign investment law. "Such an arrangement . . .

17    does not violate Mexican law." 51 F.3d at 819.

18        Most important, comity considerations are substantially negated where, as here, the issue

19    concerns property of the estate fraudulently transferred post-petition. Under 28 U.S.C. § 1334(e),

20    the bankruptcy court obtains exclusive *in rem* jurisdiction over all of the property of the estate. As

21    such, the court exercises "custody" over such property, creating a legal fiction "that the property—

22    regardless of actual location—is legally located within the jurisdictional boundaries of the district in

23    which the court sits." *Hong Kong & Shanghai Banking Corp. v. Simon (In re Simon)*, 153 F.3d 991

24    (9th Cir. 1998). As such, in determining comity in bankruptcy cases "the court will defer to where

25    the 'center of gravity' of multiple proceedings exists. *Id.* Where there is no competing proceeding

26    in a foreign nation at issue, the court most properly utilizes its discretion to assert its jurisdiction

27    over property of the estate is at issue. *Id.* To fail to do so in derogation of creditors' interests would

28    be quite extraordinary.

14

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92130
+1 858 523 6200

SDODMS1/692323.1

CASE NO. 03-11155-LA-7 ADV. NO. 04-90392
OPPOSITION BY PLAINTIFF KISMET ACQUISITION, LLC TO EMERGENCY MOTION OF DEFENDANTS MARTHA BARBA
AND ALEJANDRO DIAZ-BARBA FOR STAY OF JUDGMENT PENDING APPEAL [FED. R. BANKR. PROC. 7062, 8005]

1  ///

2      The Diaz Defendants otherwise attempt to suggest that the dispute should have been litigated

3  in Mexico due to the so-called "Calvo Clause." This issue, which the Diaz Defendants seek to

4  sweep with a broad brush into their discussion of comity, instead relates to the affirmative defense of

5  improper venue. As revealed by the text of Article 27 of the Mexican Constitution quoted by the

6  Diaz Defendants [Motion at 18] the "Calvo Clause" is strictly a matter of contract. As such, it is not

7  self-executing, but contemplates that the parties will enter into an "agreement" for venue concerning

8  disputes, that is, a standard forum selection clause to be contained in the "escritura." In this respect,

9  the Diaz Defendants have previously waived any affirmative defense of improper venue based upon

10  any forum selection clause in the escritura, which the Court found to be permissive in nature. As

11  such, the Court's Order dated March 6, 2008 [Docket Entry No. 159] completely disposed of this

12  issue.

13  **C.    The Diaz Defendants' Claims of Irreparable Harm are of No Consequence**

14      The Diaz Defendants appear to concede the general lack of merit of their appeal and

15  otherwise seek to convince the Court that a stay should still be granted because of the "irreparable

16  harm" that would come to them should Kismet execute on the Amended Judgment. This argument

17  is not supportable. A discretionary stay may not be granted absent a threshold strong showing of

18  likely success on the merits, regardless of any showing on the Diaz Defendants' part of irreparable

19  harm. *See, e.g., Blankenship v. Boyle*, 447 F.2d 1280 (D.D.C. 1971); *cf. Gagan v. Sharer*, 2005

20  U.S. Dist. LEXIS 27409 (D. Ariz. Nov. 1, 2005)[5] [cited in LEXIS only].

21      The Diaz Defendants attempt to base their claims of irreparable harm on the fact that a *per se*

22  showing is met where "real property is involved." [Motion at 21.] None of the cases cited by the

23  Diaz Defendants provide persuasive support for this principle. The court in *In re Issa Corp.*, 142

24  Bankr. 75, 78 (Bankr. S.D.N.Y. 1992) only stated that the debtor would "*indisputably*" suffer

25  irreparable harm because the stay motion went unopposed. Neither *O'Hagan v. U.S.*, 86 F. 3d 776,

26  _____

27  [5] In this respect, the Diaz Defendants would not be able to obtain a stay even under the "alternative"
formulations used in determining a stay upon injunction under which "it must be shown as an
irreducible minimum that there is a *fair chance* of success on the merits," even if the balance of

28  harm tips sharply in their favor. 2 Matthew Bender Practice Guide, Federal Pretrial Civil Procedure
in California § 19.08[3][d] (emphasis added).    15

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92130
+1 858 523 6200

CASE NO. 03-11155-LA-7 ADV. NO. 04-90392
OPPOSITION BY PLAINTIFF KISMET ACQUISITION, LLC TO EMERGENCY MOTION OF DEFENDANTS MARTHA BARBA
AND ALEJANDRO DIAZ-BARBA FOR STAY OF JUDGMENT PENDING APPEAL [FED. R. BANKR. PROC. 7062, 8005]
SDODMS1/692323.1

1    783 (8th Cir. 1996), nor *Goldies Bookstore, Inc. v. Superior Court*, 739 F.2d 466, dealt with a

2    discretionary stay under Rule 62(a). As such, they are inapposite. The courts of the Ninth Circuit

3    have generally dismissed similar arguments as having only "superficial" appeal. *See, e.g., Acton v.*

4    *Fullmer (In re Fullmer)*, 323 B.R. 287, 305 (Bankr. D. Nev. 2005). Other courts have recognized

5    that in fact there is actually no "irreparable" harm because, upon any reversal, the Appellee would

6    return the property. *See In re Krause*, 2007 Bankr. LEXIS 3049 at *11.

7           Furthermore, absent the requisite proof of success on the merits, irreparable harm—no matter

8    how strenuously it is contended—is otherwise irrelevant. A stay under such circumstances would

9    only result in unnecessary delay of the execution of the Bankruptcy Court's lawful order, with no

10   countervailing societal benefit. As stated above, a moving party's failure to establish success on the

11   merits is reason for denial of a stay, and any irreparable harm that the Diaz Defendants may

12   demonstrate is nullified by their failure to raise a colorable case for appeal on the merits.

13          To the extent that the Diaz Defendants' irreparable harm argument is based on a contention

14   that that, absent a stay, the appeal will become moot, this also fails. The majority of cases that have

15   considered the issue have determined that the risk that an appeal would become moot does not, by

16   itself, constitute irreparable harm. *Id.* at 304 (collecting cases). *In re Adelphia Communications*

17   *Corp.*, 361 B.R. 337, 347-48 (S.D.N.Y. 2007), does not hold that mootness alone constitutes

18   irreparable harm. Rather, irreparable harm is shown only where "*any* appeal of *significant* claims of

19   error" is absolutely foreclosed. *Id* at 348 (emphasis in original). As set forth above, the Diaz

20   Defendants have not demonstrated that they can raise "significant claims of error" on appeal.

21          On the other hand, the Diaz Defendants must also show that the bankruptcy estate and

22   Kismet would not be harmed by a stay. *Yeganeh v. Sims (In re Yeganeh)*, 2006 U.S. Dist. LEXIS

23   32765 (N.D. Cal. May 12, 2006). Here, the Diaz Defendants (focusing on the harm to come to

24   themselves from enforcement of the Order) have not met this burden. In characterizing the harm to

25   Kismet as negligible to nonexistent, the Diaz Defendants ignore the very real burdens that delay in

26   the execution of the Amended Judgment will place on Kismet. The delay in the transfer of the Villa

27   Property will have a significant impact on Kismet in terms of lost opportunities, for development and

28   otherwise, which cannot be compensated for by money. Furthermore, the Villa Property is property

16

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92130
+1 858 523 6200

CASE NO. 03-11155-LA-7 ADV. NO. 04-90392
OPPOSITION BY PLAINTIFF KISMET ACQUISITION, LLC TO EMERGENCY MOTION OF DEFENDANTS MARTHA BARBA
AND ALEJANDRO DIAZ-BARBA FOR STAY OF JUDGMENT PENDING APPEAL [FED. R. BANKR. PROC. 7062, 8005]
SDODMS1/692323.1

1   of the estate, which was wrongfully transferred to the Diaz Defendants post-petition. The estate has

2   been wrongfully deprived of this asset (and its rents and other income) for approximately four years.

3   Furthermore, the estate received *none* of the consideration for the transfer of the Villa Property to

4   the Diaz Defendants. In such circumstances, further delay is unwarranted and would not serve the

5   interests of justice.

6   **D.    The Public Interest Does Not Militate in the Diaz Defendants' Favor**

7   This is not a case "affecting the public interest." Although a Bankruptcy Case is an *in rem*

8   proceeding and thus affects the rights of the public in general to the "*res*" constituting the

9   bankruptcy estate, there is not a public right at stake in the traditional sense used under the four

10  factor test, such as a constitutional issue or other right affecting the public at large. As such, this

11  factor need not be specifically added into the equitable determination regarding the granting of the

12  stay.

13  In the end analysis, however, larger policy considerations are necessarily a factor in the

14  determination of any motion requesting a stay of an order of a bankruptcy court in a case arising

15  under the Bankruptcy Code. A longstanding core policy of the Bankruptcy Code is to provide a

16  cost-effective and speedy process to minimize the cost to creditors. Thus, Rule 8005, along with all

17  the other Fed. Rules Bankr. Proc., need to be construed in light of this overriding policy goal. Rule

18  1001 states: "These rules shall be construed to secure the just, speedy, and inexpensive

19  determination of every case and proceeding." The result of any stay in this proceeding would be to

20  allow *property of the estate* to remain in the hands of a wrongful possessor. In light of the very thin

21  meritorious reed upon which their Motion hinges, the policy of the Bankruptcy Code militates

22  against granting the Diaz Defendants' Emergency Stay Motion.

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

17

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA 92130
+1 858 523 6200

SDODMS1/692323.1

CASE NO. 03-11155-LA-7 ADV. NO. 04-90392
OPPOSITION BY PLAINTIFF KISMET ACQUISITION, LLC TO EMERGENCY MOTION OF DEFENDANTS MARTHA BARBA
AND ALEJANDRO DIAZ-BARBA FOR STAY OF JUDGMENT PENDING APPEAL [FED. R. BANKR. PROC. 7062, 8005]

1    ///

2                           **IV.    CONCLUSION**

3         For each of the reasons set forth herein, Kismet respectfully requests that the Court deny the

4    Diaz Defendants Emergency Motion for Stay Pending Appeal.

5

6    Dated:   August 7, 2008                    BAKER & McKENZIE LLP

7

8                                               By: /s/ Ali M.M. Mojdehi
                                                    Ali M.M. Mojdehi
9                                                   Janet D. Gertz

10                                              Attorneys for Plaintiff
                                                Kismet Acquisition, LLC, a Delaware
11                                              limited liability company

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA  92130
+1 858 523 6200

CASE NO. 03-11155-LA-7 ADV. NO. 04-90392
OPPOSITION BY PLAINTIFF KISMET ACQUISITION, LLC TO EMERGENCY MOTION OF DEFENDANTS MARTHA BARBA
AND ALEJANDRO DIAZ-BARBA FOR STAY OF JUDGMENT PENDING APPEAL [FED. R. BANKR. PROC. 7062, 8005]
SDODMS1/692323.1

# EXHIBIT "A"

1

2

3

4

5

6

7

8

9

10

**FILED**

JUL 2 5 2008

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY          CP          DEPUTY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 11  In re: NORTH PLAZA, LLC, | CASE NO. 08-CV-1194 W (CAB) |
| 12                Debtor | BANKRUPTCY NO. 04-00769-PB11 |
| 13 | |
| 14 | ORDER DENYING APPELLANTS' |
| 15  DYNAMIC FINANCE | MOTION FOR STAY PENDING |
|      CORPORATION et al., | APPEAL (Doc. No. 3.) |
| 16                Appellants, | |
| 17        vs. | |
| 18  CHAPTER 11 TRUSTEE RICHARD | |
|      KIPPERMAN, | |
| 19                Appellee. | |

20        On July 7, 2008 Appellee Richard Kipperman ("Trustee"), Chapter 11

21  Bankruptcy Trustee of the North Plaza, LLC bankruptcy estate, elected to have

22  Appellants Dynamic Finance Corporation et al.'s (collectively, "Appellants") appeal

23  heard by this District Court pursuant to 28 U.S.C. § 158(c)(1)(B). (Doc. No. 1.)

24  Appellants appeal United States Bankruptcy Judge Peter W. Bowie's May 30, 2008

25  Order compelling production of documents that Appellants argue are protected by

26  attorney-client privilege.

27        On July 11, 2007, after unsuccessfully petitioning the Bankruptcy Court,

28  Appellants moved this Court for an order staying Judge Bowie's May 30, 2008 Order

1  until the appeal is exhausted. (Doc. No. 3.) The Court takes the matter under
2  submission and without oral argument. See S.D. Cal. Civ. R. 7.1(d)(1). For the
3  following reasons, the Court **DENIES** Appellants' motion for stay pending appeal.

5  I.    BACKGROUND
6         In July 1998, North Plaza, LLC ("North Plaza") entered into two loan agreements
7  with Appellant Dynamic Finance Corporation ("Dynamic") and Appellant Angela
8  Sabella ("Sabella") (collectively, "Appellants"). (*Appellants' Mot.* 2.) Sabella, the
9  President of Dynamic, purchased a loan junior to Dynamic's. (*Id.*) Because both loans
10 were secured by deeds of trust on North Plaza's real property, real estate broker Isaac
11 Lei ("Lei") and his company, the Alcon Group ("Alcon") were enlisted to help
12 negotiate and arrange the loans. (*Id.*) In order for Lei to adequately accomplish his
13 brokerage duties, Dynamic and Sabella authorized Lei to meet with their respective
14 legal counsel to obtain advice in connection with the North Plaza loans. (*Id.*)
15 Appellants argue that Lei thereby became a "client representative" of Dynamic/Sabella.
16        On January 28, 2004 North Plaza was forced into Chapter 11 bankruptcy, and
17 is the debtor in the underlying bankruptcy action. (Bankr. Doc. No. 1.)[1] Appellants
18 Dynamic and Sabella are the largest secured creditors against the bankruptcy estate.
19 (*Appellants' Mot.* 2.) On June 11, 2006, following the bankruptcy court's denial of a
20 proposed settlement between North Plaza and Appellants,[2] the bankruptcy court
21 appointed Richard M. Kipperman ("Trustee") as Chapter 11 Trustee of the bankruptcy
22 estate. (Bankr. Doc. No. 484.)
23        On September 14, 2006 the Trustee filed an *ex parte* application for a Federal

---

27  [1]The Court **GRANTS** both parties' requests for judicial notice of the bankruptcy court docket, proceedings, and related paperwork.

28  [2]The bankruptcy court noted several serious conflict-of-interest issues when denying the proposed settlement. (*Appellants' Request for Judicial Notice*, Ex. 3.)

1  Rule of Bankruptcy Procedure 2004[3] examination and production of documents of

2  persons with relevant knowledge. (Bankr. Doc. No. 509.) After much legal wrangling,

3  on February 16, 2007 the Trustee issued a subpoena, authorized under Bankruptcy Rule

4  2004, to Lei and Alcon for documents and testimony. (*Appellants' Mot.* 3.) While Lei

5  and Alcon produced some documents, they also served the Trustee with an amended

6  privilege log asserting the attorney-client privilege to documents relating to

7  communications between Lei/Alcon and Dynamic/Sabella's legal counsel.

8      On May 2, 2007 the Trustee moved to compel responses for documents and

9  testimony pursuant to the subpoenas issued to Lei and Alcon. (Bankr. Doc. No. 542.)

10  In opposition, Lei and Sabella provided declarations to the effect that Appellants

11  authorized Lei/Alcon to communicate with their attorneys to secure legal advice during

12  —————————————————————————

13  [3]Federal Rule of Bankruptcy Procedure provides, in relevant part:
**Rule 2004. Examination**

14
15    (a) **Examination on motion.** On motion of any party in interest, the court may
order the examination of any entity.

16    (b) **Scope of examination.** The examination of an entity under this rule or of
the debtor under § 343 of the Code may relate only to the acts, conduct, or
17  property or to the liabilities and financial condition of the debtor, or to any
matter which may affect the administration of the debtor's estate, or to the
18  debtor's right to a discharge. In a family farmer's debt adjustment case under
chapter 12, an individual's debt adjustment case under chapter 13, or a
19  reorganization case under chapter 11 of the Code, other than for the
reorganization of a railroad, the examination may also relate to the operation of
20  any business and the desirability of its continuance, the source of any money or
property acquired or to be acquired by the debtor for purposes of consummating
21  a plan and the consideration given or offered therefor, and any other matter
relevant to the case or to the formulation of a plan.

22    (c) **Compelling attendance and production of documents.** The attendance of
an entity for examination and for the production of documents, whether the
23  examination is to be conducted within or without the district in which the case
is pending, may be compelled as provided in Rule 9016 for the attendance of a
24  witness at a hearing or trial. As an officer of the court, an attorney may issue and
sign a subpoena on behalf of the court for the district in which the examination
25  is to be held if the attorney is admitted to practice in that court or in the court
in which the case is pending.

26
  (d) **Time and place of examination of debtor.** The court may for cause shown
27  and on terms as it may impose order the debtor to be examined under this rule
at any time or place it designates, whether within or without the district wherein
28  the case is pending.
  ...

- 3 -

1  the course of the loan negotiations, and that the attorney-client privilege insulated
2  these documents from discovery.  (*Appellants' Request for Judicial Notice* Exs. 7–10.)
3  That is, Appellants argued that the law of privilege protected the communications
4  because Lei was serving as a "client representative" of Appellants when he
5  communicated with Appellants' counsel.
6       After briefing, the bankruptcy court was unable to determine whether Lei was
7  a "client representative" of Dynamic or Sabella and ordered an evidentiary hearing.
8  (Bankr. Doc. No. 661.)  Much delay followed, mostly due to Appellants' change of
9  counsel.
10      On January 28, 2008 Appellants filed an adversary proceeding for declaratory
11 judgment against the Trustee. <u>Dynamic Finance Corp. v. Kipperman</u>, No. 08-90035
12 (Bankr. S.D. Cal. complaint filed January 28, 2008).  On March 31, 2008 the Trustee
13 counterclaimed for avoidance of fraudulent conveyance under Chapter 11, United
14 States Code. <u>Dynamic Finance Corp. v. Kipperman</u>, No. 08-90035 (Bankr. S.D. Cal.
15 answer and counterclaims filed March 31, 2008).
16      In March 2008, in the main bankruptcy action, the bankruptcy court finally held
17 a three-day evidentiary hearing to determine whether Lei was a "client representative"
18 of Dynamic or Sabella or both.  Appellants and Trustee extensively briefed the issue
19 both before and after the hearing.  (Bankr. Doc. Nos. 704, 712, 734, 735.)
20      On May 30, 2008, over a year after the Trustee moved to compel, the bankruptcy
21 court entered an Order compelling Lei and Appellants to produce the documents to
22 which they had asserted the attorney-client privilege (the "Order").  (Doc. No. 772.)
23 The Order was primarily based on two findings. First, the relationship between Lei and
24 Dynamic was really an individual relationship between Lei and Sabella, such that Lei
25 could not properly be called a "client representative" of Dynamic Finance Corporation.
26 (*Bankr. Court's Order on Trustee's Mot. to Compel Disc.* 7.)  Second, the Court reviewed
27 the law surrounding the "client representative" extension of the attorney-client
28 privilege and, given the particular circumstances, found no reason to extend the

1  privilege to cover communications between Lei and Sabella's counsel. (*Id.* 7–9.)

