1  Ali M.M. Mojdehi, State Bar No. 123846
   Janet D. Gertz, State Bar No. 231172
2  **BAKER & McKENZIE LLP**
   12544 High Bluff Drive, Third Floor
3  San Diego, CA  92130-3051
   Telephone:  +1 858-523-6200
4
   Attorneys for Plaintiff/Appellee
5  KISMET ACQUISITION, LLC

6

7

8                 UNITED STATES DISTRICT COURT

9               SOUTHERN DISTRICT OF CALIFORNIA

10

11 In re                               |  Case No.: 3:08-CV-01446-BTM-BLM

12 JERRY LEE ICENHOWER dba Seaview         Bankruptcy Case No.  03-11155-LA-7
   Properties, and DONNA LEE ICENHOWER,
13                                          Chapter Number 7
                   Debtors.
14                                          Adv. Proc. No: 04-90392
   —————————————————————————               Adv. Proc. No.: 06-90369
15 ALEJANDRO DIAZ-BARBA AND MARTHA
   MARGARITA BARBA DE LA TORRE,            **NOTICE REGARDING EXHIBIT
16                                          ATTACHMENT INADVERTENTLY
                   Defendants/Appellants,  OMITTED FROM REQUEST FOR
17                                          JUDICIAL NOTICE BY PLAINTIFF,
   v.                                       KISMET ACQUISITION, LLC, IN
18                                          SUPPORT OF ITS OPPOSITION TO
   KISMET ACQUISITION, LLC,                 DIAZ DEFENDANTS' MOTION FOR
19                                          STAY PENDING APPEAL**
                   Plaintiff/Appellee.
20
                                            DATE:  August 28, 2008
21                                          TIME    4:00 p.m.
                                            DEPT:  15
22                                          JUDGE: Hon. Barry Ted Moskowitz

23

24 / / /

25 / / /

26 / / /

27 / / /

28
                                  1

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA  92130
+1 858 523 6200

SDODMS1/693171.1

CASE NO. 3:08-CV-01446-BTM-BLM
NOTICE REGARDING EXHIBIT ATTACHMENT

1    Please be advised that on August 22, 2008, as Docket No. 9, Kismet Acquisition, LLC filed

2   its Request for Judicial Notice by Plaintiff, Kismet Acquisition, LLC, in Support of its Opposition to

3   Diaz Defendants' Motion for Stay Pending Appeal.  Exhibits 3, 4 and 5 were inadvertently omitted

4   from the document and are therefore being submitted herewith.

5

6   Dated:   August 29, 2008                              BAKER & McKENZIE LLP

7

8                                                          By: /s/  Ali M.M. Mojdehi
                                                                Ali M.M. Mojdehi
9                                                               Janet D. Gertz

10                                                             Attorneys for Plaintiff/Appellee
                                                                Kismet Acquisition, LLC, a Delaware
11                                                              limited liability company

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA  92130
+1 858 523 6200

SDODMS1/693171.1

CASE NO. 3:08-CV-01446-BTM-BLM
REQUEST NOTICE REGARDING EXHIBIT ATTACHMENT

EXHIBIT 3



- Home
- Villa Location
- Villa Description
- Tour the Premises

## Villa Interior - The villa accomodations include six guest rooms with bathrooms, a two bedroom suite with bathroom, a sumptuous open air palapa suite (with his and hers bathrooms),and a two bedroom "granny flat" with its own kitchenette, as well as staff residences. The main house is in the colonial style with expansive living and dining spaces. Employees of the villa will cater to your every need. These talented individuals include a fulltime gourmet chef and a cheerful staff. They will ensure your stay at the villa is comfortable, enjoyable and convenient.





Food and Menu - Three meals are served daily and you can obtain snacks when desired or even raid the kitchen in the middle of the night. There is a living room cooler where beer and soft drinks are plentiful. Regularly served are dishes of Latin cuisine, seafood dishes, all



Breakfast - (el desayuno) usually includes eggs, Mexican style potatoes, fruit juice, milk, cereal and platters of fresh fruit. Tortillas, refried beans and fresh vegetables such as tomatoes, onions and avocados are served with the meal.

local tropical fruits and fresh vegetables. If desired, the chef will adjust the menu to accomodate your tastes. In addition, the staff will prepare any meal at the time you specify.