2  On June 9, 2008 Appellants timely appealed the bankruptcy court's Order. 28
3  U.S.C. § 158, Fed. R. Bankr. P. 8001(a), 8002(a). The Trustee then elected to have
4  the district court hear the matter. 28 U.S.C. § 158(c).

5  On June 12, 2008, pursuant to Federal Rule of Bankruptcy Procedure 2005,
6  Appellants moved the bankruptcy court for a stay of the Order pending appeal. (Bankr.
7  Doc. No. 775.) On July 2, 2008 the bankruptcy court declined to stay enforcement of
8  its Order. (Bankr. Doc. No. 796.)

9  On July 11, 2008 Appellants filed this motion to stay the bankruptcy court's
10  order pending the outcome of the appeal. (Doc. No. 3.) The parties agreed to a
11  shortened briefing schedule and also agreed to informally stay the bankruptcy court's
12  Order until July 25, 2008.

13

14  **II.  STANDARD OF REVIEW**

15  A motion for a stay of the judgment, order, or decree of a bankruptcy judge must
16  ordinarily be presented to the bankruptcy judge in the first instance. Fed. R. Bankr.
17  Proc. 8005. A motion for relief, or for modification or termination of relief granted by
18  a bankruptcy judge, may be made to the district court, but the motion shall show why
19  the relief, modification, or termination was not obtained from the bankruptcy judge.
20  Id.

21  Where the bankruptcy court has already denied a stay under Federal Rule of
22  Bankruptcy Procedure 8005,[4] the appellate court's review is limited to a simple
23  determination of whether the bankruptcy court abused its discretion. Wymer v. Wymer
24  (In re: Wymer), 5 B.R. 802 (B.A.P. 9th Cir. 1980); Ohanian v. Irwin (In re: Ohanian),
25  338 B.R. 839, 844 (E.D. Cal. 2006). The abuse of discretion standard on review of the
26  bankruptcy court's order denying a stay encompasses a *de novo* review of the law and

27

28  ───────────────

[4]Unless otherwise stated, all references to "Rule" shall be to the Federal Rule of
Bankruptcy Procedure.

1    a clearly erroneous review of the facts with respect to the underlying issues. In re:

2    Ohanian, 228 B.R. at 844, 848.[5]

3        Initially, it is important to note that nowhere in their moving papers do

4    Appellants argue that the bankruptcy court took an erroneous view of the facts. As

5    discussed more fully below, whether or not this Court should issue a stay is determined

6    almost entirely by a choice of law issue.

7

8    **III.    DISCUSSION**

9        **A.    Legal Standard For Issuing a Stay Under Federal Rule of Bankruptcy**

10            **Procedure 8005**

11        When deciding whether to issue a discretionary stay pending a bankruptcy

12    appeal, courts use the following four factors: (1) Movant's likelihood of success on the

13    merits of the appeal; (2) significant and/or irreparable harm that will come to Movant

14    absent a stay; (3) harm to the adverse party if a stay is granted; and (4) where the public

15

16         [5]Appellants argue that the Court should be applying a pure de novo determination of
17    whether or not a stay is warranted, contending that Rule 8005 allows a district court to issue
a stay independently of any determination made by the Bankruptcy Court. (Appellants' Reply
18    2–3.) For support, Appellant cites Rule 8005's text and Judge Russell's concurring opinion in
In re: Ernst Home Center, 221 B.R. 243, 248 (B.A.P. 9th Cir. 1998). While these arguments
19    are not unpersuasive, the Court instead follows the reasoning of In re: Ohanian, 228 B.R. at
846, holding that abuse of discretion is the proper standard, because implicit in Rule 8005 is
20    a requirement that the moving party provide a record of the bankruptcy court's actions. Other
courts, too, have held that unless an exception applies, failing to move the bankruptcy court
21    for a stay can be fatal to seeking a stay in a district court or appellate counsel. Zahn Farms v.
Key Bank (In re: Zahn Farms), 206 B.R. 643 (B.A.P. 2d Cir. 1997). This suggests that, absent
22    unusual circumstances, a party must always petition the trial court for a stay, whose decision
the appellate court will review for abuse of discretion. Considering the text of Rule 8005 as a
23    whole, this Court joins the majority of decisions which approach motions to stay under an
abuse of discretion standard, where a motion has been presented in the first instance to the
24    bankruptcy court (as was done here). See In re: Ohanian, 338 B.R. at 245–48 (collecting
cases).
25         At any rate, in this case whether the standard is a de novo determination or a review for
abuse of discretion hardly matters. Nowhere in their moving papers do Appellants argue a
26    likelihood of success because the bankruptcy court's findings of fact (a) that Sabella and Lei
enjoyed a personal relationship, such that Lei was Sabella's individual "client representative,"
27    and (b) that Appellants did not establish a "disability" which required Lei to communicate with
counsel on Sabella's behalf were erroneous. (Appellant's Mot. 4.) Rather, Appellants only
28    argue that the bankruptcy court applied the wrong law to the facts. Even under a review for
abuse of discretion, the Court reviews the law de novo.

1    interest lies. <u>Hilton v.Braunskill</u>, 481 U.S. 770, 776 (1987); <u>In re: Wymer</u>, 5 B.R. at

2    806.

3          Because these factors were imported from the standard for deciding preliminary

4    injunctions or staying them pending appeal, district courts in this circuit have not

5    agreed on how to apply the discretionary stay factors when deciding whether to stay a

6    final bankruptcy court order pending appeal. <u>Compare</u> <u>Rose Townsend Trust v.</u>

7    <u>Johnston (In re: Johntson)</u>, No. 06-80040, 2007 Bankr. LEXIS 3092 (Bankr. E.D.

8    Wash. Sept. 7, 2007) (requiring movant to show under first factor that he is "likely to

9    succeed" on the merits, rather than merely presenting a "substantial case") <u>and</u> <u>Silicon</u>

10   <u>Valley Bank v. Pon (In re: Pon)</u>, No. C-93-2745, 1994 U.S Dist. LEXIS 2559 at *6

11   (N.D. Cal. Feb. 25, 1994) (holding that the four factors are conjunctive,[6] and movant

12   will not win a stay unless each factor is established by a preponderance of the evidence)

13   <u>with</u> <u>Lynch v. Ca. Pub. Util. Comm'n</u>, No. C-04-0580, 2004 U.S. Dist. LEXIS 6022 at

14   *6 (N.D. Cal. April 9, 2004) (reciting traditional Ninth Circuit "sliding scale" balancing

15   tests used for preliminary injunctions and temporary restraining orders).

16         After reviewing the different standards, the Court finds that <u>Lynch</u>'s "sliding

17   scale" approach ignores the procedural posture of a Rule 8005 stay where the movant

18   is appealing a bankruptcy court's final determination on the merits. A "sliding scale"

19   approach, which often results in disproportionately weighting the "irreparable harm"

20   prong, is appropriate for preliminary injunctions because a court deals with the dispute

21   on first impressions, relies on a less-than-developed factual and legal record, and will

22   ultimately revisit the issue down the road. In contrast, where—as here—a court has

23   taken extensive evidence and briefing and issued a determination on the merits, an

24   interest in finality arises.[7] This finality would be rendered impotent if an enjoined party

25

26         [6]<u>See also</u> <u>In re: Deep</u>, 288 B.R. 27, 30 (N.D.N.Y. 2003) ("Movant's failure to satisfy one
27   prong of the standard for granting a stay pending appeal dooms the motion.").

28         [7]The instant motion to stay is presumably at least the third time Appellants have briefed
     the choice of law issue, after initially contesting the Trustee's motion to compel and
     subsequently moving the bankruptcy court for a stay of the Order pending appeal.

1 could always raise the spectre of irreparable injury to trump the trial court's order, no

2 matter how unlikely an appellate victory on the merits. Thus, the Court considers <u>In</u>

3 <u>re: Johnston</u> and <u>In re: Pon</u> persuasive and requires that Appellants show that it is more

4 likely than not they will succeed on the merits, whatever the possibility of irreparable

5 injury.

6

7 **B.** <u>Appellants Have Not Shown That They More Likely Than Not Will</u>

8   <u>Prevail On The Merits</u>

9   It is fair to say that the success of Appellants' appeal turns entirely on a question

10 of choice and content of law; that is, whether California privilege law is applied to

11 protect certain communications between Lei and Sabella/Dynamic's counsel. Very

12 simply, Appellants contend that California Evidence Code sections 952 and 951 and

13 California case law privileges Lei's communications with Dynamic/Sabella's counsel

14 because Lei was acting as Dynamic/Sabella's "client representative" at the time.

15 (*Appellants' Mot. 9–12*.)

16   To that end, Appellants seek to bring California law into this federal bankruptcy

17 proceeding in two ways: (1) by arguing that the bankruptcy court erred by applying the

18 federal common law of privilege, and not California privilege law, to determine the

19 scope of attorney-client privilege in response to the bankruptcy court's Rule 2004

20 subpoenas (*Appellants' Mot. 9–15*); and (2) by arguing that, even if federal common law

21 is applied, principles of comity dictate that California privilege law be used to "fill the

22 gaps" and extend a federal privilege where none previously existed (*Id.* 16–18).

23   Showing a "likelihood of success" requires that the movant raise questions going

24 to the merits so serious, substantial, difficult and doubtful as to make them a fair ground

25 for litigation and thus for more deliberate inquiry. <u>County of Alameda v. Weinberger</u>,

26 520 F.2d 344, 349 n.12 (9th Cir. 1975).

27   The Court finds that Appellants have not raised such questions.

28   Appellants constantly intone that "the Order turns on a narrow and complex

- 8 -

1  issue of law involving states' right, comity, federalism, and vertical choice of law issues."

2  The Court, however, finds that the privilege question is clearly determined by federal

3  common law, and that the bankruptcy court very likely properly applied the federal

4  common law of privilege to the facts of the dispute.[8]  That is, whether or not the

5  California Evidence Code and California case law privileges Lei's communications is

6  irrelevant; Appellants have not shown that any argument in favor of applying or

7  importing the broader California "client representative" privilege stands a fair chance

8  of success.

9

10           1.     *The Law is Well-Settled that the Federal Common Law of Privilege*

11                  *Applies to Subpoenas Issued Pursuant to Federal Rule of*

12                  *Bankruptcy Procedure 2004*

13       Appellants first argue that the bankruptcy court erred in not applying California

14  privilege law pursuant to Federal Rule of Evidence 501.   (*Appellants' Mot.* 12.)

15  Specifically, Appellants argue that California law controls because the "primary issue"

16  underlying the discovery dispute concerns the Trustee's intent to glean information to

17  support a claim or defense where California law would supply the rule of decision.

18  (*Appellant's Mot.* 13–14.)  Appellants then run through various scenarios in which the

19  information the Trustee seeks could be used to invoke California law and prove usury

20  and holder in due course claims and determine claim amounts.  (*Id.* 15.)

21       The Trustee contends, in response, that the bankruptcy court is a federal

22  proceeding where the federal law of privilege, favoring admissibility, is controlling.

23

24       ────────────────
         [8]Appellant also plucks the following line from Judge Bowie's order denying the stay to
25  bolster their "likelihood of success" argument:
            This case has been an interesting case and I've wrestled with this particular
26       motion for a couple of reasons.  One is because, philosophically, it's always an
         intriguing question when you have a test that requires a deciding judge to decide
27       whether there's, you know, whatever standard you choose to call it; a probability
         or likelihood that I am wrong.
28  (*Appellant's Request for Judicial Notice* 306.)  Judge Bowie's comments, however, only suggest
    that he gave careful thought to the issue before ruling on it, not that it is likely that he decided
    the issue wrongly or it was an especially close call.

1  (*Trustee's Opp'n* 10.)  Moreover, the Trustee contends that it is "hornbook law" that

2  discovery in connection with a Rule 2004 proceeding is governed by the federal law of

3  privilege.

4       Federal Rule of Evidence 501 states that the federal common law of privilege

5  applies when federal law determines the substantive rights of the parties. Fed. R. Evid.

6  501; accord United States v. Zolin, 491 U.S. 554, 562 (1989).  On the other hand, the

7  state privilege law controls if the underlying claim or defense is governed by state law.

8  Fed. R. Evid. 501; Star Editorial v. United States Dist. Court, 7 F.3d 856, 859 (9th Cir.

9  1993).

10      An examination under Bankruptcy Rule 2004 is nonadversarial in nature and

11  aimed at discovering evidence upon which future causes of action may be based and is

12  therefore governed by bankruptcy law rather than state substantive law.[9]  See Hon.

13  Barry Russell, Bankruptcy Evidence Manual § 501.3 (West 2006) (collecting cases).

14  Thus, if a subpoena is issued in connection with a Rule 2004 examination, federal

15  common law rules of privilege will apply. Id.; In re: Asia Global Crossing, Ltd., 322 B.R.

16  247, 254–55 (Bankr. S.D.N.Y. 2005); In re: Rafsky, 300 B.R. 152, 154 (Bankr. D.

17  Conn. 2003); In re: Bautista, 2007 Bankr. LEXIS 4170, at *3–4 (N.D. Cal. Dec. 10,

18  2007).

19      Federal privilege law will control even if the evidence sought is relevant to both

20  the federal and state claims.  Bulow v. Bulow, 811 F.2d 136, 140 (2d Cir. 1987).  In

21  such situations, courts consistently have held that the asserted privileges are governed

22  by the principles of federal law. Id.; see also Agster v. Maricopa County, 422 F.3d 836,

23  839 (9th Cir. 2005) ("Where there are federal question claims and pendent state law

24  claims present, the federal law of privilege applies.").  It is only where a discrete

25  bankruptcy adversary proceeding involves litigants squaring off solely under state law

26

27     [9]It is well established that the scope of a Rule 2004 examination is exceptionally broad
and provides few of the procedural safeguards found in Federal Rule of Civil Procedure 26. In
28  re: Rafsky, 300 B.R. at 153 n.2.  Examinations under Rule 2004 are allowed for the "purpose
of discovering assets and unearthing frauds" and have been compared to a "fishing expedition."
Id.

1  claims will Rule 501 require reference to state privilege law. See In re: Couch, 80 B.R.

2  512, 514–16 (S.D. Cal. 1987) (applying California privilege law to bankruptcy

3  proceeding where Trustee had filed direct action for claims under California Insurance

4  Code); In re: Tidewater Group, Inc., 65 B.R. 179, 181 (Bankr. N.D. Ga. 1986)

5  (applying state privilege law in adversary proceeding concerning solely state tort and

6  contract law issues).

7        Here, the Trustee's subpoena, authorized by the bankruptcy court, requested

8  documents from Lei pursuant to Bankruptcy Rule 2004. (Bankr. Doc. No. 509, 510;

9  Bankr. Court's Order on Trustee's Mot. to Compel Disc. 2.) The law is uniform in that the

10  federal common law of privilege, and not state law, applies to attorney-client privilege

11  objections in response to Rule 2004 subpoena requests. See In re: Asia Global Crossing,

12  Ltd., 322 B.R. 247, 254–55 (Bankr. S.D.N.Y. 2005) (applying federal common law of

13  privilege); In re: Rafsky, 300 B.R. 152, 154 (Bankr. D. Conn. 2003) (same); In re:

14  Bautista, 2007 Bankr. LEXIS 4170, at *3–4 (N.D. Cal. Dec. 10, 2007) (same); Hon.

15  Barry Russell, Bankruptcy Evidence Manual § 501.3 (West 2006) (collecting cases).

16  Clearly, the bankruptcy court properly applied Federal Rule of Evidence 501 and did

17  not err in analyzing Appellant's attorney-client privilege claims under federal common

18  law.

19        Although Appellants argue that applying federal privilege law is improper

20  because the Trustee seeks information which could support state law claims, it is well-

21  settled that Rule 2004 discovery enjoys a broad scope, regardless of any background

22  state law issues. See In re: Rafsky, 300 B.R. at 153 n.2; see also In re: Asia Global

23  Crossing, Ltd., 322 B.R. at 254 ("Even if the Trustee ultimately intends to pursue state

24  law claims, federal law nonetheless controls the privilege."). When the subpoena

25  issued, the Trustee was not locked in a direct adversary proceeding with Appellants that

26  concerned only state law issues—rather, the Appellants' and Trustee's direct claims

27  were filed a year later. See In re: Int'l Horizons, Inc., 689 F.2d 996, 1003 (11th Cir.

28  1982) (applying federal law because the bankruptcy proceeding did not yet involve state

claims). All of Appellants' authority involves subpoenas that did not issue in

1   connection with Rule 2004 or where direct state law claims (the merits of which had
2   little to do with the underlying bankruptcy) had already been filed.  To the extent
3   Appellants try to distinguish the Trustee's precedent, Appellants either assert that the
4   cases were "wrongly decided" or "misread." (*Appellants' Mot.* 14, 14 n. 23.)  In sum, the
5   law is clear—the federal common law of privilege applies to privilege objections to the
6   Trustee's Rule 2004 subpoena.
7
8           2.      *Appellants Have Not Shown It Is Likely That Principles of Comity*
9                   *Warrant Injecting California Privilege Law Into The Federal*
10                  *Common Law of Privilege*
11          Appellants argue that, even if federal common law is applied, judicial comity
12  dictates that federal courts should take into account the view of state authorities.
13  (*Appellants' Mot.* 16.)  Thus, California law should be considered in deciding whether
14  to extend an attorney-client privilege to a "client representative" like Lei.  (*Appellants'*
15  *Mot.* 17.)  Appellants find it troubling that the bankruptcy court overlooked favorable
16  California law and instead applied "the [narrower privilege] laws from New York,
17  Connecticut, Florida, and Michigan." (*Id.* 1.)  Because California law would insulate
18  Lei's communications with Sabella's counsel as a "client representative," Appellants
19  contend, the bankruptcy court erred in applying law which did not so extend the
20  privilege to protect Lei's communications.  (*Id.* 9–12.)
21          Courts recognize that, for more than three centuries, there has existed a
22  fundamental maxim that "the public has the right to every man's evidence." United
23  States v. Bryan, 339 U.S. 323, 331 (1950).  Exceptions to the demand for every man's
24  evidence are not lightly created nor expansively construed, for they are in derogation
25  of the search for the truth. Exxon Shipping Co. v. United States Dep't of Interior, 34
26  F.3d 774, 779 (9th Cir. 1994) (citing United States v. Nixon, 418 U.S. 638, 710
27  (1974)).  One well-recognized exception to the fundamental maxim, however, is the
28  attorney-client privilege.  In the Ninth Circuit, the attorney-client privilege is strictly
    construed.  United States v. Martin, 278 F.3d 988, 999 (9th Cir. 2002).