Click here for more
of the Interior.





As the morning sun gently beckons your awakening, a cup of coffee and a book, while reclining in one of the villa's hancrafted chairs is one of many ways to start your day.



EXHIBIT 4

CSD 1001A [11/15/04]
Name, Address, Telephone No. & I.D. No.
Ali M.M. Mojdehi, State Bar No. 123846
Janet D. Gertz, State Bar No. 231172
Baker & McKenzie LLP
101 West Broadway, Twelfth Floor
San Diego, CA 92101
Tel: +1 619 236 1441



Order Entered on
February 13, 2007
by Clerk U.S. Bankruptcy Court
Southern District of California

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF CALIFORNIA
325 West "F" Street, San Diego, California 92101-6991

In Re

JERRY LEE ICENHOWER dba Seaview Properties, and
DONNA LEE ICENHOWER
                              Debtor.

KISMET ACQUISITION, LLC,
                    Plaintiff

v.

JERRY L. ICENHOWER an individual; et al.
                    Defendants.

BANKRUPTCY NO.
03-11155-LA-7
Adv. Proc. No. 04-90392-LA
Date of Hearing:    January 18, 2007
Name of Judge:    Hon. Louise DeCarl Adler

Dept:                    2

## ORDER ON (1) DIAZ DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND FOR FAILURE TO STATE A CLAIM; (2) DIAZ DEFENDANTS' MOTION TO STRIKE PORTIONS OF KISMET'S OPPOSITION TO MOTION TO DISMISS; (3) KISMET'S MOTION TO STRIKE EVIDENCE IN DIAZ DEFENDANTS' REPLY; (4) DIAZ DEFENDANTS' RESPONSE TO JOINDERS FILED BY DEBTORS AND RELATED ENTITIES; AND (5) LEAVE TO FILE AMENDED COMPLAINT

IT IS ORDERED THAT the relief sought as set forth on the continuation pages attached and numbered two (2)

through 3 with exhibits, if any, for a total of 3 pages, is granted. Motion/Application Docket Entry Nos. 183, 201, 202, 203,

204, 207, 210

DATED: _____ 2007
        February 13, 2007

Judge
Hon

_Louise DeCarl Adler_
Judge, United States Bankruptcy Court

Signature by the attorney constitutes a certification under
Fed. R. of Bankr. P. 9011 that the relief in the order is the
relief granted by the court.

Submitted by:

Baker & McKenzie LLP
  (Firm name)

By:/s/ Ali M.M. Mojdehi
    Attorney for ☐ Movant ☒ Respondent
    Kismet Acquisition, LLC

CSD 1001A
SDODMS1/6714311.2
1/24/07

American LegalNet, Inc.
www.USCourtForms.com

CSD 1001A [11/15/04] (Page 2)
ORDER ON DIAZ DEFENDANTS' MOTION TO DISMISS, etc.
DEBTOR: In Re Jerry Lee Icenhower                                        CASE NO: 04-90392-LA

On January 18, 2007, the following matters came on for hearing before this Court, Hon. Louise DeCarl Adler, presiding: (i) Defendants Alejandro Diaz Barba and Martha B. Diaz' ("Diaz Defendants'") Motion to Dismiss for Lack of Subject Matter Jurisdiction and for Failure to State a Claim ("Motion to Dismiss"); (2) Diaz Defendants' Motion to Strike Portions of Kismet Acquisition LLC's ("Kismet's") Opposition to Motion to Dismiss; (3) Kismet's Motion to Strike Evidence in Diaz Defendants' Reply; and (4) Diaz Defendants' Response to Joinders Filed by Debtors and Related Entities. Alan Vanderhoff and Fletcher W. Paddison appeared for the Diaz Defendants; Ali M.M. Mojdehi and Janet D. Gertz appeared for plaintiff Kismet; Robert Rentto appeared for defendant Robert Miller; and William Conti appeared for defendants Western Financial Assets, Inc., Buckeye International Funding, Inc., Donna L. Icenhower, and Jerry L. Icenhower. That portion of the Diaz Defendants' Motion to Dismiss requesting this Court's abstention on grounds of international comity had previously been bifurcated pursuant to this Court's Amended Order entered December 21, 2006 [Docket Index 199], and the hearing for such bifurcated portion of the Diaz Defendants' Motion to Dismiss was continued until a date to be set by the Court.