1    Because the Federal Rules of Evidence do not define the scope of the attorney-

2 client privilege, courts start with proposed Federal Rule of Evidence 503 ("Supreme

3 Court Standard 503") in analyzing the extent of the attorney-client privilege under

4 federal law:[10]

5    A client has a privilege to refuse to disclose and to prevent any other
person from disclosing confidential communications made for the purpose

6    of facilitating the rendition of professional legal services to the client, (1)
between himself *or his representative* and his lawyer or his lawyer's

7    representative[...], or (4) between *representatives of the client* or between

8    the client and a *representative of the client.*

9 (*Bankr. Court's Order on Trustee's Mot. to Compel Disc.* 4–5 (citing Supreme Court

10 Standard 503(b)) (emphasis added).) Supreme Court Standard 503 does not define

11 "representative of the client," and the Advisory Committee Notes suggest that "the

12 matter is better left to resolution by decision on a case-by-case basis." Weinstein &

13 Berger, Weinstein's Federal, at § 503App.01.

14    To date, however, a federal "client representative" extension of the attorney-

15 client privilege has only been recognized in two situations: (1) where the client is a

16 corporation and requires communication on its behalf, see Memry Corp. v. Ky. Oil

17 Tech. N.V., No. 04-3843, 2007 U.S. Dist. LEXIS 3094 (N.D. Cal. January 4, 2007)

18 (adopting test set forth in In re: Beiter Co., 16 F.3d 929 (8th Cir. 1994));[11] and (2)

19 where the client is an individual and is either disabled or is in some unique position

20 requiring another to intervene between the client and counsel, see Leone v. Fisher, No.

21 05-CV-521, 2006 WL 2982145 (D. Conn. Oct. 18, 2006). In the second situation, the

22 Leone court reviewed relevant state and federal decisions and decided, for the client

23 representative extension to apply to an individual, it must be: (1) related to the subject

24 matter of the underlying attorney-client relationship; (2) necessary to effectuate the

25

26    [10]Commentators suggest that proposed Federal Rule of Evidence 503 outlines the federal
common law on attorney-client privilege. 3 Jack B. Weinstein & Margaret A. Berger,

27 Weinstein's Federal § 503.02 (Joseph M. McLaughlin, ed., Matthew Bender 2d ed. 2006);
accord Leone v. Fisher, No. 05-CV-521, 2006 WL 2982145 (D. Conn. Oct. 18, 2006).

28    [11]In the bankruptcy proceedings, both parties agreed that should federal law apply, and
should Lei be considered a client-representative of Dynamic, Memry Corporation and In re:
Beiter were controlling.

1  representation; and (3) could not have been communicated by the client herself. Id.
2  at *5.

3        It is important to note that nowhere in Appellants' moving papers do they argue
4  that they are likely to succeed on the merits because the bankruptcy court got the facts
5  wrong. Here, the bankruptcy court found—and Appellants do not here dispute—that
6  Lei dealt with the individual Sabella, and not the corporation Dynamic.[12] Thus, the
7  second, or Leone, situation was implicated. (Bankr. Court's Order on Trustee's Mot. to
8  Compel Disc. 6–7.) Further, the bankruptcy court found—and Appellants do not here
9  dispute—that Sabella had no disability or was in no unique position which required Lei
10 to communicate with Sabella's counsel on her behalf. (Id. 8–9.) Taken together, this
11 compelled the conclusion that the correspondence between Lei and Sabella's counsel
12 was not protected by a federally-recognized client representative extension of the
13 attorney-client privilege.  Upon review, this Court finds it very likely that the
14 bankruptcy court properly analyzed relevant federal precedent and properly constrained
15 the attorney-client privilege in accordance with the federal and Ninth Circuit law on
16 privileges.

17       Appellants mistakenly argue that because there was a "void" in the federal
18 common law, the bankruptcy court should have simply applied California law as a
19 matter of comity.  There are two problems with this argument.  First, the bankruptcy
20 court did properly apply existing federal common law of client-representative
21 privilege—Leone—to the facts of the case.  Although Leone reviews state court
22 decisions in determining the privilege's reach, Leone is still persuasive authority as
23 federal common law.[13]  While precedent is scant, federal common law simply has not

24

25       [12]In dicta, the bankruptcy court also provided an independent basis for compelling
disclosure under the Memry Corporation test. It found that Lei's relationship with Dynamic,
26 if one existed at all, was too tenuous for Lei to be labeled a "client representative" of the
corporation. Thus, Memry Corporation's federally recognized "client representative" extension
27 of the attorney-client privilege did not attach. (Bankr. Court's Order on Trustee's Mot. to
Compel Disc. 9.)

28       [13]The legislative history to Federal Rule of Evidence 501 makes clear that "[w]hen a
federal court chooses to absorb state law, it is applying the state law as a matter of federal
common law. Thus the state law does not supply the rule of decision (even though the federal

- 14 -

1  extended the client-representative privilege as far as California law has.

2  Nor did <u>Leone</u> or the bankruptcy court likely err in considering <u>Hendrick v. Avis</u>
3  <u>Rent-a-Car Sys., Inc.</u>, 944 F. Supp. 187 (W.D.N.Y. 1996), <u>Gerheiser v. Stephens</u>, 712
4  So.3d 1252 (Fla. Ct. App. 1998), or <u>Grubbs v. K-Mart Corp.</u>, 411 N.W.2d 477 (Mich.
5  Ct. App. 1987), all of which relied on state privilege law. Where federal authority is
6  wanting, federal courts may look to authoritative state court decisions and statutes
7  when deciding whether to recognize a new privilege or amend the coverage of an
8  existing one. <u>Jaffee v. Redmond</u>, 518 U.S. 1, 12–13 (1996) (citing <u>Trammel v. United</u>
9  <u>States</u>, 445 U.S. 40; 48–50 (1980)). Faced with a dearth of federal precedent, blindly
10 resorting to *only* the forum state's privilege law is inappropriate. Appellant has not
11 shown that California law is in accord with most states, or that it is likely that the
12 federal common law would be advanced by the injection of California's broadened view
13 of the client-representative extension of attorney-client privilege.[14] Fed. R. Evid. 501
14 (stating that federal courts should recognize evidentiary privileges according to the
15 principles of the common law in the light of reason and experience); see also <u>Trammel</u>,
16 445 U.S. at 50 (holding that a party seeking a new privilege must overcome a significant
17 burden of establishing that excluding relevant evidence has a public good transcending
18 the normally predominant principle of utilizing all rational means for ascertaining
19 truth); <u>Carman v. McDonnell Douglas Corp.</u>, 114 F.3d 790, 793 (8th Cir. 1997)
20 (recognizing that evidentiary privileges are "not lightly created").

21 Second, where Appellants seek to import a California privilege into a federal
22 bankruptcy proceeding, Appellants likely overstate the case for comity. There is indeed
23 authority for the proposition that federal courts should recognize state privileges where
24 this can be done at no substantial cost to federal policies. See <u>In re: Int'l Horizons</u>, 689
25 F.2d at 1004 (collecting cases); <u>Leon v. County of San Diego</u>, 202 F.R.D. 631, 635

26

27 court may apply a rule derived from state decisions)...." H.R. Rep. No. 1597, 93d Cong., 2d
28 Sess (1974), U.S. Code Cong. & Admin. News 1974, 7051, 7101.

[14]Moreover, considering <u>Leone</u>, importing California's "client representative" privilege
into the federal common law would be inviting a split of federal authority.

- 15 -

08cv1194W

1  (S.D. Cal. 2001); (*Appellants' Mot.* 16–17.)  Bankruptcy Rule 2004, however, reflects

2  a strong federal interest in allowing a court to gain a clear picture of the condition and

3  whereabouts of the estate and to examine witnesses having knowledge of a debtor's

4  acts, conduct, liabilities, assets.  See, e.g., In re: Johns-Manville Corp., 42 B.R. 362, 364

5  (S.D.N.Y. 1984).  Importing California's broad client-representative privilege would

6  likely significantly undermine the important federal interest in assuring complete and

7  accurate disclosure in federal bankruptcy proceedings.  See In re: Int'l Horizons, 689

8  F.2d at 1005 (declining to recognize Georgia's accountant-client privilege in bankruptcy

9  proceedings); In re: Rafsky, 300 B.R. at 154 (finding that recognizing Connecticut's

10  marital privilege would contradict controlling federal bankruptcy law and policy).

11  Therefore, the Court finds it likely that considerations of comity do not require us to

12  embrace California's broad client representative privilege.  See also In re: Int'l Horizons,

13  689 F.2d at 1005 n.19 (collecting cases).

14       In sum, it is crystal clear that the federal common law of privilege applies to

15  objections to Rule 2004 subpoena requests.  Likewise, Appellants have not shown that

16  they are likely to succeed in showing that California's broad "client representative"

17  privilege should be incorporated into the federal common law of attorney-client

18  privilege.  Rather, it appears the bankruptcy court properly applied Leone, which is

19  persuasive federal authority on the issue. Given the above, Appellants have not shown

20  a likelihood of success on the merits and the Court thereby **DENIES** Appellants'

21  motion to stay the bankruptcy court's Order pending appeal.

22

23  C.    The Possibility of Irreparable Harm Does Not Entitle Appellant to a

24         Stay Pending Appeal

25       Appellants contend that they will be irreparably harmed if a stay does not issue

26  because the Court will be unable to undo the effect of improper disclosure, even if it

27  eventually grants Appellants' appeal.  (*Appellants' Mot.* 18.)  Appellants' arguments are

28  nicely summarized by In re: Napster, 479 F.3d 1078, 1088 (9th Cir. 2007)'s euphemism

    that "once the cat is already out of the bag, it may not be possible to get it back in."

1 (*Appellants' Mot.* 19, *Appellants' Reply* 1.)

2    The Trustee argues that merely pointing to the possibility of irreparable harm is

3 not sufficient to warrant an automatic stay. (*Trustee's Opp'n* 18.) If this were the law,

4 the Trustee contends, there would no reason for the four-prong test, for every appellant

5 could make a meritless privilege claim in order to obtain a "free pass" to a stay. (*Id.*)

6 The Trustee also points out the bankruptcy court's concerns over the ongoing delay in

7 this case and argues that a stay would harm the bankruptcy estate. (*Id.*)

8    The Court agrees with the Trustee. As mentioned above, an appellate court

9 must view the possibility of irreparable harm differently when reviewing a final

10 determination on the merits rather than a preliminary determination not on the merits.

11 Appellants have had three chances in front of two courts to argue extending the

12 California client representative privilege into federal court: first by opposing the motion

13 to compel, then by petitioning the bankruptcy court for a stay, and finally by the instant

14 motion. At this point, the argument that potentially privileged documents might be

15 disclosed is less powerful when one ruling has already found the privilege inapplicable,

16 and two rulings have found it unlikely that the issue was wrongly decided. Because

17 Appellants have not shown a likelihood of success on the merits, the slim possibility

18 that the cat might jump out of the bag does not operate to automatically warrant a stay

19 under the facts of this case.[15]

20

21 IV.  CONCLUSION

22    In conclusion, the Court finds that Appellants have not shown that they are

23 likely to succeed on the merits of their appeal because federal common law applies to

24 Appellants' privilege claims, and Appellants have not shown that it is likely that federal

25

26    [15]In regards to the third factor, the Trustee's harm absent a stay, the Court accepts the
bankruptcy court's concerns regarding Lei's and Appellants' continued delay in the case, even
27 though the bankruptcy estate is in cash. In regards to the final factor, serving the public
interest, the Court finds that while the public interest in confidential attorney-client
28 communications is great, United States v. Chen, 99 F.3d 1495, 1499 (9th Cir. 1996), in light
of a federal court's unlikeliness to import California's client representative privilege, the public
interest in the just, speedy, inexpensive, and accurate determination of every bankruptcy case
is greater. Fed. R. Bankr. Proc. 1001, 2004.

1  law recognizes California's broader individual "client representative" extension of
2  attorney-client privilege.  Although there is the possibility that Appellants will be
3  irreparably harmed should privileged documents be disclosed pending appeal, under the
4  circumstances of this case the quantum of harm is not sufficient to outweigh the
5  unlikelihood of success on the merits.  When also considering the great delay since the
6  Trustee first moved to compel, the Court finds that the public interest in speedy and
7  accurate bankruptcy proceedings warrants **DENYING** the application for stay of the
8  bankruptcy court's Order.

9

10      **IT IS SO ORDERED.**

11

12

13  DATE: July 25, 2008

14                                              HON. THOMAS J. WHELAN
                                                United States District Court
15                                              Southern District of California

16

17

18

19

20

21

22

23

24

25

26

27

28

Westlaw.

Slip Copy
Slip Copy, 2008 WL 486002 (D.Ariz.)
**2008 WL 486002 (D.Ariz.)**

Page 1

**H**
Arizona Contractors Ass'n, Inc. v. **Candelaria**
D.Ariz.,2008.
Only the Westlaw citation is currently available.
United States District Court,D. Arizona.
ARIZONA CONTRACTORS ASSOCIATION,
INC., an Arizona nonprofit corporation; Arizona
Employers for Immigration Reform, Inc., an Ari-
zona non-profit corporation; Chamber of Com-
merce of the United States of America, a Washing-
ton D.C. non-profit corporation; Arizona Chamber
of Commerce, an Arizona non-profit corporation;
Arizona Hispanic Chamber of Commerce, Inc., an
Arizona nonprofit corporation; Arizona Farm Bur-
eau Federation, an Arizona non-profit corporation;
Arizona Restaurant and Hospitality Association, an
Arizona non-profit corporation; Associated Minor-
ity Contractors of America, an Arizona non-profit
limited liability company; Arizona Roofing Con-
tractors Association, an Arizona non-profit corpora-
tion; National Roofing Contractors' Association, an
Illinois not-for-profit corporation; Wake Up Ari-
zona! Inc., an Arizona non-profit corporation; and
Arizona Landscape Contractors Association, Inc.,
an Arizona non-profit corporation, Plaintiffs,
v.
Criss **CANDELARIA,** Apache County Attorney;
Ed Rheinheimer, Cochise County Attorney; Ter-
ence C. Haner, Coconino County Attorney; Daisy
Flores, Gila County Attorney; Kenny Angle, Gra-
ham County Attorney; Derek D. Rapier, Greenlee
County Attorney; Martin Brannan, LaPaz County
Attorney; Andrew P. Thomas, Maricopa County
Attorney; Matthew J. Smith, Mohave County Attor-
ney; James Currier, Navajo County Attorney; Bar-
bara Lawall, Pima County Attorney; James P.
Walsh, Pinal County Attorney; George Silva, Santa
Cruz County Attorney; Sheila Polk, Yavapai
County Attorney; Jon Smith, Yuma County Attor-
ney; Terry Goddard, Attorney General of the State
of Arizona; and Fidelis V. Garcia, Director of the
Arizona Registrar of Contractors, Defendants.
Valle Del Sol, Inc.; Chicanos Por La Causa, Inc.;

and Somos America, Plaintiffs,
v.
Terry Goddard, in his official capacity as Attorney
General of the State of Arizona; Gale Garriott, in
his official capacity as the Director of the Arizona
Department of Revenue; and Andrew Thomas, in
his official capacity as Maricopa County Attorney,
Defendants.
**Nos. CV07-02496-PHX-NVW,
CV07-02518-PHX-NVW.**

Feb. 19, 2008.

**ORDER**

NEIL V. WAKE, District Judge.
*1 Plaintiffs have appealed the February 7, 2008
judgment dismissing Defendant Arizona Attorney
General Terry Goddard without prejudice for lack
of subject matter jurisdiction and entering judgment
in favor of all other Defendants. They now seek an
injunction preventing Defendants from implement-
ing or enforcing the Legal Arizona Workers Act
("the Act"), A.R.S. §§ 23-211 through 214, for the
duration of the appeal. Fed.R.Civ.P. 62(c). (Doc.
181, 182, and 183.) The court's findings of fact and
conclusions of law (Doc. # 175) principally con-
cluded: (1) that the Act is not expressly preempted
by the Immigration Reform and Control Act of
1986 ("IRCA"), Pub.L. No. 99-603, 100 Stat. 3359
(employer sanctions provisions codified at 8 U.S.C.
§ 1324a to 1324c (2000)); (2) that the structure and
purpose of IRCA do not clearly indicate Congres-
sional intent to occupy the field of licensing sanc-
tions for employers of unauthorized aliens; (3) that
the Act does not regulate immigration; (4) that
neither the licensing sanctions provisions of A.R.S.
§ 23-212, nor the requirement to use E-Verify
found in A.R.S. § 23-214 conflicts with the pur-
poses and objectives of Congress; (5) that the Act
affords employers due process of law; and (6) that
the Act does not violate the Commerce Clause of
the U.S. Constitution.

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                    Page 2
Slip Copy, 2008 WL 486002 (D.Ariz.)
**2008 WL 486002 (D.Ariz.)**

## I. Standards for Injunction Pending an Appeal

An injunction pending appeal under Federal Rule of Civil Procedure 62(c) is an extraordinary remedy that should be granted sparingly. *Reading & Bates Petroleum Co. v. Musslewhite*, 14 F.3d 271, 275 (5th Cir.1994) ("Stays pending appeal constitute extraordinary relief."); *United States v. Texas*, 523 F.Supp. 703, 729 (E.D.Tex.1981) ("Since such an action interrupts the ordinary process of judicial review and postpones relief for the prevailing party at trial, the stay of an equitable order is an extraordinary device which should be sparingly granted.").

Four factors must be considered on Rule 62(c) motions: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."*Hilton v. Braunskill*, 481 U.S. 770, 776, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987).