After consideration of the briefs and arguments of counsel and all other matters presented to the Court,

IT IS HEREBY ORDERED that:

1. Diaz' Motion to Dismiss for Lack of Subject Matter Jurisdiction and for Failure to State a Claim is

GRANTED as to claims for cancellation and rescission of all the contracts. It does not appear that Kismet is contesting the request to dismiss claims other than the Sec. 544(b) and Sec. 550 claims and the Declaratory Relief claims seeking a declaration of the Trustee's rights and remedies under those two sections. To the extent Kismet seeks to apply sec. 544(b) to avoid subsequent transfers by the initial transferee to the Diaz defendants, the motion to dismiss will also be granted.

DENIED as to Sec. 544(b) and Sec. 550 claims and that portion of the Declaratory Relief claim seeking a declaration of the Trustee's rights and remedies under those two sections (2d Am. Complt. Claims 1 and 4).

The Court determines she has subject matter jurisdiction over avoidance of the transfer in question and, taking all allegations as true, as well as all reasonable inferences therefrom, the complaint states a claim on which relief can be granted.

TRANSFER AT ISSUE:
Movant incorrectly focuses on transfers that occurred after debtor fraudulently conveyed his beneficial trust interest to H&G. However, this is a misapplication of Sec. 544(b). Sec. 544(b) enables a court to avoid a transfer of the interest of the debtor in property. Necessarily, we must focus on the transfer between the debtor and the initial transferee (H&G) and whether it was fraudulent to an actual creditor of debtor. Once that transfer was completed, debtor and estate no longer had an interest in the property which was avoidable. [Both the Maxwell and Midland cases cited by Movant agree with the majority view that property fraudulently conveyed is not property of the debtor or Property of the Estate.]

SUBJECT MATTER JURISDICTION:
For purposes of determining subject matter jurisdiction (SMJ) over the Sec. 544(b) and Sec. 550 claims, we look to the initial transfer to determine whether we have jurisdiction, not the later transfers. There is no jurisdictional challenge to the initial transfer. As correctly observed by Kismet, there is a statutory grant of SMJ over claims to avoid and recover a fraudulent conveyance of an interest in real property and, so long as the Court has personal jurisdiction over the defendants (as we do over the Diaz defendants), we have the ability to order the person to execute a conveyance or to enter a money judgment for its value, subject to enforcement through contempt powers, EVEN THOUGH IT INDIRECTLY AFFECTS TITLE TO REAL PROPERTY OUTSIDE OUR TERRITORIAL BOUNDARIES. See Fall v. Easton, 215 U.S. 1 (1909); see also Opposition, p. 5-6. Court rejects Movant's claim that we will be required to cancel the transfer of title between the Mexican Bank and the Diaz defendants. Rather, we can order the Diaz defendants to create a fideicomiso trust and order them to convey the property to that trust with the estate holding the beneficial interest.

AVOIDANCE ACTIONS:
The presumption against extraterritoriality is not implicated by this complaint. Once we re-focus our attention to the correct transfer (between debtor & H&G), the "center of gravity" is indisputably within the U.S. Both Movant and Kismet agree that we apply the presumption against extraterritoriality only if the "center of gravity" lies outside the U.S.

2. Kismet, is granted leave, at its discretion, to file a Amended Complaint, provided however any such Complaint must be filed within thirty (30) calendar days from the date of entry of this Order.