In general, to prevail on a motion for injunction pending appeal, the moving party must show either (1) "a strong likelihood of success on the merits" and "the possibility of irreparable injury to plaintiff if preliminary relief is not granted" or (2) "that serious legal questions are raised and that the balance of hardships tips sharply in its favor."*Golden Gate Restaurant Ass'n. v. City of San Francisco*, No. 07-17370, --- F.3d ----, 2008 WL 90078, at *2, 2008 U.S.App. LEXIS 364, at *4 (9th Cir. Jan.9, 2008) (quoting *Natural Res. Def. Council, Inc. v. Winter*, 502 F.3d 859, 862 (9th Cir.2007); *Lopez v. Heckler*, 713 F.2d 1432, 1435 (9th Cir.1983))."These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases."*Winter*, 502 F.3d at 862. Courts must "consider 'where the public interest lies' separately from and in addition to" the balance of hardships between the parties. *Id.* at 863.

*2 All laws passed by State legislatures are entitled

to a presumption of validity. That presumption is an equity to be considered in favor of the State when balancing hardships. *See Walters v. Nat'l Ass'n of Radiation Survivors*, 468 U.S. 1323, 1324, 105 S.Ct. 11, 82 L.Ed.2d 908 (1984) (Rehnquist, J., chambers). For that reason, in cases "in which 'the moving party seeks to stay governmental action taken in the public interest pursuant to a statutory or regulatory scheme,' the injunction should be granted only if the moving party meets the more rigorous likelihood-of-success standard."*Bery v. City of New York*, 97 F.3d 689, 694 (2d Cir.1996) (citing *Plaza Health Labs., Inc. v. Perales*, 878 F.2d 577, 580 (2d Cir.1989)); *Tunick v. Safir*, 209 F.3d 67, 70 (2d Cir.2000).*Cf. Golden Gate Restaurant Ass'n.*, 2008 WL 90078, at *13, 2008 U.S.App. LEXIS 364, at *37 (stating that to overcome the public interest factor, it must be "obvious" that the law is invalid).

In this case an injunction is not needed to protect appellate jurisdiction and would upset the status quo.

## II. Plaintiffs are Unlikely to Succeed in Invalidating the Act

Plaintiffs bear a heavy burden to invalidate the Act on appeal. They challenge the Act on its face, so they must prove that the Act cannot operate validly under any circumstance. To show that the federal government has occupied the field of licensing sanctions laws, Plaintiffs will have to overcome IRCA's preservation of state authority for employer sanctions by "licensing and similar laws." 8 U.S.C. § 1324a(h)(2).

Congress has extensive authority to destroy residual state police powers-to close the fifty laboratories of experiment. The protection of our federalism lies in Congress having to do so clearly and having to answer for it. "[T]he structural safeguards inherent in the normal legislative process operate to defend state interests from undue infringement."*Geier v. American Honda Motor Co.*, 529 U.S. 861, 907,

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                    Page 3
Slip Copy, 2008 WL 486002 (D.Ariz.)
**2008 WL 486002 (D.Ariz.)**

120 S.Ct. 1913, 146 L.Ed.2d 914 (Stevens, J., dissenting). But no one answers for it when, from special knowledge of purposes and proportionalities, the courts attribute preemption to Congress free of its own words that are plain enough to citizens. This would disarrange our federalism. It would require a bicameral majority to restore state power, rather than leaving state power as our constitutional default position in the absence of a federal bicameral majority. Plaintiffs are unlikely to succeed in reading the express preservation of state licensing sanctions out of IRCA.

Plaintiffs' conflict preemption, due process, and dormant Commerce Clause arguments are even weaker. To some extent they attack the edges of the Arizona Act, not its core, on hypothetical facts not shown in this case. To that extent their attacks are directed at particular applications of the Act and are beyond this facial challenge. Further, if any single provision fails, the Act's severability clause will save the remainder, provided that the Act is not entirely preempted.

*3 Plaintiffs do not have a probability of success on appeal, much less a strong probability. A mere "serious question" is not enough to suspend state action "taken in the public interest pursuant to a statutory ... scheme."*Bery v. City of New York,* 97 F.3d at 694. This shortfall alone requires denial of the motions for injunction pending appeal.

**III. The Balance of Hardships Favors Defendants**

**A. Plaintiffs' Hardship is Minimal**

Plaintiffs' hardship comes down to nothing more than the expense of using E-Verify. If the federal government's statistics hold true for Arizona employers, 85% will spend less than $100 to set-up E-Verify and 75% will spend less than $100 annually to operate the system. The average employer will likely spend $125 in set-up and $728 in maintenance of the system. (Joint Statement of Stipulated Facts ("Facts"), Doc. # 152, Ex. 52 at 104.)

The Act's E-Verify requirement is an increment to the already pervasive regulation of labor and employment in our society. A complaint that there is more cost to comply with labor regulation has little purchase. It is difficult to establish irreparable injury based on prospective monetary damages alone. *See Stop H-3 Ass'n v. Volpe,* 353 F.Supp. 14, 18 (D.Haw.1972)*rev'd on other grounds,*533 F.2d 434 (9th Cir.1976) (citations omitted) ("Traditionally, the irreparable injury contemplated by Rule 62(c) is that which will make the appeal moot. Thus, prospective monetary damage is *not* irreparable injury."). While the cost of using E-Verify meets the minimum for standing, it is not so great as to warrant an injunction. *See Yniguez v. Mofford,* 730 F.Supp. 309, 317 (D.Ariz.1990)*rev'd on other grounds,*939 F.2d 727 (9th Cir.1991) ("While Yniguez has established a sufficient threat of enforcement to provide an actual controversy for purposes of Article III and the Declaratory Judgment Act, she has not established an enforcement threat sufficient to warrant injunctive relief."); *Lawson v. Hill,* 368 F.3d 955, 959 (7th Cir.2004) ("Even if we are wrong to suppose the risk of prosecution too remote to confer standing to sue ... the district judge was right not to enter an injunction .... [a]n injunction is an extraordinary remedy.").

Moreover, complying with E-Verify will have offsetting business benefits for Plaintiffs. It effectively ensures that they will be virtually immune from licensing sanction proceedings. *Arizona Contractors Ass'n v. Napolitano,* No. CV07-1355-PHX-NVW, ---- F.Supp.2d ----, 2007 WL 4293641, at * 11, 2007 U.S. Dist. LEXIS 90694, at *34 (D.Ariz. Dec.7, 2007). Based upon past users' experiences, an overwhelming majority of Arizona employers will likely find E-Verify an effective and convenient tool for employment verification, (Facts, Doc. # 152, Ex. 52 at 140), and will rate the program "Excellent," "Very Good," or "Good" (Facts, Doc. # 149, Ex. 13 at 4).

Plaintiffs submit two declarations from Arizona

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                Page 4
Slip Copy, 2008 WL 486002 (D.Ariz.)
**2008 WL 486002 (D.Ariz.)**

employers who assert that they will have to spend much more than the usual amount to set up E-Verify. (Facts, Doc. # 150, Ex. 26 & 27.) Both are owners of franchise restaurants who allegedly will have to purchase computer equipment and dedicated Internet connections for each location to comply with E-Verify. One employer states that he will need to spend more than 82 times the national average to set up the system. Both declarations state bare conclusions. Neither displays any of the resourcefulness one expects from business people seeking efficient solutions to problems. The failure to explain and exclude other solutions leaves the court unpersuaded ·that either declaration states a likely true cost. Even if the declarations are taken at face value, their costs are minor compared to the cost to the State, others, and to the public interest from suspending the Act, as explained below.

**B. An Injun ction Will Injure t he Direct F inan-cial Interests of the State**

*4 The State will suffer monetary damages from an injunction pending appeal. Its expenditure to inform every employer by October 1, 2007, of the Act and of the obligation to comply with E-Verify after December 31, 2007, will be wasted. 2007 Ariz. Sess. Laws, Ch. 279, § 3. (Facts, Doc. # 148, Ex. 6.) Giving individuals actual notice of the law, when it begins, and how to avoid risk by complying with E-Verify, was critical to the legislature's purpose of achieving effective deterrence with the fewest number of employers suffering actual sanctions. If the Act is suspended by court order, that legislative purpose of individual fairness will be defeated unless a new notice is sent in the event that the Act is allowed to go back into effect. Therefore, if an injunction were issued, the court would require Plaintiffs to post a bond under Rule 62(c) to cover the cost of a new notice.

**IV. The Harm to the Public Interest from an In-junction Against Enforcement of the Act Would Greatly Outweigh Plaintiffs' Cost of Compliance**

**A. The Arizona Legislature Has Declared the Public Interest**

The parties have submitted a number of expert reports and declarations concerning the effect of immigration on the Arizona economy and wages. Significantly, Plaintiffs' studies do not distinguish between the effect of authorized and unauthorized immigration. Only Defendants' expert, Prof. George Borjas, offers a conservative estimate of the effect of unauthorized alien labor on authorized labor, both alien and citizen. For this and other reasons discussed below, the court finds Defendants' expert to be persuasive.

In any event, this is not an appropriate forum for second guessing the Arizona legislature's decision that the public interest is best served by strongly deterring the knowing or intentional employment of unauthorized aliens. This court's "consideration of the public interest is constrained in this case, for the responsible public officials in [the State] have already considered that interest."*Golden Ga te R es-taurant Ass'n.*, 2008 WL 90078, at *13, 2008 U.S.App. LEXIS 364, at *37. The Arizona legislature, like the federal government before it, balanced competing social and economic interests and decided in favor of an economy for those authorized to work in the United States. "[If it were obvious that the [Act] was unconstitutional or preempted by a duly enacted federal law[,]" there might be some basis to conclude that the public interest is not served by the Arizona legislature's preferred values. *Id.* However, one cannot by any stretch of reason describe the Act as obviously invalid. It is therefore in the public interest that this court exercise its "discretionary power with proper regard for the rightful independence of state governments in carrying out their domestic policy."*Id.* (quoting *Burford v. Sun Oil Co.*, 319 U.S. 315, 318, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943)). Declining an injunction pending appeal will allow the Act's continued application, and therefore will "in a real sense, preserve rather than change the status quo."*Id.* at *3,2008 U.S.App. LEXIS 364, at *7, 2008 WL

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2008 WL 486002 (D.Ariz.)
**2008 WL 486002 (D.Ariz.)**

Page 5

90078.

### B. By the Most Conservative of Measures, the Balance of Hardships Favors the Defendants and the Public Interest

*5 In addition to noting the illegitimacy of disagreeing with the legislative body's preferred values, the court of appeals in *Golden Gate Restaurant Association* did assess the harm to the public and the beneficiaries of the challenged ordinance. *Id.* at * 13, 2008 U.S.App. LEXIS 364, 2008 WL 90078 at* 35-37. Here also, the court is persuaded by Defendants' expert, Prof. George Borjas, that the number of unauthorized workers in Arizona is very substantial and that their presence in the work force drives down wages for competing authorized workers. For high school dropouts alone, wages are depressed by at least 4.7%, or about $950 annually. This exceeds $200 million per year just for those authorized workers. The numbers are far greater when including all authorized workers. (Facts, Doc # 150, Ex. 1 of Ex. 39 at 16.) Again, though these are gross estimates, Prof. Borjas has favored conservative figures.

Plaintiffs' experts are unpersuasive. Professor Marc R. Rosenblum, a political scientist and not an economist, offers general political arguments why employer sanctions have been ineffective and are a bad idea. While his historical narrative is helpful, his conclusions are not empirical science. Rather, they are speculations about the effects of the Arizona employer sanctions law, speculations which the legislature was not bound to accept. His conclusion that "[e]mployer sanctions depress wages for all U.S. workers" is not persuasive, and the court does not believe it. (Facts, Doc. # 150, Ex. 36 at 9.)

The conclusions of Judith K. Gans, also not an economist, about the general benefits of immigration do not address the effects of unauthorized alien labor upon those whom the legislature chose to protect. (Facts, Doc. # 150, Ex. 35.) The opinions of Prof. Giovanni Peri (Facts, Doc. # 150, Ex. 38) also

do not persuasively undercut the opinions of Prof. Borjas (Doc. # 159, Borjas Aff.).

These expert reports include, and therefore inappropriately attempt to give weight to, the value of benefits produced by unauthorized alien labor. The benefits in fact to those who come to this country against the law to make better lives for themselves, to those who save from lower cost labor and general depression of wages from employing unauthorized aliens, and to those who enjoy the products of unauthorized labor at lower prices, do not count. The beneficiaries chosen identically by federal and Arizona law prevail over all who benefit from unauthorized alien labor. They are the authorized workers in the United States who compete with unauthorized aliens. *See Incalza v. Fendi N. Am., Inc.,* 479 F.3d 1005, 1011 (9th Cir.2007) (quoting H.R. Rep. 99-682(I), at 46, *as reprinted in* 1986 U.S.C.C.A.N. at 5650) ("In passing IRCA, Congress wished to stop payments of wages to unauthorized workers, which act as a 'magnet ... attract[ing] aliens here illegally,' and to prevent those workers from taking jobs that would otherwise go to citizens."). For these reasons, Plaintiffs' experts' conclusions are not helpful or persuasive in balancing the hardships.

*6 The court finds as a fact that the cost of complying with E-Verify for Plaintiffs and all other Arizona employers is far less than the wage depression to the poorest Arizona workers from unauthorized alien labor. This effect on the public interest strongly weighs in favor of allowing the Act's continued implementation. Further, as persuasively detailed by Prof. Borjas, there are other and greater costs to workers from the large number of unauthorized alien workers in Arizona. An injunction would retreat from a status quo in which those with the least are getting a fairer chance at a small share of the prosperity of our Nation.

### C. An Injunction Would Forfeit the Deterrence Already Achieved

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2008 WL 486002 (D.Ariz.)
**2008 WL 486002 (D.Ariz.)**

Page 6

There is good reason to think that the Act will significantly stem the increase and reduce the absolute number of unauthorized alien workers in Arizona. It reduces employers' incentive to discriminate against foreign-appearing applicants, as E-Verify use assures that they are safe in retaining or terminating any new hire. Most frauds are easily caught. Unlike IRCA and the I-9 system alone, the Act apparently has a real deterrent effect. Unauthorized alien workers are more likely to cease their perjured claims of authorization if they think their efforts will fail. Employers may now accord the verification process more of the seriousness that Congress originally intended, and even identity theft may decrease as E-Verify includes photo identification.

Though no enforcement has begun yet, anecdotal accounts in the press indicate that pre-enforcement deterrence is occurring; unauthorized aliens are leaving and some wage levels may be increasing. Of course, anecdotes are not proof of systemic success-only the future can show that. But an injunction pending appeal would stop the future before it happens. It would forfeit the momentum of deterrence that the Act already has achieved.

**D. The Public Interest Favors Learning the Effect of the Arizona Experiment Before Congress Considers Renewal of E-Verify in November 2008**

Another factor in the public interest further disfavors an injunction in this case. Though the Act could survive without E-Verify, that mandatory verification system greatly aids the Act's economy and effectiveness, and provides easy avoidance of liability. The Act directly serves the interests of Congress, which is to experiment with and refine the employment eligibility verification system. Unless extended, E-Verify's authorization will expire in November, 2008. Basic Pilot Program Extension and Expansion Act of 2003 ("Expansion Act"), Pub.L. No. 108-156, 117 Stat.1944 (note following 8 U.S.C. § 1324a (Supp.IV.2000)). Before then, Congress would benefit from the experience of Ari-

zona employers under the Act.

**V. CONCLUSION**

Plaintiffs have shown neither a likelihood of success on the merits nor a balance of hardships in their favor. An injunction pending appeal is not warranted.

IT IS THEREFORE ORDERED that the motions for injunction pending appeal (Doc. 181, 182, and 183) are denied.

D.Ariz.,2008.
Arizona Contractors Ass'n, Inc. v. Candelaria
Slip Copy, 2008 WL 486002 (D.Ariz.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy

Slip Copy, 2007 WL 2684736 (Bkrtcy.E.D.Wash.)

**2007 WL 2684736 (Bkrtcy.E.D.Wash.)**

Page 1

**C**

In re Johnston

Bkrtcy.E.D.Wash.,2007.

Only the Westlaw citation is currently available.

United States Bankruptcy Court,E.D. Washington.

In re Daryl Jane **JOHNSTON**, Debtor.

Rose Townsend Trust, Plaintiff,

v.

Daryl Jane **Johnston**, a single person, et al., Defendants.

Nos. 05-09692-W13, 06-80040-PCW13.

Sept. 7, 2007.

Scott R. Smith, Stocker, Smith, Luciani & Staub, PLLC, Spokane, WA, for Plaintiff.

J. Gregory Lockwood, Law Office of J. Gregory Lockwood PLLC, Daniel J. Gibbons, Paine Hamblen LLP, Spokane, WA, for Defendants.

## MEMORANDUM DECISION RE: MOTION FOR STAY PENDING APPEAL

PATRICIA C. WILLIAMS, Bankruptcy Judge.

*1 THIS MATTER came before the Court on August 13, 2007 on Defendant New Century Mortgage Corporation's (hereinafter "New Century") motion seeking a stay pending appeal. The issue is whether this Court should grant the motion and, if so, should the posting of a supersedeas bond be waived. This Court concludes that New Century's request for a stay pending appeal should be denied because New Century does not satisfy the four-part test required for a discretionary stay pending appeal. The facts are set forth below.

## I. FACTS

Defendants Johnston and Arney each hold a one-half interest in the residence which is the subject property of this matter. The Defendants own the home as joint tenants. In 1994, both Defendants signed a Deed of Trust on the property in favor of North American Mortgage for the principal amount of $265,500.

On January 22, 1998, Plaintiff Rose Townsend Trust (hereinafter "Townsend") obtained two Spokane County State Court judgment liens against Defendant Johnston, totaling $76,847.31. The first judgment was in the amount of $76,147.37, with interest accruing at twelve (12) percent per annum from January 22, 1998, and was recorded with the Spokane County Auditor. The second judgment was in the amount of $700.00, with interest accruing at twelve (12) percent per annum from January 22, 1998, but was not recorded.

On July 16, 1999, Defendant Johnston filed a Chapter 7 bankruptcy proceeding. A discharge was entered on October 14,1999, but two years later, Defendant Johnston's discharge was revoked due to fraud and concealment of property.

The Chapter 7 Trustee obtained a default judgment against Defendant Johnston on January 19, 2001. The default judgment amounted to $132,044.73. In that asset case, Townsend filed a Proof of Claim in the amount of $83,183.37. The amount was based upon its 1998 state court judgments. According to Townsend, the Proof of Claim was initially filed as unsecured because Townsend relied on the bankruptcy schedules, which listed the amount owed to North American Mortgage Company as $256,401.87 and the fair market value of the property at $284,400. Because Defendant Johnston was a joint tenant, the estate only had a one-half interest in the home. As a result, Townsend believed there was insufficient equity in the home to secure its judgment liens.