CSD 1001A
SDODMS1/671431.2
1/24/07

American LegalNet, Inc.
www.USCourtForms.com

*Signed by Judge Louise DeCarl Adler February 13, 2007*

CSD 1001A (11/15/04) (Page 3)

3. Diaz' Defendants' Motion to Strike Portions of Kismet's Opposition to Motion to Dismiss is GRANTED.

4. Kismet's Motion to Strike Evidence in Diaz Defendants' Reply is GRANTED.

5. Joinders by Defendants Western Financial Assets, Inc., Buckeye International Funding, Inc., and Donna L. Icenhower and Jerry L. Icenhower to Diaz Defendants' Motion to Dismiss are stricken.

6. Pretrial Status Conference is continued to 4/26/07, at 2:00 p.m.

CSD 1001A
SDODMS1/671431.2
1/24/07

American LegalNet, Inc.
www.USCourtForms.com

*Signed by Judge Louise DeCarl Adler February 13,2007*

EXHIBIT 5

1   Stephen B. Morris (SBN 126192)
    Mark C. Hinkley (SBN 138759)
2   **MORRIS and ASSOCIATES**
    444 West C Street, Suite 300
3   San Diego, California 92101
    (619) 239-1300
4
    Attorneys for Defendants: ALEJANDRO
5   DIAZ-BARBA and MARTHA MARGARITA
    BARBA DE LA TORRE

6

7

8              **UNITED STATES BANKRUPTCY COURT**

9              **SOUTHERN DISTRICT OF CALIFORNIA**

10

| 11  In re JERRY LEE ICENHOWER dba Seaview | CASE NO.03-11155-LA-7 |
|---|---|
| 12  Properties, and DONNA LEE ICENHOWER, | Chapter Number 7 |
| 13          Debtors, | Adv. Proc. No: 04-90392 |
| 14  KISMET ACQUISITION, LLC, | Adv. Proc. No: 06-90369 |
| 15  SUCCESSOR IN INTEREST TO GERALD | **SUPPLEMENTAL TRIAL BRIEF RE** |
|     H. DAVIS, CHAPTER 7 TRUSTEE, | **CONSTRUCTIVE NOTICE** |
| 16          Plaintiff | |
| 17  v. | Judge:     Hon. Louise DeCarl Adler |
| 18  JERRY ICENHOWER dba Seaview | Courtroom:  6 |
|     Properties, and DONNA L. ICENHOWER fka | Date: |
| 19  DONNA L. HAWKS; et al., | Time: |
| 20          Defendants. | |
| 21 | |
| 22  AND ALL RELATED THIRD-PARTY | |
|     ACTIONS, CROSS-CLAIMS AND | |
| 23  COUNTER-CLAIMS | |
| 24 | |

25      Defendants ALEJANDRO DIAZ-BARBA and MARTHA MARGARITA BARBA DE LA

26  TORRE respectfully submit the following Supplemental Trial Brief on the issue of Constructive

27  Notice in support of their defenses in the above-captioned matter:

28  ///

Diaz Defendants' Trial Brief.

# I. INTRODUCTION

1
2    As the evidence has come in and taken shape during this trial, it is clear that neither Alex
3    Diaz nor Martha Barba knowingly participated in any activity to cheat anybody out of anything.
4    Rather, the case has come down to arguing whether their attorney and notary were thorough
5    enough in the conduct of their due diligence, and whether Mr. Diaz and his mother were
6    reasonable to rely on them when they advised that the Villa was free of liens, claims and
7    encumbrances.

8    The central issue for purposes of determining the Diaz Defendants' good faith is the
9    question of what constitutes "knowledge" sufficient to defeat their claim to be good faith
10   purchasers. Under either California or Federal law, the authorities are clear that "knowledge" is
11   not "notice," and constructive notice is not sufficient to defeat good faith. They are also clear that
12   negligence in title searches is not imputed to the buyer.

13   Moreover, while Kismet insists it is pursuing its remedies under Federal, rather than
14   California law, these adversarial proceedings were filed outside the "reach back" period then in
15   effect. At the time the 04 adversarial proceeding was filed, the law only provided a one year reach
16   back period in which the Trustee could seek avoidance and reconveyance, but the proceeding was
17   filed a year and a half after Icenhower declared bankruptcy. The law changed to a two year reach
18   back period before the 06 adversarial proceeding was filed, but by then, much more than two
19   years had elapsed and it too is time barred. Accordingly, Kismet may only proceed under its State
20   law claims.