Defendant Arney also filed Chapter 7 bankruptcy and on January 19, 2001, the Chapter 7 Trustee obtained a default judgment against Defendant Arney in the amount of $80,150.00. The Chapter 7 Trustee obtained the default judgment for concealment of estate property. Neither default judgment obtained by the Trustee against Defendants Johnston and Ar-

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                    Page 2
Slip Copy, 2007 WL 2684736 (Bkrtcy.E.D.Wash.)
2007 WL 2684736 (Bkrtcy.E.D.Wash.)

ney was recorded with the Spokane County Audit- or.

On October 6, 2004, almost four years after entry of the judgments by the Chapter 7 Trustee against Defendants Arney and Johnston, the Defendants refinanced their shared home. For unknown reasons, Townsend's state court judgments and the Chapter 7 Trustee's bankruptcy judgments were not satisfied by the refinance. The refinance provided both debtors with a cash distribution totaling $81,270.89.

*2 On April 6, 2005, about six months later, Defendants Johnston and Arney again refinanced the home, this time with New Century. New Century loaned Defendants Johnston and Arney $382,500. In return, New Century acquired a Deed of Trust on the subject property. The debtors jointly received $16,808.73 from the second refinance, but the title report relied upon by New Century did not reveal the existence of Townsend's judgments nor those held by the Chapter 7 Trustee. As a result, none of the judgments were satisfied.

On July 21, 2005, only three and a half months after refinancing, the Chapter 7 Trustee assigned the bankruptcy default judgments against Defendants Arney and Johnston to Townsend. A chain of title report issued in November, 2005, revealed the bankruptcy judgments and New Century's Deed of Trust. In addition, the title report revealed that Defendant Arney had filed a second Chapter 7 bankruptcy petition on October 13, 2005, and Defendant Johnston filed for Chapter 13 bankruptcy on the same day. The schedules in both bankruptcy proceedings listed the New Century obligation at $382,5000 and the fair market value of the property at $425,000. Each Defendant claimed a one-half interest in the property. Neither Defendant, however, listed Townsend's two state court judgment liens in their respective schedules.

Townsend filed a secured Proof of Claim in Defendant Johnston's Chapter 13 proceeding in the amount of $206,973.79, but Johnston objected that the judgments held by Townsend did not constitute

liens against the home. In response, Townsend filed this adversary proceeding on February 3, 2006, to determine if it held valid judgment liens resulting from the above four judgments-two state court judgments and two assigned bankruptcy default judgments-and whether either of the Defendants were entitled to a homestead exemption in the property.

On September 26, 2006, Townsend obtained an order from this Court declaring that the four judgments held by Townsend were superior to and had priority over New Century's Deed of Trust. After hearing oral argument, this Court entered an order granting Townsend's Motion for Summary Judgment, determining that Townsend had a first priority lien in the subject matter property, which is superior to New Century's Deed of Trust, and that neither Defendant Johnston nor Arney could claim homestead rights in the real property.

On October 6, 2006, New Century filed a notice of appeal relating to the summary judgment order and the appeal was transmitted to the U.S. District Court for the Eastern District of Washington. On the same day, New Century moved for a stay pending appeal to stay all execution, foreclosure, or other enforcement of Townsend's four judgments. Townsend's reply requested that any stay authorized by this Court be accompanied by a supersedeas bond in the amount of $612,591.21. No hearing was requested on the motion to stay.

On April 2, 2007, six months after moving for a stay pending appeal, New Century filed for bankruptcy in the District of Delaware. On August 7, 2007, after the automatic stay had been lifted by the Delaware Bankruptcy Court, oral argument on the appeal was set for September 20, 2007. Nearly eleven (11) months after moving for a stay pending appeal, New Century requested a hearing regarding its motion for stay pending appeal and also asked that Townsend's request for a $612,591.21 supersedeas bond be denied.

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                    Page 3
Slip Copy, 2007 WL 2684736 (Bkrtcy.E.D.Wash.)
**2007 WL 2684736 (Bkrtcy.E.D.Wash.)**

## II. DISCUSSION

*\*3* The issue is whether this Court should grant Defendant New Century's request for a discretionary stay pending appeal and, if so, should the posting of a supersedeas bond be waived. New Century requested the stay pending appeal pursuant to F.R.B.P. 8005. The purpose of Rule 8005 is to maintain the status quo by protecting "the property rights and interests of the parties stayed (i.e., decrease in the value of the interests affected)."*In re Victory Const. Co., Inc.,* 9 B.R. 570, 573 (Bankr.C.D.Cal.1981). Here, New Century is seeking to prevent Townsend from foreclosing on the subject property prior to the completion of the appeal.

A bankruptcy court has discretion under F.R.B.P. 8005 whether to grant a stay pending appeal. *Scripps-Howard Radio, Inc. v. Federal Communications Commission,* 316 U.S. 4, 10 (1942); *In re Byrd,* 172 B.R. 970 (Bankr.W.D.Wash.1994). The Ninth Circuit recognizes the authority of federal courts to stay judgments and orders pending appeal. *See In re Wymer,* 5 B.R. 802, 804 (9th Cir.B.A.P.1980) (noting the various types of stays).

New Century may obtain a discretionary stay pending appeal without posting a supersedeas bond, so long as it meets the necessary requirements. The Ninth Circuit has adopted a four-part test for determining if a discretionary stay should be granted. The discretionary stay is appropriate if: (1) appellant is likely to succeed on the merits of the appeal; (2) appellant will suffer irreparable injury; (3) no substantial harm will come to appellee; and (4) the stay will not harm public interest. *In re Wymer, supra,* at p. 806 (citing *Schwartz v. Covington,* 341 F.2d 537 (9th Cir.1965) and *In re Byrd, supra* ). While the first three parts are in dispute, the public interest part is not a factor because the current matter only involves two private creditors.

**A. New Century is Unlikely to Succeed on the Merits of the Appeal.**

Under the first factor, New Century argues that it only needs to show a substantial case on the merits because serious legal questions are raised and the balance of the equities tips sharply in its favor. In support of its position, New Century relies upon Fifth Circuit cases that are not controlling in this District. *See Ruiz v. Estelle,* 650 F.2d 555 (5th Cir.1981) (applying the standard to the Federal Rules of Civil Procedure); *see also Arnold v. Garlock, Inc.,* 278 F.3d 426 (5th Cir.2001) (applying the standard to a request for a stay of an order for remand).

Although New Century suggests that *Lopez v. Heckler,* 713 F.2d 1432 (9th Cir.1983), *rev'd on other grounds,*469 U.S. 1082 (1984), applies a preliminary injunction standard to all cases evaluating stays pending appeal, *Lopez* is not a bankruptcy court case and does not rely upon F.R.B.P. 8005. *See Hilton v. Braunskill,* 481 U.S. 770 (1987) (applying the preliminary injunction standard to the Federal Rules of Civil Procedure).*Cf. Continental Securities Corp. v. Shenandoah Nursing Home Partnership,* 188 B.R. 205, 208 (W.D.Va.1995) (clearly stating that "the Fourth Circuit requires a party seeking a stay to meet the same criteria movants for a preliminary injunction must meet in seeking their relief."); *but see In re Zaleha,* 162 B.R. 309, 317-18 (Bankr.D.Idaho 1993) (adopting the preliminary injunction standard). Instead, *Lopez, supra,* and its supporting authority apply the standard to non-bankruptcy proceedings involving interlocutory appeals for preliminary injunctions. As a result, New Century must do more than merely present a substantial case on the merits, it must show that it is likely to succeed on the merits.

*\*4* New Century presented a number of arguments on summary judgment, including judicial estoppel, waiver, equitable subordination, and recording. This Court found each of these arguments unpersuasive. With regard to judicial estoppel, this Court found that Townsend's filing of an unsecured Proof of Claim in the 1999 Johnston Chapter 7 was not inconsistent with its later argument it was secured

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                      Page 4
Slip Copy, 2007 WL 2684736 (Bkrtcy.E.D.Wash.)
2007 WL 2684736 (Bkrtcy.E.D.Wash.)

under state law. In addition, that unsecured Proof of Claim was not inconsistent with Townsend's later claim of a first position perfected lien in this adversary proceeding. Also, the judicial estoppel argument was rejected because Townsend did not obtain an unfair benefit from the alleged inconsistency. New Century also argued that by waiving any right to participate in the distribution from the Chapter 7 liquidation, Townsend waived the right to now enforce its claim under the state court judgments. New Century, however, did not cite any controlling authority for the proposition that the waiver of a claim against a bankruptcy estate operates as a waiver of that claim against non-debtor third parties such as New Century.

With regard to New Century's equitable subordination argument, New Century did not reference, and the evidence did not reveal, any improper or inequitable conduct on behalf of Townsend or the Chapter 7 Trustee who obtained the judgments.

Finally, Townsend's state court judgment in the amount of $76,147 .31 was both entered by the state court and recorded in the Spokane County Auditor's office. New Century's reliance on a preliminary title report, which does not reveal the existence of this judgment, is no basis for concluding that Townsend's judgment lien is inferior to New Century's Deed of Trust.[FN1] In addition, RCW 4.56.190 provides that every judgment of a Superior Court creates a lien upon real property. Judgment liens commence "from the time of entry or filing."RCW 4.56.200 (2007). Recording with the Country Auditor is not necessary to perfect, effectuate, or attach the lien.

> FN1. This Court is unaware of whether New Century had title insurance and, if so, whether New Century has filed a claim against any insurer.

With regard to the two judgments entered by this Court, RCW 4.56.200(1) states federal district court judgments create judgment liens upon real estate of the judgment debtor, in the federal district, at the

time the judgment is filed. See also 28 U.S.C. § 151 and E.D. Wash. Local Rules 77.1 and 83.5 (referring to the location and status of this Court as a section of the Federal District Court for the Eastern District of Washington).

The conclusion of this Court was that the two 1998 state court judgments became enforceable judgment liens against the subject property upon entry by the state court, and that the two 2001 judgments entered by this Court became enforceable judgment liens against the subject property upon entry by this Court. No further recording was necessary.

In order to succeed on the merits of the appeal, New Century must overturn this Court's conclusions regarding the summary judgment motion. It is not likely that New Century will be able to do so.

**B. New Century Will Not Suffer Irreparable Harm.**

*5 Under the second factor, New Century argues that Townsend could complete foreclosure proceedings before the District Court decides the appeal, which would render the matter moot. Although an appeal becomes moot when the assets in a dispute are sold, the Ninth Circuit has not held that mootness constitutes an irreparable injury. In *In re Ewell*, 958 F.2d 276, 279 (9th Cir.1992), the Ninth Circuit did state that the sale of estate property does render an appeal moot because the Court would be unable to restore the status quo. Regardless, neither *Ewell, supra*, nor any subsequent Ninth Circuit case has held that mootness constitutes an irreparable injury. *Cf. In re Fullmer*, 323 B.R. 287, 304 (Bankr.D.Nev.2005) (holding that "the risk an appeal may become moot does not by itself constitute irreparable injury."). Consequently, New Century cannot simply rely on the potential mootness of the matter to satisfy the irreparable injury requirement.

Even if mootness constitutes an irreparable injury, New Century's argument is no longer valid. The motion for stay pending appeal was filed approxim-

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                         Page 5
Slip Copy, 2007 WL 2684736 (Bkrtcy.E.D.Wash.)
**2007 WL 2684736 (Bkrtcy.E.D.Wash.)**

ately eleven (11) months ago. The oral argument regarding the merits of the appeal is scheduled for September 20, 2007. The initial lack of action regarding that motion and the scheduling of oral argument on the appeal may have eliminated the possibility that Townsend could foreclose the judgment liens pursuant to RCW 6.21, *et. seq.,* prior to an appellate decision. Foreclosure could not be accomplished in less than thirty (30) days and, as a practical matter, would generally require about sixty (60) days. *See*RCW 6.21.030.

Further, Defendant Johnston's confirmed Chapter 13 plan states that Defendant Johnston will continue to make $1,300 monthly payments to New Century. New Century is receiving regular payments under its Deed of Trust whereas Townsend is not receiving any payments on the judgments. As a result, New Century will not suffer irreparable harm.

**C. Substantial Harm Will Come to Townsend.**

In addition to proving irreparable harm to itself, New Century must show that Townsend will not suffer a substantial injury from the stay. New Century argues that recent housing trends and future outlooks suggests that the subject property will continue to appreciate in value, thus protecting Townsend.

According to RCW 4.56.110 and 19.52.020, statutory interest on judgments accrue at an annual rate of twelve percent (12%). Evidence submitted by New Century demonstrates that home prices in the Spokane metropolitan statistical area increased 10.4 percent (10.4%) in the second quarter of 2007, when compared to the second quarter of 2006, and that the estimated yearly rate of appreciation for 2007 is approximately six percent (6%). This appreciation does not equal the interest accruing on the judgments. As Townsend receives no payments from the debtors and New Century does receive regular monthly payments from the debtor, there is harm to Townsend resulting from its inability to foreclose.

## III. CONCLUSION

*6 This Court concludes that New Century's request for a stay pending appeal is **DENIED** because New Century does not satisfy the four-part test required for a discretionary stay pending appeal. New Century is unlikely to succeed on the merits of the appeal and will not suffer irreparable harm. In addition, Townsend would be substantially harmed from the imposition of a stay. New Century's Motion for Stay Pending Appeal is **DENIED.**

Bkrtcy.E.D.Wash.,2007.
In re Johnston
Slip Copy, 2007 WL 2684736 (Bkrtcy.E.D.Wash.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

LEXSEE 2007 BANKR LEXIS 3049

**IN RE: GARY E. KRAUSE, Debtor. UNITED STATES OF AMERICA, Plaintiff, and LINDA S. PARKS, Trustee, Intervener, v. GARY KRAUSE and RICHARD KRAUSE, Defendants and DRAKE KRAUSE and RICK KRAUSE, Intervener.**

**Case No. 05-17429, Chapter 7, Adversary No. 05-5775**

**UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF KANSAS**

*2007 Bankr. LEXIS 3049*

**August 29, 2007, Decided**

**NOTICE:** NOT FOR PUBLICATION

**SUBSEQUENT HISTORY:** Appeal dismissed by *United States v. Krause (In re Krause), 2007 U.S. Dist. LEXIS 65986 (D. Kan., Sept. 5, 2007)*

**PRIOR HISTORY:** *United States v. Krause (In re Krause), 367 B.R. 740, 2007 Bankr. LEXIS 1937 (Bankr. D. Kan., 2007)*

**COUNSEL:** [*1] Gary E Krause, Debtor (05-17429), Pro se, Wichita, KS.

For Linda S. Parks, Trustee (05-17429): Gaye B Tibbets, Hite Fanning and Honeyman LLP, Wichita, KS; Linda S. Parks, Wichita, KS.

For Rick Krause, Drake E Krause, Intervenors (05-17429): J. Michael Morris, Wichita, KS.

For United States of America, Plaintiff: Hilarie E Snyder, Washington, DC; Jennifer K Brown, Thomas W Curteman, Jr, U.S. Dept. of Justice, Tax Division, Washington, DC.

Gary E Krause, Defendant (05-05775), Pro se, Wichita, KS.

Richard Krause, Defendant (05-05775), Pro se, Great Bend, KS.

For Drake E Krause, Intervenor-Defendant (05-05775): J. Michael Morris, Wichita, KS.

For Rick Krause, Intervenor-Defendant (05-05775): J.

Michael Morris, LEAD ATTORNEY, Wichita, KS.

For Linda S. Parks, 3rd Party Plaintiff (05-05775): Gaye B Tibbets, Scott M. Hill, Hite Fanning and Honeyman LLP, Wichita, KS; Linda S. Parks, LEAD ATTORNEY, Wichita, KS.

Gary E Krause, 3rd Pty Defendant (05-05775), Pro se, Wichita, KS.

Richard Krause, 3rd Pty Defendant (05-05775), Pro se, Great Bend, KS.

**JUDGES:** ROBERT E. NUGENT, UNITED STATES CHIEF BANKRUPTCY JUDGE.

**OPINION BY:** ROBERT E. NUGENT

**OPINION**

**ORDER DENYING INTERVENERS DRAKE AND RICK KRAUSE'S MOTION TO STAY SANCTIONS JUDGMENT PENDING [*2] APPEAL**

Interveners Drake and Rick Krause seek a stay of enforcement of the Sanctions Judgment [1] entered against their father, defendant-debtor Gary Krause in favor of the Government and the Trustee while they pursue an appeal of the same. [2] They seek a stay under *Fed. R. Bankr. P. 7062* which makes *Fed. R. Civ. P. 62* applicable in bankruptcy adversary proceedings. [3] The Government and the Trustee oppose the requested stay. [4]

    1    Dkt. 311 and 317. Dkt. 311 is the Memorandum Opinion on the Trustee's Motion

for Sanctions for Spoliation of Evidence and the Government's Motion for Contempt and Default Judgment. Dkt. 317 is the Partial Judgment on Decision emanating from the Memorandum Opinion. For ease of reference, the Court refers to these docket entries interchangeably as the "Sanctions Judgment."

2  Dkt. 380.

3  *Fed. R. Bankr. P. 8005* contemplates that the bankruptcy court will be the primary court to stay a matter pending appeal pursuant to *Bankruptcy Rule 7062. See In re Sunset Sales, Inc., 195 F.3d 568 (10th Cir. 1999).*

4  Dkt. 384 and 388.

### Introduction/Background

Readers of this Order are referred to this Court's previous Memorandum Opinion on the Trustee's Motion for Sanctions for Spoliation of [*3] Evidence and the Government's Motion for Contempt and Default Judgment, [5] the Court's Order Denying Gary Krause's Motion for a Stay of the Sanctions Pending Appellate Review, [6] and the Court's Order Denying Intervener Drake Krause's Motion for Reconsideration of the Sanctions Judgment. [7] These rulings contain the factual background giving rise to the Sanctions Judgment and the procedural history of this case. The Court will attempt to avoid repeating those matters here.

5  Dkt. 311.

6  Dkt. 373.

7  Dkt 377.

The Court is nearing final adjudication of the Government's and Trustee's claims against Gary in this adversary proceeding. Trial on the remaining claims in this case (including the validity of the Krause Children Trusts of which interveners are beneficiaries) is hard set for November 26 - December 7, 2007.