21   ## II. KISMET IS OBLIGED TO PROCEED UNDER CALIFORNIA,
22   ## RATHER THAN BANKRUPTCY LAW, TO PURSUE ITS FRAUDULENT
23   ## CONVEYANCE CLAIM

24   On October 17, 2005, the Bankruptcy Abuse Prevention and Consumer Protection Act
25   (BAPCPA) became effective. Among other things, BAPCPA increased the reach back period for
26   fraudulent conveyance actions under the Bankruptcy Code from one year to two years. Section
27   1406(b)(2) of BAPCPA provides: "AVOIDANCE PERIOD - the amendment made by section
28   1402(a) [changing and extending the reach back period in paragraph (a)(1) and (b)(1) of Code

2                                        Diaz Defendants' Trial Brief.

1  section 548] shall apply only with respect to cases commenced under title 11 of the United States

2  Code more than 1 year after the date of the enactment of this Act."

3        BAPCPA was enacted on April 20, 2006. Therefore, all bankruptcy cases filed on or before

4  that date are governed by the pre-BAPCPA version of section 548. Jerry Icenhower filed for

5  bankruptcy on December 15, 2003. This means that the action is governed by the pre BAPCPA

6  version of section 548. Therefore, since Icenhower transferred the Villa to Howell and Gardner

7  prior to December 15, 2002, Kismet cannot establish a fraudulent conveyance claim under section

8  548.

9        Kismet may still proceed with its California state law claim for fraudulent reconveyance,

10  however, under California law. If Kismet cannot use section 548 because it is time-barred and has

11  to proceed under section 3439 of the California Civil Code which has a four year reach back

12  period, the California Uniform Fraudulent Transfer Act and the California common law provide

13  the substantive law in such a case. *Agricultural Research and Technology Group, Inc.* 916 F. 2d

14  528, 534 (9th Cir. 1990). See also, *In re Prejean*, 994 F. 2d 706 (9th Cir. 1993); *In re Beverly*, 374

15  B.R. 221 (9th Cir. BAP 2007) (applying California law to interpret Civil Code section 3439.

16        The practical effect is to render the question of whether the Defendants are initial or

17  subsequent transferees immaterial. Under California law, even initial transferees are protected if

18  they are good faith purchasers for value.

19  **III.  EVEN IF THE FRAUDULENT CONVEYANCE CLAIM PROCEEDED**

20  **UNDER BANKRUPTCY LAW, CALIFORNIA LAW IS PERSUASIVE AUTHORITY**

21        Where state statutes are similar to the Bankruptcy Code, cases analyzing the Bankruptcy

22  Code provisions are persuasive authority. *In re AFI Holding, Inc.* 2008 WL 1734583, *2 (9th Cir.

23  2008) (quoting *Hayes v. Palm Seedlings Partners-A* (*In re Agric. Research and Tech Group, Inc.*)

24  916 F.2d 528, 534 (9th Cir. 1990). California's fraudulent transfer statutes are similar in form and

25  substance to the Bankruptcy Code's fraudulent transfer provisions. *Wyle v Rider* (*In re United

26  Energy Corporation*), 944 F.2d 589, 597 (9th Cir. 1981.)

27

28

---

# IV. SUBSEQUENT TRANSFEREES ARE NOT EXPECTED TO
## MONITOR PRECEDING TRANSFERS

Mr. Diaz and Mrs. Barba bought the Villa from Howell and Gardner, which bought it from Jerry Icenhower. In this situation, the law does not expect them to monitor the propriety of the transfer to Howell and Gardner by Icenhower as they were dealing directly with Jerry Icenhower. Whether as a formal element under section 550(b), or simply as a matter of recognizing reasonable expectations in a good faith analysis, subsequent transferees are not held to the same duty of inquiry and risk as initial transferees.