For purposes of the instant motion, interveners seek a stay of only one of the Court's discovery sanctions: defaulting Gary on the Government's and Trustee's claim that PHR, LLC is Gary's nominee, is property of the bankruptcy estate, and is subject to turnover. PHR, LLC is the putative owner of 7711 Oneida Court, Wichita, Kansas - the home where Gary and the interveners reside. 8 Interveners [*4] assert an equitable ownership interest in the Oneida property and contend that the default sanction on PHR, LLC adversely impacts them should

the Trustee or Government enforce turnover of the property.

> 8  The Court observes that Gary has recently filed a pleading in the main case styled "Notice of Provisional Claim of Homestead Exemption," asserting a provisional homestead exemption in the 7711 Oneida property. Case No. 05-17429, Dkt. 71.

### Interveners' Stay Motion

Interveners apparently proceed under *Rule 62(d)* and seek a waiver of the requirement that they give a supersedeas bond, citing *Dutton v. Johnson County Board of County Com'rs.* [9] *Dutton* does indeed enumerate factors for a court to consider in determining whether a stay on execution of a money judgment should be granted without posting a supersedeas bond. [10] The Court, however, believes that *subsection (d)* is inapplicable in this case because no money judgment was entered against Gary and no judgment at all was entered against interveners. *Dutton* notes that the purpose of a supersedeas bond is to protect a judgment creditor from losses that may result from staying execution of a *money judgment.* [11] The Court rejects analysis of interveners' [*5] stay motion under *Rule 62(d).*

> 9  *884 F. Supp. 431 (D. Kan. 1995).*
> 10  *Id. at 435.*
> 11  *Id.*

A complete reading of *Dutton* is enlightening for that portion of the opinion that interveners conveniently omit. *Dutton* involved an employee's claims under the Americans with Disability Act (ADA). The employee prevailed in a jury trial. The district court thereafter awarded back pay, fees and costs to the employee and ordered reinstatement of the employee. The district court analyzed the defendant's motion for stay of judgment pending appeal under both *Rule 62(d)* and *Rule 62(c).* It applied *subsection (d)* to the back pay award and *subsection (c)* to the order of reinstatement.

The *Dutton* court applied *Rule 62(c)* to the request for a stay of the reinstatement order:

> The suspension of equitable or injunctive relief ordered by a district court during the pendency of an appeal is authorized by *Federal Rule of Civil*

*Procedure 62(c)*. [12]

The District Court proceeded to recite the four factors frequently cited by courts, including the Tenth Circuit Court of Appeals, to obtain a stay under *Rule 62(c)*: (1) likelihood of success on the merits of the appeal; (2) irreparable injury to the movant if the stay is denied; (3) [*6] substantial harm to other parties if the stay is granted; and (4) the public interest favors a stay. [13]

> 12  *Id. at 433.*
> 13  *Id.* These were the same standards this Court applied in determining Gary's motion for a stay of the Sanctions Judgment pending his appeal. *See* Dkt. 373, p.5, citing *Lang v. Lang (In re Lang), 305 B.R. 905 (10th Cir. BAP 2004).*

This Court concludes that *Rule 62(c)* governs interveners' stay motion before the Court. *Rule 62(c)* states, in relevant part:

> When an appeal is taken from an interlocutory or final judgment granting . . . an injunction, the court in its discretion may suspend, modify, restore, or grant an injunction during the pendency of the appeal . . .

Here, the Sanctions Judgment, albeit by default, consists of a declaration that PHR, LLC is a nominee of Gary, is property of the estate, and is subject to turnover. In the Court's view, this declaratory judgment is in the nature of equitable or injunctive relief, notwithstanding the fact that it is not technically an "injunction" as referenced in *Rule 62(c)* [14] In addition, the Court notes that not all of the Government's and Trustee's claims in this adversary proceeding have been adjudicated, leading this Court [*7] to believe that the Sanctions Judgment for Gary's discovery abuses and spoliation of evidence, is not a final judgment. *Rule 62(c)* also applies to interlocutory relief. [15]

> 14  As in the instant case, the judgment sought to be stayed in *Dutton* was not an injunction.
> 15  *See Waste Connections of Kansas, Inc. v. City of BelAire, Kansas, 191 F. Supp. 2d 1253, 1254 (D. Kan. 2002)* (The district court has discretion to enter a stay pending resolution of an interlocutory appeal under *Rule 62(c).*).

**Analysis**

Like Gary's stay motion, interveners fails to mention or address the applicable standard for a stay except for the second factor (irreparable injury). This alone is a sufficient basis for denying interveners' stay motion. [16] Because of the procedural posture of this adversary, the Court will nonetheless assess interveners' stay motion

> 16  *Id.*

Likelihood of Success on the Merits

As the Court noted when it considered Gary's request for a stay of the Sanctions Judgment, the default judgment entered by the Court on some, but not all, of the claims against him, was entered as a sanction for Gary's willful spoliation of computer evidence, Gary's noncompliance with the Court's order to produce electronic evidence [*8] and to turnover his computers, Gary's violation of the preliminary injunction, and Gary's noncompliance with the order requiring him to disclose his connections to all assets.

Interveners do not argue that the Court erred in any respect in finding that the Trustee and Government proved Gary's spoliation of evidence and contempt of the Court's discovery orders and preliminary injunction. Interveners appeared through their attorney at the evidentiary sanctions hearing and chose not to actively participate in the hearing. Nor do interveners demonstrate in their stay motion that the sanctions imposed by the Court for those offenses constituted an abuse of discretion. Interveners have not shown even a remote possibility of success on the merits of the Sanctions Judgment. This factor weighs heavily against them and is sufficient alone to deny their stay motion. [17]

> 17  *See Lang v. Lang (In re Lang), 305 B.R. 905, 911 (10th Cir. BAP 2004)* (affirming bankruptcy court's denial of stay on the "success on the merits" factor, without addressing the remaining factors).

Irreparable Injury to Interveners if the Stay is Denied

Interveners contend that if the Trustee and Government are permitted to enforce [*9] the Sanctions Judgment with respect to PHR, LLC (the putative owner of the family home at 7711 Oneida Court, Wichita, Kansas), they will be evicted from their home. This Court previously noted in ruling on Gary's motion, that the impact on a debtor's family of personal disruption and

emotional distress caused by the IRS's seizure of the family home to satisfy debtor's tax liability is not irreparable injury. [18]

> 18  See Dkt. 373, at p. 7, citing In re Carlson, 224 F.3d 716 (7th Cir. 2000).

Much of what the Seventh Circuit Court of Appeals said in Carlson is applicable here. The fact pattern is not unlike that in the case at bar. The debtor in Carlson was a lawyer who failed to pay income taxes of $ 150,000 for the years 1990, 1991 and 1992. During the period that the debtor was contesting his tax liability, he sought bankruptcy protection under chapter 11. The bankruptcy court eventually dismissed the debtor's case because he could not submit a confirmable plan. The debtor sought a stay of collection proceedings by the IRS (to enforce its tax lien) pending his appeal to the district court. Both the bankruptcy court and the district court denied his stay request.

> Carlson [debtor] maintains [*10] that because stay was denied, the IRS is free to seize and liquidate his home to satisfy its tax claim. . . . if the IRS were to seize assets for payment of taxes, penalties, or interest, and a court later ruled that the taxpayer was not liable for some or all of the payment, the damage could be undone by a simple order requiring repayment with appropriate interest. Carlson urges us here to recognize an exception to that principle, because of the heightened interest he has in his home. . . . He concludes that, to the extent this case is about the IRS's power to seize his home for satisfaction of his tax liabilities, it's now or never for him.

> * * *

> The real problem Carlson faces is that he offers absolutely no authority for the proposition that homes are somehow exempt from tax liens. This is not surprising, because it is not uncommon for the IRS to turn to precisely that asset for payment, [citations omitted.] The Carlsons are typical in that their home represents one of their largest assets. We are not unaware of the disruption this imposes on

> individuals, but this is a problem Carlson brought upon himself. We therefore conclude that the substantial personal grief that the family would [*11] experience if the IRS follows through pending this appeal and seizes the house is nonetheless not the kind of irreparable injury . . . require[d]. [19]

> 19  224 F.3d at 718-19.

So too, here, the interveners' potential loss of the Oneida property to the Trustee or the Government through enforcement of the Sanctions Judgment does not constitute irreparable injury. If the appellate court reverses this Court's Sanctions Judgment, the Trustee and Government will be required to return the property (if still in their possession) or the proceeds from its sale back to PHR, LLC.

Every day, this Court is faced with the seemingly harsh impact of court orders on innocent family members of debtors--debtors, who like Gary, voluntarily sought bankruptcy protection. Stay relief is routinely granted to mortgage creditors during a bankruptcy so that the creditors can foreclose their mortgages and satisfy their claims. Debtors in bankruptcy are commonly forced to surrender their home to creditors to obtain a "fresh start." Pre-petition transfers by debtors to family members are sometimes avoided as preferences or fraudulent transfers. Such actions undoubtedly adversely impact the family of the debtor and put [*12] innocent children out of their home, but that fact does not warrant this Court's ignoring the law. Intervener Drake is attending college in Lawrence, Kansas and has already moved out of the Oneida property. His brother Rick is in his last year of high school and likely soon to be out on his own too. In the meantime, nothing is presented by interveners to suggest that their father Gary is incapable of providing other suitable housing for himself and his sons, given his last reported monthly income of $ 8,000. In the Court's experience, very few chapter 7 debtors before this Court earn this amount of monthly income or enjoy the standard of living that Gary and interveners enjoy, even while in bankruptcy.

Interveners also assert an equitable ownership in the Oneida property. They do not clearly delineate the basis for that ownership but the Court assumes it arises by

2007 Bankr. LEXIS 3049, *12

virtue of their beneficial interest in the Krause Children Trusts, which in turn purport to own PHR, LLC. The elimination of the intervenes' equitable ownership of the Oneida property as a result of their fathers misdeeds does give the Court pause, particular if, as it turns out, the Krause Children Trusts and PHR, LLC are [*13] legitimate trusts and entities and duly hold legal title to the Oneida property. Given what the Court has heard to date regarding the creation of PHR, LLC and the transactions regarding the Oneida property, it is highly skeptical of a determination favorable to interveners and Gary. Those very transactions are what led this Court to grant a preliminary injunction and freeze the assets of PHR, LLC nearly two years ago.

Interveners have not demonstrated that they will suffer an irreparable injury if a stay pending appeal is denied.

Substantial Harm to the Government and Trustee if the Stay is Granted

As this Court observed in denying Gary's stay motion, some of the harm visited upon the Government and the Trustee if a stay of the Sanctions Judgment were granted, is a further delay in marshaling assets of the estate and collecting Gary's $ 3 million tax liability. Like Gary, interveners offer no security to the Trustee or Government to protect their interest in the Sanctions Judgment during the pendency of the appeal. To the contrary, interveners assert that no supersedeas bond should be required. Interveners (and Gary) propose to live in the Oneida property (property which Gary has steadfastly [*14] maintained he does not own) for free while they proceed with their appeal.

> 20    For example, interveners have not come forward with proof of insurance on the Oneida property nor offered to name the Trustee as the loss payee on the policy of insurance. The Court is mindful that in a previous hearing in this matter, the 2005 tax appraisal of the Oneida property was $ 392,000. See Dkt. 22, Ex. A.

As noted in Carlson:

> The district court has the discretion to waive this [bond] requirement, but waiver is appropriate only if the appellant has a clearly demonstrated ability to satisfy the judgment in the event the appeal is

unsuccessful and there is no other concern that the appellee's rights will be compromised by a failure adequately to secure the judgment, [citations omitted.] This case presents the polar opposite of a situation in which waiver is appropriate. There is every reason to lack confidence that Carlson will pay up eventually; to the contrary, just two days after a prior IRS collection effort, Carlson signaled his intent to evade his obligations by transferring a piece of real estate to his son at no charge. Carlson, 126 F.3d at 919. Nor has Carlson subsequently demonstrated anything [*15] but obstinance in this matter since our last opinion. 21

The same is true in the instant case. While the Oneida property is a substantial asset, it will hardly satisfy Gary's tax liability if and when liquidated. Even if the Trustee and Government prevail on their claims, the assets in the various trusts and entities (assets that were frozen by the preliminary injunction) will fall far short of satisfying Gary's $ 3 million tax debt. The Government has spent the last two years in this Court alone trying to ascertain the extent of Gary's assets. Gary has resisted at every turn. As the Court found in the Sanctions Judgment, Gary has already shown his propensity to defy this Court's orders by destroying computer evidence and violating the preliminary injunction. 22 And as the Government established at the hearing on the preliminary injunction, Gary caused PHR, LLC to be created July 29, 2005 and transferred the Oneida property to it on August 5, 2005 within thirty (30) days of being served with the IRS collection summons. 23 In short, Gary, and now the interveners, have taken every step to delay the gathering of assets of the estate and paying Gary's creditors. This Court has grave concerns [*16] that the Trustee's and Government's rights may be further compromised by the lack of security and the continued delay.

> 21    224 F.3d at 719.
> 22    See Dkt. 311 at pp. 31-32.
> 23    See Dkt. 80 at pp. 4-5, 7, 10-11.

And more importantly, interveners do not and cannot restore the computer evidence that Gary destroyed when he intentionally wiped the hard drives before their turnover to the Trustee. Interveners cannot alleviate the

prejudice inflicted upon the Trustee and the Government by the spoliation of evidence -- evidence that may have supported their nominee theory and other claims.

In the Court's view, the only way to lessen the harm to the Trustee and Government is to proceed with dispatch to a trial of the remaining claims in this adversary proceeding. The Court intends to do so on November 26, 2007.

Public Interest

Interveners have identified no public interest that would be advanced by granting a stay of enforcement of the Sanction Judgment on the Oneida property. The Court does not believe that interveners' potential loss of the Oneida property as a result of their father's misconduct offends the public interest. Nothing precludes interveners and their father from establishing a new place of [*17] residence. And as noted above, interveners are or near the age of majority and emancipation. Further, for the reasons stated in the Court's order denying Gary's stay motion, this factor weighs heavily in favor of the Government and the Trustee. [24]

24  *See* Dkt. 373 at p. 9.

Summary

Interveners fail to address or satisfy the four factors for obtaining a *Rule 62(c)* stay pending appeal. Interveners' motion for a stay pending appeal of the Sanctions Judgment is therefore DENIED. The temporary stay entered by this Court on August 23, 2007 is hereby lifted [25] and the Trustee and Government shall be permitted to enforce the Sanctions Judgment, including the Trustee's right to proceed with enforcement of turnover of property. To the extent assets of the various entities and trusts named in the Sanctions Judgment were frozen by this Court's preliminary injunction entered December 5, 2005, the preliminary injunction is modified to permit their turnover to the Trustee.

25  Dkt. 393.

IT IS THEREFORE ORDERED THAT Interveners Drake and Rick Krause's Motion to Stay Enforcement of Sanctions Judgment Pending Appeal is DENIED.

LEXSEE 1994 U.S. DIST. LEXIS 2559

In re VIRGINIA PON, Debtor. SILICON VALLEY BANK, Appellant, v. VIR-
GINIA PON, Appellee.

No. C-93-2745 MHP

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
CALIFORNIA

1994 U.S. Dist. LEXIS 2559

February 25, 1994, Decided
February 25, 1994, Filed; March 1, 1994, Entered

PRIOR HISTORY:     [*1] Bankruptcy Case No. 93-3-
0199 TC Chapter 11

JUDGES: PATEL

OPINION BY: MARILYN HALL PATEL

OPINION

MEMORANDUM AND ORDER

Appellee Virginia Pon ("Pon"), debtor in the under-
lying Chapter 11 bankruptcy, moved the bankruptcy
court for permission to use certain settlement funds ("the
funds") to pay administrative expenses. Appellant Sili-
con Valley Bank ("SVB"), one of Pon's creditors, op-
posed this motion and claimed a security interest in the
funds. The bankruptcy court granted Pon's motion for
summary judgment, holding that SVB had no security
interest and denied SVB's motion to prohibit Pon's use of
the funds. Now before this court is SVB's motion to stay
the bankruptcy court's orders pending appeal and to en-
join Pon from using the funds. [1]

    1  SVB originally moved for an emergency stay
    on July 21, 1993. However, SVB itself sought to
    continue the matter and the motion was submitted
    on December 6, 1993. The matter may well be
    moot at this juncture but, since the parties have
    not withdrawn the motion, the court hereby dis-
    poses of it.

Having considered [*2] the parties' submissions,
and for the reasons set forth below, the court enters the
following memorandum and order denying appellant's
motions.

BACKGROUND

In August 1990, Pon and SVB executed a promis-
sory note in which SVB agreed to loan Pon up to $ 14.65
million for the purpose of purchasing and developing
certain real property on Eddy Street in San Francisco
("the property"). The note was secured by a deed of trust
to the property and a security interest in certain personal
property. On January 14, 1993, Pon filed a Chapter 11
bankruptcy petition. At that time, SVB asserted a claim
of $ 9,078,257.98 in principal and interest exceeding $
300,000.

While the bankruptcy case proceeded, Pon negoti-
ated settlement of a multimillion dollar dispute with Ja-
pan Building Project Ltd/JBP San Francisco ("JBP")
regarding JBP's obligation to purchase part of the prop-
erty. Rather than complete the purchase, JBP agreed to
pay Pon $ 4,750,000 in return for which Pon agreed not
to enforce JBP's obligation under the purchase agree-
ment. These $ 4.75 million are the funds now at issue.

On May 13, 1993, SVB amended its proof of claim
in the Chapter 11 proceeding to assert a security interest
in the [*3] settlement proceeds. SVB moved the bank-
ruptcy court to prohibit Pon's use of the funds, claiming
that SVB has a security interest in all payments Pon re-
ceives as well as in "general intangibles," which include
the settlement funds. Pon responded by moving for
summary judgment that SVB has no security interest in
the funds.

At a June 25, 1993 hearing, the bankruptcy court
held that SVB has no such security interest. In so hold-
ing, the judge found that SVB's security interest in gen-
eral intangibles relating to the use and development of
the property is not so broad as to include Pon's purchase
agreement with JBP and the resulting settlement. Finally,
the court determined that the value of the real property

securing SVB's claim, combined with the roughly four million dollars remaining in the settlement fund after Pon's expenses are paid, exceeds the total amount of SVB's claim.