> Our decision here is also consistent with considerations of equity and fairness. In most, if not all, bankruptcy cases someone is going to be injured. This is especially true when there has been a fraudulent transfer of the debtor's funds. However, Congress has already balanced the equitable considerations under § 550 by distinguishing between initial transferees, who are strictly liable, and subsequent transferees, who are not strictly liable. Initial transferees are in the best position to monitor fraudulent transfers from the debtor. *Bonded*, 838 F.2d at 892-93 ("The initial transferee is the best monitor; subsequent transferees usually do not know where the assets came from and would be ineffectual monitors if they did."). "[Section] 550(b) leaves with the initial transferee the burden of inquiry and the risk if the conveyance is fraudulent." *Id.* at 892. The fairness of this approach is illustrated by the case before us. The Markgrafs, as initial transferees of Cowboy's funds, were in the best position to bear the risk of receiving a fraudulent transfer.
> *Rupp v. Markgraf* 95 F.3d 936, 944 (10th Cir. 1996), quoting *Bonded Financial Services, Inc. v. European American Bank* 838 F.2d 890, 892-893 (7th Cir. 1988)

The Bonded Financial Court reasoned,

> The considerations behind the holder in due course rule for commercial paper, Uniform Commercial Code Sec. 3-302, and the bona fide purchaser rule for chattels, UCC Sec. 2-403(1)--**the waste that would be created if people either had to inquire how their transferors obtained their property or to accept a risk that a commercial deal would be reversed for no reason they could perceive at the time**--also apply to subsequent holders of assets fraudulently conveyed out of bankrupts. Just as the holder in due course rule requires the transferor of commercial paper to bear the risk and burden of inquiry, increasing the liquidity of paper, so Sec. 550(b) leaves with the initial transferee the burden of inquiry and the risk if the conveyance is fraudulent.
> *Bonded Financial Services, Inc. v. European American Bank* 838 F.2d 890, 892 (7th Cir. 1988), emphasis added.

Actual knowledge is one thing, of course, and not even a subsequent transferee can turn a blind eye to the obvious ramifications of what he really knows. But when the good faith issue turns on a question of the adequacy of a transferee's investigation, there is a very large and important difference between the inquiry and risk imposed on initial transferees than expected of

---
4                                                    Diaz Defendants' Trial Brief.

1    subsequent transferees.

2    **V.  UNDER EITHER CALIFORNIA OR BANKRUPTCY LAW**
       **A GOOD FAITH DEFENSE CANNOT BE DEFEATED BY**
3        **THE FICTION OF CONSTRUCTIVE NOTICE**

4       Both State and Bankruptcy case law interpreting the good faith defense in fraudulent

5    conveyance cases expressly state that constructive notice does not constitute "knowledge" to show

6    bad faith. Federal cases analyze the statutory difference between "notice" and "knowledge" in

7    different sections of the Act and conclude that notice does not substitute for knowledge.

8    California cases read "the term 'good faith,' as used in this subdivision and subdivision (d) [of Civ.

9    Code § 3439.08] means that the transferee did not collude with the debtor or otherwise actively

10    participate in the fraudulent scheme of the debtor." (See legis. committee com., 12 West's Ann.

11    Civ. Code (1994 pocket supp.) § 3439.03, p. 161.)

12       "As stated in *Lewis v. Superior Court* (1994) 30 Cal.App.4th 1850, 1858-1859, with

13    reference to the Legislative Committee comments, " '[f]raudulent intent,' 'collusion,' 'active

14    participation,' 'fraudulent scheme'—this is the language of deliberate wrongful conduct. " *Annod*

15    *Corp. v. Hamilton & Samuels* (2002) 100 Cal.App.4th 1286, 1299. See also *Dyer v. Martinez*

16    (2007) 147 Cal.App.4th 1240, 1245.