Accordingly, the bankruptcy judge granted Pon permission to use up to $ 825,000 of the funds for administrative expenses. However, he conditioned any further use upon additional bankruptcy court approval after notice to creditors and a hearing. The judge granted Pon's motion for summary judgment and denied SVB's [*4] motion to prohibit use of the funds. His orders were entered on July 1, and SVB timely filed its notice of appeal to both orders on July 12, 1993. [2] On July 14, 1993 SVB moved the bankruptcy court for a stay pending the appeal. That motion was denied.

> 2    The bankruptcy court also issued an order approving Pon's settlement with JBP. Initially, SVB appealed that order as well. However, under the terms of the settlement, JBP was not required to pay Pon the $ 4.75 million so long as an appeal was pending. Thus, SVB's appeal directly prevented Pon from receiving any of the funds. Because this could have forced Pon into a Chapter 7 bankruptcy (which would have permitted SVB to foreclose), the bankruptcy court questioned SVB's motives and cautioned that its appeal of the order might be an abuse of process. SVB immediately moved to dismiss that appeal. Appellee's Opposition Motion, Exhibit C, Transcript of Proceedings, August 6, 1993 ("Transcript") at pp. 109-10.

SVB now applies to this court for an emergency stay of the [*5] bankruptcy court's orders pending appeal and to enjoin Pon from using any of the settlement proceeds.

## DISCUSSION

The standard of review for a bankruptcy court's decision to grant or deny a stay pending appeal is abuse of discretion. *In re Arnold*, 806 F.2d 937, 938 (9th Cir. 1986); *In re Wymer*, 5 Bankr. 802, 807 (Bankr. 9th Cir. 1980). [3] The court reviews the bankruptcy court's findings of fact under the clearly erroneous standard and its conclusions of law de novo. *In re Kimura*, 969 F.2d 806, 810 (9th Cir. 1992).

> 3    The *Wymer* court observed that "the trial court's discretion is so great that it is sometimes said that the appellate court should not grant a stay of enforcement pending appeal after it has been denied by the trial court." *In re Wymer*, 5 Bankr. at 807 (citing *Sommer v. Rotary Lift Co.*, 58 F.2d 765 (9th Cir. 1932)).

Federal Rule of Bankruptcy [*6] Procedure 8005 provides that a bankruptcy court may issue any order pending appeal of a bankruptcy matter which protects the rights of all parties in interest. A stay pending appeal of a bankruptcy matter may be issued only when the appellant establishes that (1) appellant will suffer irreparable harm unless the stay is granted, (2) appellant has a likelihood of success on the merits of the appeal, (3) other parties will suffer no substantial harm if the stay is granted, and (4) the public interest will not be harmed if the stay is granted. *In re Hamilton*, 95 Bankr. 564, 565 (N.D. Ill. 1989). [4] Moreover, these four factors are conjunctive, and the appellant will not win a stay pending appeal unless each factor is established by a preponderance of the evidence. *In re Dial Industries, Inc.*, 137 Bankr. 247, 250-251 (Bankr. N.D. Ohio 1992) (denying stay because appellant failed to prove one factor).

> 4    These factors are identical to those required for a stay or injunction pending appeal under Federal Rule of Appellate Procedure 8(a). *In re Federal Grand Jury Proceedings*, 975 F.2d 1488, 1492 (11th Cir. 1992).

[*7]    At the outset, the bankruptcy court must determine whether the appellant will suffer irreparable injury unless a stay is granted. The appellant must demonstrate that such injury is likely before the other requirements will be considered. To meet this burden, the appellant must demonstrate that the injury is imminent -- not remote -- or speculative. *In re City of Bridgeport*, 132 Bankr. 81, 83 (Bankr. D. Conn 1991) (denying stay due to appellant's failure to prove irreparable harm).

This same principle applies to non-bankruptcy stays and injunctions as well. The Supreme Court noted that "the basis for injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Sampson v. Murray*, 415 U.S. 61, 88, 39 L. Ed. 2d 166, 94 S. Ct. 937 (1974). To show irreparable harm, the appellant must prove that the injury is "actual and not theoretical . . . . 'Relief will not be granted against something merely feared as liable to occur at some indefinite time.'" *Wisconsin Gas Co. v. F.E.R.C.*, 244 U.S. App. D.C. 349, 758 F.2d 669, 674 (D.C. Cir. 1985) [*8] (holding that plaintiff was not entitled to stay of F.E.R.C. orders based on speculative allegations of possible economic injury) (quoting *Connecticut v. Massachusetts*, 282 U.S. 660, 674, 75 L. Ed. 602, 51 S. Ct. 286 (1931)).

SVB's first task, then, is to prove by a preponderance of the evidence that it will suffer imminent, irreparable harm absent a stay pending appeal. [5] Because the court finds that SVB did not and cannot meet its burden

1994 U.S. Dist. LEXIS 2559, *

on irreparable injury, it is unnecessary to address the remaining factors under *Hamilton*.

> 5    Although this court does not have before it the actual order which apparently is contained in the transcript of the July 14, 1993 proceedings, the court has transcripts and orders of the bankruptcy court relating to the grounds proffered in favor of a stay and has before it the facts considered by the bankruptcy court. The record amply supports the bankruptcy court's denial for the reasons set forth below.

During the bankruptcy [*9] court proceedings, the judge explicitly found that SVB's claims are fully covered by the value of the property plus the settlement fund's remaining four million dollars. SVB now argues, as it did below without success, that the property "may be declining in value" to such an extent that SVB's interests are not adequately secured. According to SVB, this potential depreciation requires that the entire settlement fund, in which SVB continues to claim a security interest on appeal, be preserved intact. SVB, however, has presented very little evidence in support of this contention. [6]

> 6    The only evidence before this court regarding the property's potential depreciation is the declaration of an SVB vice-president expressing his personal belief that the property has decreased -- and will continue to decrease -- in value. Decl. of Blake Baldwin in Supp. of Appellant's Mot. to Stay, Ex. E at 4. In that declaration, reference is made to an April 1993 appraisal performed by Smith Denton Associates which purportedly further supports SVB's contention that, due to current market conditions and construction defects on the property, the value of SVB's real property collateral may decline. The court finds this evidence to be purely speculative.

[*10]    Even if SVB's concern about depreciation turns out to be valid, the bankruptcy court's analysis reveals that SVB will nonetheless be protected. The bankruptcy judge specifically determined that SVB is legally

entitled to adequate protection from any decrease in its collateral, whether its claim is fully secured or not. Appellee's Opposition Motion, Exhibit C, Transcript of Proceedings ("Transcript") at 110-11. The judge then pointed out that the remaining four million dollars in the settlement fund are unencumbered funds, and, under 11 U.S.C. § 507(b), these funds must first be used to pay any claim arising from lack of adequate protection. Transcript at 111. Thus, SVB has a superpriority claim under section 507(b), and if SVB's fears prove true and the property does decline in value, the four million dollars in unencumbered funds will be more than adequate to make up the difference.

At this juncture, there is no evidence of any imminent injury to SVB. SVB's contention that the property will depreciate is merely speculative, and the bankruptcy judge has aptly explained that SVB's claim would be protected regardless. Accordingly, the court finds [*11] that SVB has failed to show that it will be imminently and irreparably harmed absent a stay.

Moreover, to the extent that SVB's request for a stay before the bankruptcy judge was also a request for an injunction, the court applies the same reasoning and again affirms the bankruptcy court. That court's requirement that SVB be given notice and an opportunity to be heard before Pon is permitted access to any additional settlement funds adequately protects SVB. There is no need to enjoin Pon from using the funds in strict compliance with the bankruptcy court's order.

*CONCLUSION*

For the foregoing reasons, appellant's motion to stay the bankruptcy court's order pending appeal and to enjoin appellee's use of the settlement funds is hereby DENIED.

IT IS SO ORDERED.

Dated: FEB 25, 1994

MARILYN HALL PATEL

United States District Judge

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 1310447 (N.D.Cal.)
**2006 WL 1310447 (N.D.Cal.)**

Page 1

**H**
In re Yeganeh
N.D.Cal.,2006.
Only the Westlaw citation is currently available.
United States District Court,N.D. California.
In re Ramin YEGANEH, Debtor.
Ramin **Yeganeh,** Appellant,
v.
Charles E. **Sims,** Trustee in Bankruptcy, Appellee.
**No. C 06-2788 CW.**

May 12, 2006.

William E. Gilg, Attorney at Law, San Bruno, CA, for Appellant.
Charles Patrick Maher, Luce Forward Hamilton & Scripps Llp, Julie Glosson, Thomas E. Carlson, United States Bankruptcy Court in San Francisco, San Francisco, CA, for Appellees.

ORDER DENYING APPELLANT'S EMER-
GENCY MOTION FOR STAY OF ORDER AU-
THORIZING COMPROMISE

CLAUDIA WILKEN, District Judge.
*1 Appellant Ramin Yeganeh has filed an emergency motion for a stay of the bankruptcy court's final order authorizing a compromise. Trustee Charles E. Sims and Creditors Hari and Krishna Chand *et al.*[FN1] oppose the motion for a stay. The motion was taken under submission on the papers. Having considered the papers filed by the parties, the Court denies Appellant's emergency motion for a stay pending his appeal of the bankruptcy court's order.

> FN1. In addition to the Chands, those referred to collectively as Creditors are Shalen Lachen; Katherine and Webster Loudd; George Porter; Willie Roberson; Sione and Senolita Tuipulotu; Cheryl Dockery; Roy C. and Rose Lyllian F. Piedot; Lucy Mae Pickens; Maliaeme and Latanoa Lauese; Adolphurs and Nadine Turner; Gloria Penney; Joe L. Jackson and Joannah Jackson; Yolanda Jackson; Phillip Alarcon; Gwendolyn Penney; Samuel and Joan Trail; Barbara A. Wright and Kenneth Hearne, Sr.; Pamela Gene Helvie; Second Baptist Church of Fowler; Doroteo Magana; Yolanda Segura and Rose Rivera; Henry Stevens; Lula Jackson-Christian; William Lee Beasley II; Cleo Carey; Leonard, Cecil and Yvette Williams; and Romeo Mabutas and Fely Mabutas.

BACKGROUND

The genesis of this dispute is a lawsuit filed on October 4, 1999 against Appellant in San Mateo County Superior Court, *Ingram v. Yeganeh,* No. 410586.Plaintiff Edith Ingram sued on her own behalf, and plaintiff Nozipo Wobogo sued on behalf of the general public, pursuant to the former "private attorney general" clause of California's Unfair Competition Law (UCL), Cal. Bus. & Prof.Code § 17200*et seq.* The plaintiffs accused Appellant of unlawful loan brokerage practices. Ms. Ingram settled her claims against him on April 25, 2001.

On June 3, 2004, after a series of hearings on the Creditors' individual claims, Temporary Judge John S. Blackman issued a judgment against Appellant and ordered restitution to the Creditors in the amount of $270,000. The parties stipulated that no post-judgment interest would accrue on the June 3, 2004 judgment "until after the court has heard and rule upon plaintiffs' motion for award of attorney's fees and costs, any sanctions motion(s) plaintiffs may bring along with the fee motion, and any motion for permanent injunction that plaintiffs may bring ..." Yeganeh Reply Decl., Ex. F, June 16, 2004 Order on Stipulation Re Accrual of Post-Judgment Interest. The stipulation further provided that "[o]nce the above-referenced rulings have been made, the June 3, 2004 judgment will be amended to include any further amounts adjudicated to be

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 1310447 (N.D.Cal.)
**2006 WL 1310447 (N.D.Cal.)**

owed by any party hereto."*Id.*

Ms. Wobogo moved pursuant to California Civil Procedure Code § 1021.5 for an award of attorneys' fees and costs incurred by her counsel, DLA Piper Rudnick Gray Cary U.S. LLP (Gray Cary). On September 9, 2004, Judge Blackman awarded approximately $3.5 million in attorneys fees (including $2.3 million in principal with a 1.5 multiplier) and $32,000 in costs against Appellant, as well as prejudgment interest of approximately $130,000, for a total judgment of $3.9 million. He found that the attorneys' work resulted in the enforcement of important rights affecting the public interest, explaining that

[t]he amounts of money restored to individuals through plaintiff attorneys' work may not seem like much to defendant, but these are highly significant sums of money to many of the claimants, many of whom live very modestly. Plaintiff attorneys' actions in prosecuting this suit have also prevented a large number of members of the public from falling victim to the same practices as the named claimants hereing, though the vigorous prosecution of this lawsuit as well as by way of obtaining injunctions.

**\*2** Creditors' Request for Judicial Notice (hereinafter RJN), Ex. B, September 9, 2004 Order Re Award of Attorney's Fees, Costs, Prejudgment Interest and Related Findings at 2. He found that private enforcement here was necessary, risky, and imposed a heavy financial burden on the lawyers who performed the services. He further found,
The factual and legal questions involved in this case were novel and difficult. The complexity of the case, together with defendant's evasive and obstreperous conduct as outlined in several of the previous orders issued in this case made this case more time-consuming for plaintiffs' attorneys than it otherwise might have been.... [D]efendant has presented no compelling, specific evidence that shows that plaintiffs overworked this case or did not legitimately spend the amount of hours they are claiming they spent. The Court finds that the time expended by plaintiffs' counsel in terms of manning their

case was reasonable under the difficult circumstances of this case.... The Court has also taken into account the fact that plaintiffs' attorneys and staff spent many hours for which they are not seeking reimbursement, as stated in plaintiffs' moving papers.

*Id.* at 2-3.

Appellant timely appealed the State court judgments against him. On November 2, 2004, the California electorate passed Proposition 64, which amended the UCL to eliminate the ability of private individuals to bring actions on behalf of the general public. The UCL now requires a private plaintiff seeking to bring an action for injunctive or restitutionary relief to establish that he or she "has suffered injury in fact and has lost money or property."Cal. Bus. & Prof.Code § 17204.

Proposition 64 was silent on the question of whether these new standing requirements should be applied to pending cases. In order to ensure the validity of the restitutionary judgment against Appellant, the Creditors moved to intervene as plaintiffs. The State court granted the motion to intervene on January 7, 2005.

According to Appellant, the judgment against him, including attorneys' fees and costs, is more than his net worth, which is primarily comprised of real estate. Appellant filed a petition for Chapter 13 bankruptcy on January 7, 2005. On January 21, 2005, the bankruptcy court granted the Creditors' motion to convert the case to Chapter 7, and appointed Mr. Sims as Trustee. The bankruptcy court later denied Appellant's motion for reconsideration of the conversion.

After the case was converted to Chapter 7, the bankruptcy court solicited the filing of proofs of claim. The Creditors filed a total of $4.7 million in claims, and other creditors filed approximately $800,000 in claims. In addition to the restitutionary judgment, attorneys' fees and costs awarded by the State court in *Ingram*, and interest thereon, the Creditors filed claims for approximately $800,000

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                          Page 3
Not Reported in F.Supp.2d, 2006 WL 1310447 (N.D.Cal.)
2006 WL 1310447 (N.D.Cal.)

in post-judgment attorneys' fees and $39,000 in post-judgment costs incurred between August 1, 2004 and January 7, 2005. The Creditors also claimed a 1.5 multiplier on this prospective post-judgment fee award.

*3 Appellant asked the bankruptcy court for a stay in order to allow his appellate counsel to pursue his State civil appeals. His motion for a stay was denied on December 5, 2005.

On February 17, 2006, the Trustee filed a notice of intent to compromise with the Creditors. He negotiated with the Creditors for a $200,000 reduction in the principal attorneys' fees claim and a corresponding $100,000 in the multiplier. The Creditors also agreed that the reduced attorneys' fee award "will be treated as a general unsecured claim on par with all other general unsecured claims and the multiplier claim will receive a distribution only after those general unsecured claims are paid in full."RJN, Ex. 210, Notice of Trustee's Intent to Dismiss Appeals and Compromise with Creditors at 2. Appellant's estate would still owe the Creditors and their attorneys more than $4.1 million. In exchange, the Trustee agreed to dismiss Appellant's civil State court appeals.

The bankruptcy court held a hearing on the proposed compromise on March 31, 2006, as well as Appellant's motion to compel the Trustee to abandon the civil appeals so that he could prosecute them. At the hearing, the parties addressed extensively the legal issues at stake in the underlying State court action. The Creditors later submitted supplemental briefing on issues relating to their intervention in the underlying State lawsuit. The bankruptcy court issued stated its findings of fact and conclusions of law on the record at an April 5, 2006 telephonic hearing. Although Judge Carlson concluded that the California Supreme Court likely would find Proposition 64 to be retroactive, but not in a way that would require reversal of judgments where plaintiffs could have met its more stringent pleading requirements if they had known of them at the time of trial. He found that the plaintiffs in *In-*

*gram* likely could have met Proposition 64 requirements had they known of them from the outset. He also found that any retroactive effect of Proposition 64 would be unlikely to affect the attorneys' fees award in this case. He noted the very deferential standard of review applied to attorneys' fee awards.

In evaluating the fairness of the Trustee's proposed compromise, Judge Carlson described the costs of going forward with the litigation as a "very powerful factor in this case" that "strongly bolstered" the appropriateness of the settlement. Apr. 5, 2006 Hr'g Tr. 7:21-24. He found that proceeding with Appellant's State civil appeals would be "unusually costly," not cost effective, and would entail substantial delay, which in turn would further increase the costs to the estate as the post-judgment interest costs increased. Finally, he found that the views of the creditors favored approval of settlement.

On April 17, 2006, Appellant moved the bankruptcy court for a stay of enforcement of the compromise pending resolution of its authorization. This motion was denied on April 28, 2006; however, the court issued a temporary stay until May 12, 2006, in order to allow this Court to hear Appellant's emergency motion.

### REQUEST FOR JUDICIAL NOTICE

*4 The Creditors request that the Court take judicial notice of various documents from the State court proceedings as well as portions of the record before the bankruptcy court. Appellant opposes the request and moves to strike the documents on the grounds that he did not receive them by fax in accordance with the parties' stipulated briefing schedule, and thus has not had a chance to review them. However, the documents are all copies of previous court filings and are too voluminous to be faxed. Because these documents are all court filings whose authenticity may be easily checked against the public record, the Court grants the Creditors' request for judicial notice. To the extent that Appellant disputes the authenticity of any of the documents, he may

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 1310447 (N.D.Cal.)
**2006 WL 1310447 (N.D.Cal.)**

Page 4

file an administrative motion to correct the docket accordingly.