17       "The fraudulent conveyance statute requires actual, subjective knowledge by the
        alleged fraudulent transferee. The fiction of constructive knowledge is not enough. ¶
18       "—this is the language of deliberate wrongful conduct. It belies any notion that one
        can become a fraudulent transferee by accident, or even negligently. **It certainly**
19       **belies the notion that guilty knowledge can be created by the fiction of**
        **constructive notice.** (See *Richardson v. White* (1861) 18 Cal. 102, 106 [recognizing
20       that constructive notice is a "fiction"].)"
        *Lewis v. Superior Court* (1994) 30 Cal.App.4th 1850, 1859.
21

22       The rule is stated as unequivocally by Federal courts interpreting section 550(b). *Smith v.*

23    *Mixon* 788 F.2d 229 (4th Cir. 1986) analyzed the good faith defense for fraudulent conveyances

24    under the Bankruptcy Code and reached the same conclusion.

25       Although **"knowledge"** as used in Sec. 550(b)(1) is not defined in the Code or
        in the legislative history, we conclude that it **does not mean "constructive notice."**
26       As several courts have noted when analyzing Sec. 544 of the bankruptcy code, "[t]he
        term 'notice' may include either actual or constructive notice, **while the term**
27       **'knowledge' includes only actual notice.** That Congress selected the term
        'knowledge' is significant." *In re Richardson*, 23 B.R. 434, 439 (Bankr.D.Utah
28       1982); accord *In re Euro-Swiss International Corp.*, 33 B.R. 872, 881

        Diaz Defendants' Trial Brief.

1   (Bankr.S.D.N.Y.1983); *In re Kelly*, 29 B.R. 708, 710 (Bankr.D.Me.1983); see also
    *McCannon v. Marston*, 679 F.2d 13, 16-17 (3d Cir.1982) (error to equate knowledge
2   with notice). We believe that this reasoning applies with equal force to Sec.
    550(b)(1) of the Code. [2] Therefore, Orie is **entitled to the protection of Sec.**
3   **550(b)(1) notwithstanding his constructive notice of the deed of trust.**
    *Smith v. Mixon, supra*, 232.
4

5       The Debtor received a fraudulent deed from his brother, before his brother declared

6   bankruptcy. Some time later, the Debtor executed a false note to evidence the fraudulent deed, and

7   then transferred the deed to his father, Orie, in consideration of past loans and future advances.

8   Orie accepted the deed two days before the fraudulent note was actually released. He never even

9   did a title search, and if he had, he would have learned that the note was not yet released and that

10  the property did not yet have clear title. But even though these circumstances gave Orie

11  constructive notice of the deed of trust, they did not establish Orie's knowledge.

12          Moreover, even if one were to accept the trustee's argument that "knowledge"
        includes "constructive notice," Orie should prevail. Constructive notice of the
13      existence of the deed of trust does not encompass constructive notice of the
        fraudulent nature of the trust and its release. Consequently, the state recording
14      statutes did not charge Orie with constructive notice of "the voidability of the
        transfer."
15      *Id.*

16      In *In re Orange County Santifation, Inc.* 221 B.R. 323, 328 (Bankr. S.D.N.Y. 1997), a case

17  under section 548(a)(1)(A), the court equated "good faith" with lack of knowledge that transfer

18  was avoidable. It also defined "good faith" as "lack of actual knowledge of actual fraud." These

19  definitions draw clear distinctions between those cases where parties proceed despite knowledge

20  of competing claims and this case where the Defendants are accused of not investigating enough.

21                  **VI. THE DIAZES ARE ENTITLED TO RELY ON THEIR**
                    **LOCAL ATTORNEY AND THE NOTARIO PUBLICO TO**
22                      **SHOW THEIR GOOD FAITH.**

23      As Kismet closes its evidence and rests its case, it appears that it is left to argue that Mr.

24  Sanchez and the Mexican Notary did not perform an adequate enough investigation, therefore the

25  Diazes' reliance on their opinions, advice and public acts does not constitute good faith. The cases

26  reject this approach, however, and cloak the transferees with good faith.

27      In *Hardesty v. Equity One Credit Corporation (In re Farrell)*, 269 B.R. 181 (Bankr.S.D.

28  Ohio 2001), debtors executed a mortgage with defendant lender which only encumbered two

---
                                        6

1   properties instead of the intended three, and at a smaller price. Moreover, the mortgage was not

2   witnessed by two individuals, as required by Ohio law.  Even so, the lender that accepted the

3   mortgage with these defects was entitled to the good faith transferee defense.