## LEGAL STANDARD

The parties agree that Appellant is requesting a discretionary stay, for which the applicable standard is

1. Appellant is likely to succeed on the merits of the appeal.

2. Appellant will suffer irreparable injury.

3. No substantial harm will come to appellee.

4. The stay will do no harm to the public interest.

*In re Wymar,* 5 B.R. 802, 806 (9th Cir.1980) (relying on *Schwartz v. Covington,* 341 F.2d 537 (9th Cir.1965)).[FN2] The party seeking a stay must satisfy each of these elements. *In re Irwin,* 338 B.R. 839, 843 (E.D.Cal.2006). If a debtor posts a bond that fully protects the appellees, then neither probable success nor irreparable injury need be shown. *In re Wymer,* 5. B.R. at 806.

> FN2. Appellant suggests that if he establishes that the balance of harms is in his favor, he need only establish substantial and serious questions regarding the merits of his appeal. *See In re Skinner,* 202 B.R. 867, 869 (W.D.Va.1996) (applying a preliminary injunction standard to review of bankruptcy court's denial of a stay). Appellant cites no in-circuit authority on this point. For the reasons described below, the question is moot because Appellant has demonstrated neither a likelihood of success nor substantial and serious questions regarding the merits of his appeal.

"A motion for a stay of the judgment, order, or decree of a bankruptcy judge ... must ordinarily be presented to the bankruptcy judge in the first instance."Fed. R. Bankr.P. 8005. "When a bankruptcy court has ruled on the issue of a stay of its order

pending appeal, the district court, sitting as an appellate court, reviews that decision for abuse of discretion."*In re Irwin,* 338 B.R. at 843 (quoting *Universal Life Church v. United States,* 191 B.R. 433, 444 (E.D.Cal.1995)).

## DISCUSSION

I. Likelihood of Success

A. Applicable Law

In order to determine the "fairness, reasonableness and adequacy of a proposed settlement agreement, the court must consider:

(a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*In re A & C Properties,* 784 F.2d 1377, 1381 (9th Cir.1986) (quoting in part *In re Flight Transp. Corp. Sec. Litig.,* 730 F.2d 1128, 1135 (8th Cir.1984)).

The bankruptcy court's order "approving the trustee's application to compromise the controversy is reviewed for an abuse of discretion."*Id.* at 1380."[A]s long as the bankruptcy court amply considered the various factors that determined the reasonableness of the compromise, the court's decision must be affirmed."*Id.* at 1381.

B. Analysis

*5 In his original motion, Appellant argues that the approval of the Trustee's compromise is unfair, but does not identify any particular factor that the bankruptcy court failed to consider or otherwise explain how its decision as an abuse of discretion. Gener-

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 1310447 (N.D.Cal.)
2006 WL 1310447 (N.D.Cal.)

ally, the Court finds that the bankruptcy court amply considered the various factors that determined the reasonableness of the compromise, and its decision can be affirmed on that ground.

In his reply, Appellant clarifies three issues decided by the bankruptcy court which he argues constitute an abuse of discretion: (1) the inclusion of Creditors' claim for post-judgment attorneys' fees and costs; (2) the inclusion of Creditors' restitution awards; and (3) application of the post-judgment interest rate of 10% to the prejudgment interest award and the $270,000 judgment. The Court examines these issues in more detail to see if there is any reason to believe that the bankruptcy court abused its discretion.

1. Post-Judgment Fees and Costs

Appellant maintains that the bankruptcy court abused its discretion by including the Creditors' claim for post-judgment attorneys' fees and costs in his evaluation of the compromise. He characterizes these claims as "imaginary and fraudulent" because they have not been approved by a court. However, Appellant does not make any specific factual showing that the Creditors' attorney inflated either the number of hours or their hourly rate in their claim for post-judgment fees. Appellant's characterization of the post-judgment attorneys' fee claim as uncollectible must rest on an assumption that he will either win his civil appeals or, if he lost, that the State court would refuse to award the Creditors post-judgment attorneys' fees. However, Appellant provides no support for either of these assumptions. Therefore, the Court finds that the bankruptcy court did not abuse its discretion by considering the Creditors' post-judgment fee claims to be collectible and enforceable against the estate.

1. Creditors' Restitutionary Judgment

Appellant appears to argue that the bankruptcy court abused its discretion by misjudging his probability of success in the underlying State civil litig-

ation.

The California Supreme Court has granted review on the question of whether Proposition 64. *See, e.g., Californians for Disability Rights v. Mervyn's, LLC, previously published at* 126 Cal.App. 4th 386 (2005), *rev. granted,* (Apr. 27, 2005). This Court held last year that the California Supreme Court would likely apply Proposition 64 retroactively to pending cases. *Chamberlan v. Ford Motor Co.,* 369 F.Supp.2d 1138, 1149-51 (N.D.Cal.2005). A related question which the California Supreme Court will decide is whether, and if so how, a plaintiff may cure pleading deficiencies caused by the passage of Proposition 64.

Appellant fails to establish that the bankruptcy court abused its discretion by deciding that the California court likely would apply Proposition 64 retroactively, but would not do so in a way that would endanger the judgment in the underlying action here. As the bankruptcy court noted, this case presents an unusual circumstance in that, prior to the passage of Proposition 64, the State court entered judgment granting particular restitutionary awards after hearing evidence relating to each named Creditor. Appellant has not cited any State case that could persuasively be applied to preclude claimants who have already shown injury from intervening as plaintiffs after the passage of Proposition 64. *Cf., e.g., Benson v. Kwikset Corp.,* previously published at 126 Cal.App. 4th 887 (2005), (holding that new plaintiffs could not be substituted after Proposition 64 because their new attempt to prove their own injury and loss would be overcome by the statute of limitations). Therefore, the Court finds that the bankruptcy court did not err in concluding that regardless of how the California Supreme Court resolves the questions relating to Proposition 64, the judgment against Appellant will likely stand.

*6 Appellant also asserts that even if the California Supreme Court did not hold Proposition 64 to be retroactive, "the attorney's fee award of $3.5 million would still be likely to fall."However, Appel-

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 1310447 (N.D.Cal.)
2006 WL 1310447 (N.D.Cal.)

lant shows no basis whatsoever for this assertion, or for his claim that the bankruptcy court abused its discretion by disagreeing with this assessment. Indeed, as noted by Appellant's appellate counsel, Dell'Ario Decl. ¶ 10, attorneys' fee awards are generally reviewed for abuse of discretion.

For these reasons, the Court finds that the bankruptcy court did not abuse its discretion in evaluating the strength of the Creditors' claims for restitution and attorneys' fees.

### 3. Post-Judgment Interest Rate

Finally, Appellant argues that the bankruptcy court abused its discretion in approving claims that included post-judgment interest. He points to the June 16, 2004 stipulation approved by the State court providing that post-judgment interest would not accrue until the court had ruled on plaintiffs' motion for award of attorneys' fees and costs and any motions brought for sanctions or a permanent injunction. Appellant argues that because plaintiffs brought a motion for sanctions that was not ruled on, any award of post-judgment interest is invalid.FN3

> FN3. This argument was raised for the first time in Appellant's reply memorandum, and neither the Trustee nor the Creditors have had an opportunity to respond. Indeed, this particular argument also was not raised in Appellant' brief before the bankruptcy court. See RJN, Ex. 222, Debtor's Objection to Trustee's Notice of Intent to Dismiss Appeals and Compromise with Creditors at 10-17.

Appellant has not shown that the bankruptcy court abused its discretion in approving a compromise that included post-judgment interest. The parties' stipulation sought only to toll briefly the accrual of post-judgment interest. Most, if not all, of the motions referred to in the stipulation were ruled on, making an award of post-judgment interest timely

and appropriate. Furthermore, Appellant provided no documentation for his assertion that a motion for sanctions is still pending; such a motion may well have been mooted by the order awarding attorneys' fees.

### 4. Other *A & C Properties* Factors

Appellant further undermines any claim that the bankruptcy court abused its discretion by failing to analyze the other *A & C Properties* factors which the bankruptcy court weighed heavily in making its decision. Appellant intends to pursue complex litigation with little likelihood of success, which will necessarily cause further expense and delay. Nor does Appellant acknowledge the paramount interest of his creditors and a proper deference to their views in his critique of the bankruptcy court's decisions.

In sum, Appellant has established neither a likelihood of success nor a serious and substantial question on the merits of his appeal. On this ground alone, the Court finds that he is not entitled to a discretionary stay.

### II. Other Factors

The Court agrees that Appellant has shown irreparable harm if a stay is not granted; the approval of the compromise will finally end his State civil appeals. However, Appellant overstates the harm at stake by identifying the potential loss of his residence as "irreparable injury." As the Trustee notes, Appellant may remain in his home pending appeal; therefore, the potential loss of his home was not relevant to the bankruptcy court' decision to deny a stay. *Cf. In re Skinner,* 202 B.R. at 869 (finding that debtor who would lose his residence had clearly established irreparable harm). Appellant maintains that the sale of his other real property holdings would cause him irreparable injury, but he provides no support for this assertion.

*7 The harm to the public interest factor also does

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 1310447 (N.D.Cal.)
**2006 WL 1310447 (N.D.Cal.)**

not mitigate against a stay. Although the underlying State action (including the award of attorneys' fees) clearly vindicates public interests, the interests at stake in Debtor's motion for an emergency stay are personal rather than public.

However, Appellant has failed to meet his burden to show that the bankruptcy estate and its creditors would not be harmed by a stay. In fact, the evidence shows that certain of the Creditors would suffer serious harm if a stay were granted. According to the Creditors' attorney's declaration, some now face serious health and financial challenges. Ms. Chand is in "extremely poor" health; the Chands had to obtain *ex parte* relief to remove Appellant's lien on their home (which remained there pending judgment and Appellant's attempts to disqualify Temporary Judge Blackman due to bias). Chantler Decl. ¶ 6. Mr. Hearne is unemployed and homeless, and therefore is in immediate need of his restitutionary award. *Id* . ¶ 7. Ms. Turner is facing foreclosure on her home, and also is in urgent need of funds. *Id.* ¶ 8. For these Creditors, the delay caused by a stay while this case is appealed will likely cause irreparable harm. Appellant insists that the Trustee could avoid harm by simply paying off these Creditors' $270,000 restitutionary judgment, but this approach could harm other creditors and is inconsistent with the usual administration of bankruptcy estates. This harm is an additional reason why the Court will not grant Appellant's motion for a stay.

CONCLUSION

For the reasons described above, the Court DENIES Appellant's emergency motion to stay bankruptcy proceedings (Docket No. 3).

IT IS SO ORDERED.

N.D.Cal.,2006.
In re Yeganeh
Not Reported in F.Supp.2d, 2006 WL 1310447 (N.D.Cal.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

LEXSEE 2005 US DIST LEXIS 27409

James L. Gagan, Plaintiff/Judgment Creditor, vs. Victor E. Sharer and James A. Monroe, et al., Defendants.

No. CIV 99-1427 PHX RCB

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ARIZONA

*2005 U.S. Dist. LEXIS 27409*

November 1, 2005, Decided

**SUBSEQUENT HISTORY:** Costs and fees proceeding at, Motion granted by *Gagan v. Sharer, 2006 U.S. Dist. LEXIS 20917 (D. Ariz., Apr. 18, 2006)*

**PRIOR HISTORY:** *Gagan v. Sharar, 376 F.3d 987, 2004 U.S. App. LEXIS 15181 (9th Cir. Cal., 2004)*

**COUNSEL:** [*1] For James L Gagan, Plaintiff: C Joseph Yast, Law Office of C Joseph Yast, Winnetka, IL; Lyndon Bruce Steimel, Law Office of Lyndon B Steimel, Scottsdale, AZ.

For Victor E Sharar, Estate of, Defendant: Pro se, Palm Desert, CA; Carlos Manuel Arboleda, Arboleda Brechner, Phoenix, AZ.

For James A Monroe, Defendant: Carlos Manuel Arboleda, Arboleda Brechner, Phoenix, AZ; Victoria M Stevens, Law Office of Victoria M Stevens PLC, Phoenix, AZ.

For Bank One Arizona NA, Garnishee: Maureen Ann Goodwin, Bank One Arizona NA Law Dept, Phoenix, AZ.

For Bank of America NA, Garnishee: Lyndon Bruce Steimel, Law Office of Lyndon B Steimel, Scottsdale, AZ.

For National Bank of Arizona, Garnishee: Pro se, National Bank of Arizona, Phoenix, AZ.

For Compass Bank, formerly known as Arizona Bank, Garnishee: Peter Anastasius Matiatos, Law Office of Peter A Matiatos, Tucson, AZ.

For Beta Tech Communications, Inc., Garnishee: Pro se, Scottsdale, AZ.

For Salt River Cablevision, LLC., Garnishee: Pro se, Scottsdale, AZ.

For San Carlos Cablevision LLC, Garnishee: Pro se, Scottsdale, AZ.

For LaJunta Monroe, Intervenor: Dow G Ostlund, Richard Glenn Himelrick, Tiffany [*2] & Bosco PA, Camelback Esplanade II, Phoenix, AZ; Tiffany & Bosco PA, Camelback Esplanade II, Phoenix, AZ.

For Stockmen's Bank, Garnishee: Pro se, Kingman, AZ.

For Johnson International, Inc, Garnishee: Pro se, Scottsdale, AZ.

For Central Arizona Communions, Central AZ Communications, Garnishee: Lyndon Bruce Steimel, Law Office of Lyndon B Steimel, Scottsdale, AZ.

**JUDGES:** Robert C. Broomfield, Senior United States District Judge.

**OPINION BY:** Robert C. Broomfield

**OPINION**

ORDER

On July 26, 2005, the Court denied Defendant James A. Monroe's motions to quash writs of garnishment and the filing of the foreign judgment in this matter. Order (doc. 241); see also Motions (docs. 217 & 236). Thereafter, Plaintiff James L. Gagan filed a Request for

Entry of Judgement Against Garnishee. (doc. 242). In response to this request, Monroe filed a motion entitled "Motion for Stay of Order Pending Appeal and Waive the Discretionary Bond". (doc. 247). Gagan filed his objection to Monroe's motion on September 12, 2005. Resp. (doc. 254). Having carefully reviewed the arguments submitted by the parties, the Court now rules.

### I. Background Facts

On November 23, 1994, Plaintiff James L. Gagan [*3] obtained a judgment for damages against Monroe, and others, in the amount of $ 1,687,500 in the United States District Court for the Northern District of Indiana. Gagan registered the judgment in the United States District Court in the District of Arizona on March 28, 1995. He recorded it in Maricopa County on March 31, 1995. Plaintiff then re-filed the Indiana judgment -- obtained in 1994 -- in the District Court for the District of Arizona on June 9, 2000.

On September 13, 2004, and April 6, 2005, Monroe filed motions to quash writs of garnishment and the filing of the foreign judgment in this matter, challenging the enforceability of the judgment. Motions (docs. 217 & 236). The Court, however, concluded that since Gagan filed numerous applications for writs of garnishment and motions in this matter within five years of the date the judgment was entered, the judgment had been appropriately renewed and is enforceable. Order (doc. 241) at 6-7. Consequently, the Court denied Monroe's motions to quash, and Gagan filed a request for entry of the contested judgement against garnishee Central Arizona Communications. Id. at 7; Request for Judgmt. (doc. 242). Following Gagan's request [*4] for judgment, Monroe moved the Court to stay its order on Gagan's request, pending an appeal, and waive the discretionary bond. Mot. (doc. 247).

### II. Monroe's Motion

Federal courts have the statutory or inherent power to stay judgments or orders pending appeal. All Writs Act, *28 U.S.C. § 1651*. Procedurally, discretionary stays of judgments and orders pending appeal are governed by *Federal Rule of Civil Procedure 62(c)* and *(g)* and *Federal Rule of Appellate Procedure 8(a)* and *(b)*. A party seeking a stay pending appeal must show that: (1) it is likely to succeed on the merits of the appeal; (2) it will suffer irreparable injury in the absence of a stay; (3) no substantial harm will come to the other parties to the

appeal; and (4) the stay will do no harm to the public interest. See *In re Wymer, 5 B.R. 802, 806 (9th Cir. BAP 1980)* citing *Schwartz v. Covington, 341 F.2d 537 (9th Cir. 1965)*. In addition, "the court in its discretion may suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms as to bond [*5] or otherwise as it considers proper for the security of the rights of the adverse party." *Fed.R.Civ.P 62(c)*.

Here, Monroe asserts that each of the elements required for a discretionary stay are satisfied in this case. First, Monroe argues that he is likely to succeed on the merits of his appeal due to prior rulings in his favor made by certain Arizona courts. Mot. (doc. 247) at 2. "The issue, therefore, has been decided by the Arizona Courts, that [Gagan] never properly renewed the judgment *under A.R.S. § 12-1611*." Id. This is the same argument Monroe asserted in his motions to quash the writs of garnishment and filing of the foreign judgment, which the Court found unconvincing. See Mot. to Quash (doc. 217) at 3; Second Mot. to Quash (doc. 236) at 2. In its previous review of the Arizona Court of Appeals opinion offered by Monroe, the Court found that the Arizona court determined Gagan's judgment lien to be unenforceable, not the judgment itself. Order (doc. 241) at 3. Thus, this argument alone does not indicate a likelihood of success on the merits of the appeal.

Furthermore, the Ninth Circuit has held [*6] that the denial of a motion to quash a writ of execution is not an appealable order. See *United States v. Moore, 878 F.2d 331 (9th Cir. 1989)*. The Moore court found that a refusal to quash a writ is not a final judgment, and, consequently, the court lacks jurisdiction over the appeal of such an order. Id. Thus, according to the decision in Moore, the Court's order denying Monroe's motion to quash the writs of garnishment is not an appealable order.

The Court concludes that Monroe has not demonstrated a likelihood of success on the merits of the appeal on either his motion to quash the writs of garnishment or his motions to quash the filing of the foreign judgment. In reaching such a conclusion, a further analysis of the remaining elements required for a discretionary stay and Monroe's request for waiver of the discretionary bond is unnecessary. The law affords Monroe the option to receive the stay he desires through the posting of a supersedeas bond. *Fed.R.Civ.P 62(d)*; *In re Wymer, 5 B.R. at 806* ("An appellant from a money judgment may, as a matter of right, obtain a stay of

2005 U.S. Dist. LEXIS 27409, *6

execution by posting [*7] a supersedeas bond in an approved amount at any time, whether before or after the time of filing the notice of appeal."). The Court finds no additional relief appropriate at this time.

Therefore,

IT IS ORDERED that Monroe's Motion for Stay of Order Pending Appeal and Waive the Discretionary Bond (doc. 247) is DENIED.

IT IS FURTHER ORDERED that Gagan's Request for Entry of Judgement Against Garnishee (doc. 242) is GRANTED.

DATED this 1st day of November, 2005.

Robert C. Broomfield

Senior United States District Judge