4   The court found that the lender, in accordance with normal procedures, supplied the title

5   company with an address and relied upon the title company to make sure the appropriate property

6   was included.  While commenting that a better job could have been done, the court found that the

7   deficiencies did not emanate from the lender, and that the lender should not be penalized where it

8   acted reasonably and in good faith based upon the incomplete information supplied by the title

9   company. On that basis, the court determined that the lender was deemed a good faith transferee.

10  To do otherwise would provide a windfall to unsecured creditors at the expense of the lender. (See

11  also *In re Lepelly*, 233 B.R. 802 (Bankr. N.D. Ohio 1999). The Diazes, under all the

12  circumstances, are at least as reasonable to rely on the Notario Publico's assurances that the title

13  was proper and the transaction "legally perfect."

14  In *Leshin v. Welt (In re Warmus)*, 276 B.R. 688 (S.D. Fla 2002), the trustee sought to

15  recover fees received by defendant attorney from his former clients. The attorney was paid by a

16  client's mother, and it turned out the funds came from an airplane fraudulently transferred to her.

17  The Debtors admitted fraudulently transferring the airplane to the client's mother, and the trustee

18  sued the attorney for the fees he received, traceable back to the airplane. The attorney asserted the

19  good faith transferee defense.

20  The trial court concluded that because the attorney had performed due diligence on the

21  company which owned the airplane, he was not entitled to the defense. The trial court concluded

22  that the attorney's conclusion regarding his due diligence did not matter, but rather the fact that he

23  did such due diligence as checking corporate records gave him knowledge of facts that the funds

24  might be avoidable.

25  But the appellate court disagreed and found the attorney had performed due diligence prior

26  to representing a non-debtor in a bankruptcy proceeding, and found corporate documents and tax

27  returns in the separate name of the corporate entity funding his fees. That the company was owned

28  by the mother in law of the debtor, who owned numerous companies himself, does not impute to

1    the attorney such knowledge at that time.

2        The fact that... the attorney was on notice that the Trustee was seeking via litigation
         to void the transfer of the airplane proceeds that were being used to pay him, and
3        thus he had knowledge at that point that the issue of the origin of the funds would be
         contested, does not mean that such attorney is imputed with knowledge of the
4        voidability of the ... transfer if there is also a defensible argument based upon
         documented facts that the transfer is not voidable.
5    *Leshin v. Welt, supra*, 698.

6        In *Leshin v. Welt*, it was the attorney himself, with all of his sophistication and training,

7    who was permitted to make an informed decision about how much diligence was enough in light

8    of everything he knew. Mr. Diaz and Mrs. Barba, who do not have a lawyer's training, and so

9    hired a lawyer to do what must be done, are even more entitled to rely on the advice of their

10   counsel's due diligence report in good faith. Particularly given the intricacies and international

11   dimensions of the transfer from Howell and Gardner, as papered over by Kelley and its attorney,

12   criticism of an attorney's mistake is clearly not proof that the Diazes acted with any kind of guilty

13   knowledge.

14                              **VII. CONCLUSION**

15       Kismet may not proceed on its section 548/550 fraudulent conveyance claim under

16   Bankruptcy law because it is time-barred. It may proceed under California law, however. But

17   under either system of law, it is clear that mere hypothetical notice does not constitute knowledge

18   to the Diaz-Barba Defendants, and they acted in reliance on their Mexican attorney in good faith.

19   The fact that full value was paid is undisputed, and the Defendants are entitled to the good faith

20   defense of section 550(b).

21   Dated: April 25, 2008                          MORRIS AND ASSOCIATES, APC

22

23                                      By:    Stephen Morris
                                               STEPHEN B. MORRIS, Attorneys for
24                                             ALEJANDRO DIAZ-BARBA and
                                               MARTHA MARGARITA BARBA
25                                             DE LA TORRE

26

27

28